Michael S. Elkin (*pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendant
CLOUDFLARE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION—LOS ANGELES

| | |
|---|---|
| DENIECE WAIDHOFER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CLOUDFLARE, INC., a Delaware corporation; BANGBROS, INC., a Florida corporation; MULTI MEDIA LLC, a California limited liability company; THOTHUB.TV; and JOHN DOES 1-21,<br><br>Defendants. | Case No. 2:20-cv-06979-FMO-AS<br><br>**DEFENDANT CLOUDFLARE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge:  Hon. Fernando M. Olguin<br>Date:   November 12, 2020<br>Time:   10:00 a.m.<br>Place:  Courtroom 6D – 6th Floor<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant Cloudflare, Inc. ("Cloudflare") hereby moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds set forth in the accompanying Memorandum of Points & Authorities, other pleadings and papers filed in this action, and upon such other oral and documentary evidence as may be presented at the hearing on this motion as the Court may permit. The motion will be heard on Thursday, November 12, 2020, at 10:00 a.m., or as soon thereafter as may be, before the Honorable Fernando M. Olguin, in Courtroom 6D, 6th Floor, of this Court located at 350 W. 1st Street, Los Angeles, CA 90012.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on Wednesday, October 7, 2020.

Cloudflare seeks dismissal of the Complaint in its entirety because the Complaint fails to state any claim upon which relief can be granted.

Dated: October 14, 2020                    WINSTON & STRAWN LLP

                                By: */s/ Jennifer A. Golinveaux*
                                Jennifer A. Golinveaux
                                Michael S. Elkin
                                Erin R. Ranahan
                                Thomas J. Kearney
                                Attorneys for Defendant
                                CLOUDFLARE, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 3

    A.    Cloudflare's Business and Services ............................................... 3

    B.    Plaintiff and Her Allegations ......................................................... 5

III.  LEGAL STANDARD .................................................................................. 7

IV.   ARGUMENT ............................................................................................... 7

    A.    Plaintiff Fails to State a RICO Claim. ........................................... 7

        1.    Plaintiff Lacks Standing to Bring Her RICO Claims. ...................... 7

        2.    Plaintiff Fails to State a Claim Under 18 U.S.C. § 1962(c) .......... 11

        3.    Plaintiff Fails to State a Claim Under §§ 1962(a) and (d)............. 15

    B.    Plaintiff Fails to State a Claim for Copyright Infringement ................... 16

        1.    Plaintiff Fails to Allege Registration of Her "Works" ................. 16

        2.    Plaintiff Fails to Sufficiently Allege that Cloudflare Directly Infringed Her Copyrights ................ 17

        3.    Plaintiff Fails to Adequately Allege Contributory Infringement .. 19

    C.    Plaintiff Fails to State a Negligence Claim Against Cloudflare ............. 21

        1.    The Copyright Act Preempts Plaintiff's Negligence Claim .......... 22

        2.    Section 230 of the CDA Precludes Plaintiff's Negligence Claim . 23

        3.    Plaintiff Fails to Properly Plead Negligence, Let Alone Gross Negligence, Against Cloudflare .................... 24

V.    CONCLUSION ......................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
  819 Fed. App'x 522 (9th Cir. 2020) ................................................................ 20, 21

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ................................................................................................ 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 7

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) .............................. 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 7, 15

*Biakanja v. Irving*,
  49 Cal. 2d 647 (1958) .......................................................................................... 24

*Boyle v. U.S.*,
  556 U.S. 938 (2009) ............................................................................................ 11

*Canyon County v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) .............................................................................. 8, 9

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) ................................................................................ 18

*Cobb v. JPMorgan Chase Bank, N.A.*,
  2012 WL 5335309 (N.D. Cal. 2012) ..................................................................... 8

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) ....................................................................... 19, 21

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  2012 WL 10731957 (C.D. Cal. June 29, 2012) .............................................. 12, 13

*Ellis v. J.P.Morgan Chase & Co.*,
  2015 WL 78190 (N.D. Cal. Jan. 6, 2015), *aff'd* ............................................. 13, 16

*Ellis v. JPMorgan Chase & Co.*,
   752 F. App'x 380 (9th Cir. 2018)..............................................................13

*Field v. Google Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ...............................................18, 19

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019)...............................................................16, 17, 24

*Fox Broadcasting Co., Inc. v. Dish Network LLC*,
   747 F. 3d 1060 (9th Cir. 2014) ................................................................17

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) .......................11, 12, 13, 14

*Goren v. New Vision Int'l*,
   156 F.3d 721 (7th Cir. 1998) ....................................................................15

*Harmoni International Spice, Inc. v. Wenxuan Ba*i,
   2016 WL 6571272 (C.D. Cal. 2016) ..........................................................9

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ....................................................................16

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 2359228 (N.D. Cal. June 4, 2019)............................................17

*Jubelirer v. MasterCard Int'l, Inc.*,
   68 F. Supp. 2d 1049 (W.D. Wis. 1999)....................................................12

*Kangaroo Mfg. Inc. v. Amazon.com Inc.*,
   2019 WL 1280945 (D. Ariz. Mar. 20, 2019)............................................23

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ....................................................................7

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011).........................................................9

*McCormick v. Sony Pictures Entm't*,
   2008 WL 11336160 (C.D. Cal. Nov. 17, 2008) .......................................22

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)............................................................................19, 20

*Musero v. Mosaic Media Grp., Inc.*,
  2010 WL 11595453 (C.D. Cal. Aug. 9, 2010) ........................................................ 17

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) (*en banc*)........................................................... 11, 12

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
  298 F.3d 768 (9th Cir. 2002) ....................................................................... 10

*Our House Films, LLC v. Tunnel, Inc.*,
  2018 WL 7348847 (C.D. Cal. Dec. 11, 2018)................................................... 22, 24

*Ozeran v. Jacobs*,
  2018 WL 1989525 (C.D. Cal. Apr. 25, 2018), *aff'd*, 798 F. App'x 120
  (9th Cir. 2020) ...................................................................................... 9

*Pac. Recovery Sols. v. United Behavioral Health*,
  2020 WL 5074315 (N.D. Cal. Aug. 25, 2020) ................................................... 15

*Parker v. Google, Inc.*,
  422 F. Supp. 2d 492 (E.D. Pa. 2006)............................................................ 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F. 3d 1146 (9th Cir. 2007) .................................................................. 19

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ................................................................... 23

*Perfect 10, Inc. v. Giganews, Inc.*,
  2013 WL 2109963 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th
  Cir. 2017)........................................................................................... 23

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ................................................................ 17, 18

*Raisley v. U.S.*,
  2016 WL 1117944 (D.N.J. Mar. 22, 2016) ...................................................... 4

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  907 F. Supp. 1361 (N.D. Cal. 1995)............................................................ 18

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)................................................................................ 14

v

*In re Rigel Pharm., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ................................................................... 7

*Scoggins v. HSBC Bank USA*,
  2015 WL 12670410 (C.D. Cal. Oct. 8, 2015) ......................................... 10

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985) ............................................................................... 11

*Stitt v. Citibank, N.A.*,
  748 F. App'x 99 (9th Cir. 2018) ....................................................... 12, 16

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
  7 F.3d 1434 (9th Cir. 1993) ................................................................... 22

*Swarmify, Inc. v. Cloudflare, Inc.*,
  2018 WL 4680177 (N.D. Cal. Sept. 28, 2018) ........................................ 3

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ................................................................. 8

*Tarantino v. Gawker Media, LLC*,
  2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .................................. 19, 21

*Teknowledge Corp. v. Akamai Techs., Inc.*,
  2004 WL 2042864 (N.D. Cal. Sept. 11, 2004) ........................................ 4

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................... 15

*TVB Holdings USA Inc. v. Enom Inc.*,
  2014 WL 12581778 (C.D. Cal. Jan. 6, 2014) ......................................... 17

*U.S. v. Goodyear*,
  795 F. App'x 555 (10th Cir. 2019) .......................................................... 4

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008) ............................................................... 15

*Wimo Labs LLC v. eBay Inc.*,
  2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) .................................. 12, 14

**Statutes**

17 U.S.C. § 411(a) ................................................................................. 16

18 U.S.C. § 1961(1) ............................................................................... 14

18 U.S.C. § 1962(c) ...........................................................................*passim*

18 U.S.C. § 1964(c) ................................................................................. 7

18 U.S.C. § 2319 .................................................................................... 11

47 U.S.C § 230(c)(1) .............................................................................. 23

47 U.S.C. § 230(f)(2) .............................................................................. 23

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 7

https://www.cloudflare.com/plans/ ........................................................... 1

https://www.cloudflare.com/ddos/ ............................................................ 4

https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ ............................. 4

https://www.whois.com/whois/patreon.com (last visited Oct. 14, 2020) ..................... 1

# I.   INTRODUCTION

Defendant Cloudflare provides infrastructure support and security services that protect millions of websites around the world. Through its security services and worldwide pass-through CDN network services, Cloudflare supports more than 25 million web properties in virtually every industry, from technology, to banking and finance, to retail, to healthcare, to media and entertainment, to first responders. In keeping with its goal of making the Internet better for everyone by increasing security and efficiency and enhancing reliability for all, Cloudflare offers its core DDoS attack mitigation and global CDN (caching) services at no charge, while also offering services at different tiers for paying customers.[1] Cloudflare's customers include IBM; Sony Music Group; L'Oréal; Politico; LabCorp; the Library of Congress; state, county, and municipal governments; and nearly one in six of the Fortune 1,000. Ironically in light of Plaintiff's narrow and disparaging mischaracterization of Cloudflare's services, Patreon.com, one of the so-called "Licensed Sites" that Plaintiff relies on for her business, also uses Cloudflare's security services in *precisely* the same way that Plaintiff alleges the Thothub.tv ("Thothub") website does.[2] Cloudflare's mission to help build a better, safer Internet has garnered widespread recognition and a host of awards.

Plaintiff Waidhofer, an online model, filed this suit when her self-published adult images were allegedly leaked by her own subscribers and fans and posted on Thothub. As her Complaint acknowledges, Cloudflare's only connection to Thothub was that Thothub—like tens of millions of other websites—subscribed to Cloudflare's automated online security and infrastructure services: Cloudflare had nothing to do with the alleged infringement. Yet here, she seeks to spin allegations about Thothub's and its users' conduct into wide ranging and entirely baseless RICO, copyright infringement, and negligence claims against Cloudflare and two other, unrelated

---

[1] *See* Cloudflare Plans, at https://www.cloudflare.com/plans/.
[2] *Compare* https://www.whois.com/whois/patreon.com (last visited Oct. 14, 2020) *with* Compl. ¶ 170. Because Plaintiff relies on the publicly available whois.com website in her Complaint, *id.* ¶¶ 160, 170, 171, the Court may take judicial notice of it.

companies that allegedly merely advertised on Thothub's website.

Plaintiff's attempt to turn the fact that a single website signed up for Cloudflare's services online into a wide-ranging criminal conspiracy is frivolous. Relying on rank speculation, conclusory assertions lacking any factual basis, unsourced allegations not even made on "information and belief," and hearsay statements quoted from anonymous online commenters, unidentified bloggers, and "advocacy groups," Plaintiff attempts to analogize unilateral action by Thothub to sign up for Cloudflare's services through an automated system to B-movie criminal conduct. This Court and courts around the country consistently reject civil RICO claims in which the supposed "predicate acts" consist merely of offering lawful, content-neutral services that are available to the general public. As Plaintiff's own allegations show, this case is no different.

For similar reasons, Plaintiff's effort to hold Cloudflare liable for copyright infringement that allegedly occurred on *Thothub*, simply because Cloudflare provided content-neutral infrastructure and security services, lacks any basis. Plaintiff herself emphasizes that Cloudflare merely "offers … infrastructure support, content delivery networking, DDoS mitigation, and distributed domain-name-server services" (Compl. ¶ 18) and "rout[es] and filter[s] … content through its network of servers" (Compl. ¶ 158). These allegations are insufficient to state a claim of direct copyright infringement because they fail to plead the requisite volitional conduct by Cloudflare; indeed, they are inconsistent with it. Similarly, Plaintiff's allegations that Cloudflare provided lawful services in an ordinary business arrangement fail to plead contributory infringement, as they are insufficient to show that Cloudflare materially contributed to infringement through purposeful, culpable conduct, as Ninth Circuit law requires.

Finally, Plaintiff's state law negligence claim is preempted by the Copyright Act; precluded by Section 230 of the Communications Decency Act; and fails to allege *any* of the required elements of duty, breach, or resulting injury.

Because Plaintiff cannot plead around these fundamental deficiencies, each of her claims against Cloudflare should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Cloudflare's Business and Services

A basic understanding of Cloudflare's services is fundamental to the appropriate resolution of this case. As Plaintiff acknowledges, Cloudflare provided "content delivery and security services for Thothub." Compl. ¶ 8; *see Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 4680177, at *1 (N.D. Cal. Sept. 28, 2018) ("Cloudflare … uses a network of data centers to offer reverse-proxy and content delivery services to other companies …"). Plaintiff does not allege that Cloudflare is an Internet access provider—nor is it: Cloudflare's customers do not rely on it for their connection to the "network of networks" that comprises the Internet. Nor does Plaintiff allege that Cloudflare hosts websites for its customers—as it does not. Rather, Cloudflare acts as an intermediary. Its CDN ("Content Delivery Network") consists of data centers around the world that maintain temporary, "cache" copies of data from customers' websites. As this Court explained in *Rosen v. eBay*, websites and "service providers across the internet" contract with third-party CDN providers, using their "network[s] of multiple servers … to ensure smooth operation of the internet generally and a [website] service provider's services in particular." 2015 WL 1600081, at *20–21 (C.D. Cal. Jan. 16, 2015). "The widespread use of CDNs means that most content is passed from a service provider to one or more third parties before reaching an end user." *Id.* at *21. CDNs are "a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally," and any copying and distribution they perform is "wholly incidental" to that purpose. *Id.* So too here: as Plaintiff acknowledges, Cloudflare's "computer systems and servers" operate in response to "requests to and from [its customers'] servers." Compl. ¶ 169. A third-party CDN like Cloudflare cannot control what material is on its subscribers' websites, and has no power to remove a website, or its content, from the Internet. Nor can Cloudflare sever an alleged infringer's ability to go online by withdrawing its services: even if Cloudflare terminates all access to its CDN and security services, and deletes all cached content from its servers, the

customer's website remains online and fully accessible to users, and the customer itself continues to have unfettered access to the Internet—although the website and its users will now be exposed to increased security threats. Moreover, because an untold number of other companies also provide CDN services, it would make no material difference if Cloudflare did withdraw its services. Plaintiff fails to allege otherwise.

Cloudflare's CDN network is key to its security services, including its DDoS mitigation services. A DDoS ("Distributed Denial of Service") attack occurs when a malicious attacker "uses multiple computers simultaneously to request information from a website. If done on a large scale, the requests overwhelm the website, take the victim server offline, and render the site inaccessible." *Raisley v. U.S.*, 2016 WL 1117944, at *1 (D.N.J. Mar. 22, 2016). Cloudflare's DDoS mitigation services employ a technique known as a "reverse proxy": by routing incoming traffic through a Cloudflare IP address, instead of letting it pass directly to the customer's "origin" web server, Cloudflare can analyze incoming traffic for threats, blocking malicious traffic while letting legitimate traffic "pass through." This protection secures websites, applications, and entire networks from malicious attackers.[3] Cloudflare's network blocks an average of 72 billion threats *per day*, and has thwarted some of the largest DDoS attacks in history.[4] Plaintiff makes much of her allegation that traffic to Thothub was routed through two Cloudflare "name servers" (Compl. ¶¶ 160, 170)—but fails to mention that Patreon.com, which she relies on for her own business, does the same, as shown by the publicly available "Whois" records that Plaintiff cites in her Complaint.

Leaving customers' IP addresses open to public view would expose them to attack by hackers and cybercriminals.[5] Plaintiff, ignoring the obvious, mischaracterizes

---

[3] *See, e.g., U.S. v. Goodyear*, 795 F. App'x 555, 560 (10th Cir. 2019) (describing use of Cloudflare's services to protect against DDoS attacks on website); *Teknowledge Corp. v. Akamai Techs., Inc.*, 2004 WL 2042864, at *9 (N.D. Cal. Sept. 11, 2004) (describing defendant's "Reverse Proxy mode," in which a "server acts as an intermediary … [that] accepts requests from clients and forwards these requests to the origin server, which is located inside a firewall.")

[4] *See* https://www.cloudflare.com/ddos/.

[5] *See* https://www.cloudflare.com/learning/cdn/what-is-a-cdn/.

Cloudflare's DDoS mitigation service as primarily a means of "obfuscat[ing]" the IP addresses of "pirate sites" in order to "create[e] obstacles to enforcement" and "intentionally … facilitate infringement." Compl. ¶¶ 176, 178. This bald claim, unsupported by a single factual allegation, is not only manifestly implausible, but flatly inconsistent with Plaintiff's own pleading—since, as she acknowledges, Cloudflare *provides* customer information in response to valid legal process. Indeed, when Cloudflare receives a copyright complaint, its policy is to provide identifying and contact information for the origin hosting provider to the complainant—which it does thousands of times per week. In addition, as Plaintiff herself describes in detail, there are legal processes by which a copyright owner (like Plaintiff) can *require* an online service provider (like Cloudflare) to identify an alleged infringer, Compl. ¶ 243—though Plaintiff apparently made no attempt to seek information about Thothub by this readily available means. In addition, when Cloudflare receives a notice alleging infringing activity by one of its customers, it promptly forwards the notice to the customer, the customer's website host, or both, as the complainant requests. *See* Compl. ¶ 179.[6] Plaintiff acknowledges that Cloudflare followed its policy by forwarding her notices to Thothub. Compl. ¶¶ 71-72. Her contention that Cloudflare did so in order to "warn" Thothub about her claims, Compl. ¶ 72, is nonsensical, since she herself also sent her notices directly to Thothub, Compl. ¶ 70.

### B.     Plaintiff and Her Allegations

Plaintiff's complaint asserts various causes of action against four different entities: Thothub.tv,[7] a website that specialized in displaying "paid, amateur-oriented" adult content and "hardcore pornography" that originally appeared on "subscription" adult websites, including some that Plaintiff used for her business; BangBros, Inc. and Multi Media LLC, two adult businesses that allegedly purchased advertising on

---

[6] Plaintiff could have specified that Cloudflare only notify Thothub's hosting provider, not Thothub directly.

[7] Plaintiff also sues 21 of Thothub's users as Doe defendants, referring to them as "the Members"—though she also alleges that Thothub has a "network of over one million members." Compl. ¶¶ 3, 17.

Thothub.tv; and Cloudflare. Compl. ¶¶ 12, 16-20, 78, 90. Plaintiff's claims stem from her allegations that adult-oriented images of herself, which she made available online, were "leaked" by her fans and subscribers and posted on Thothub. Compl. ¶ 58. She alleges that Thothub's infringement caused her "both personal and financial harm," Compl. ¶¶ 74-86, including by causing her to lose "subscription fees and royalties" and by decreasing the value of her images that were formerly available only to paying subscribers. Id. ¶ 74, 254. Based on her observation that advertising for BangBros and Multi Media appeared on Thothub, she speculates (without any identified foundation) that the two companies "conspired" with Thothub to place it there. Compl. ¶¶ 190-201. Similarly, she attempts to spin a single factual allegation—that Cloudflare provided its business services to Thothub pursuant to a contract—into an elaborate, speculative, and entirely groundless "conspiracy" theory. Compl. at ¶¶ 8-10, 157-189, 256-259.

Plaintiff does not allege that Cloudflare owns or operates Thothub, and she acknowledges that Cloudflare "offers a variety of web-based services, including infrastructure support, content delivery networking, DDoS mitigation, and distributed domain-name-server services" to the general public. Id. ¶ 18. Her copyright infringement allegations consist of vague, general allegations that some of Cloudflare's services were used to "optimize distribution of … works on Thothub, shield Thothub's identity and server locations from being discovered by content owners and law enforcement organizations, and protect Thothub from cyberattacks." Id. ¶ 157. And she alleges, also in general terms, that Cloudflare's "computer systems and servers" "copied, hosted, and otherwise distributed copies of numerous copyrighted works belonging to Waidhofer" in response to "requests to and from [its customers'] servers." Id. ¶ 169. She provides no specific factual allegations about how or when Cloudflare's services infringed, or encouraged or materially contributed to third party infringement. Nor does she provide any factual allegations to identify which of her works were allegedly infringed,[8] when, or by whom, or which alleged direct infringements form the

---

[8] Plaintiff alleges she owns two copyright registrations, Compl. ¶ 69, but fails to

DEFENDANT CLOUDFLARE'S NOTICE OF MOTION AND MOTION TO DISMISS

basis of her contributory infringement claim against Cloudflare.

## III.    LEGAL STANDARD

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The pleaded facts must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). If the complaint only permits the court to infer the "mere possibility of misconduct," it should be dismissed. *Id.* at 679.

On a motion to dismiss, the court may consider the complaint, any "materials incorporated into the complaint by reference, and matters of … judicial notice." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012). "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a RICO Claim.

#### 1.    Plaintiff Lacks Standing to Bring Her RICO Claims.

Plaintiff's RICO claims against Cloudflare fail at the threshold, since the Complaint fails to establish her standing to bring them. Under 18 U.S.C. § 1964(c), which provides limited civil remedies for RICO claims, "a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to

identify which works at issue—if any—they cover. *See* below, § IV.B.1.

establish proximate causation." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, (1992)). Plaintiff alleges vaguely that Defendants' supposed "acts of racketeering" harmed her by "damaging her reputation, devaluing her commercial content, and diverting customers who would otherwise purchase access to her accounts on the Licensed Sites." Compl. ¶ 254. But allegations of reputational harm cannot be the basis for a RICO claim, and the harm she alleges to her business is too speculative to support her claims. Even more fundamentally, Plaintiff fails to adequately allege that Cloudflare proximately caused the harm of which she complains. She thus lacks standing.

As a preliminary matter, "allegations of injury to [] reputation or goodwill are personal injuries that are unconnected to a business or property interest recognized under state law and, thus, are insufficient to show injury to a business of property interest" for purposes of RICO. *Cobb v. JPMorgan Chase Bank, N.A.*, 2012 WL 5335309, at *5 (N.D. Cal. 2012) (dismissal with prejudice).

Plaintiff's bare-bones allegations that the alleged infringement "divert[ed] customers who would otherwise purchase access" to her images, and "devalue[ed] her commercial content," Compl. ¶ 254, are likewise insufficient.[9] Courts routinely reject RICO claims where—as here—alleged harm to business is indirect or speculative. Plaintiff's claims are both. *See e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir. 2008) (affirming dismissal of RICO claims under § 1962(c) because "the court would have to engage in a speculative and complicated analysis to determine what percentage of [Plaintiff's] decreased sales, if any, were attributable to [other factors, including] a Customer's preference for a competitor's products over [plaintiff's][.]"). "[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other,

---

[9] Plaintiff's "devaluation" and "diversion" allegations are functionally equivalent, since she does not allege that she "sold" her images—only that she sold subscriptions to access them. *See* Compl. ¶¶ 2, 51-54. Nowhere does she allege that access to her works was priced any lower as a result of the alleged infringement.

independent, factors." *Harmoni International Spice, Inc. v. Wenxuan Ba*i, 2016 WL 6571272, at \*12 (C.D. Cal. 2016) (internal citations and quotations omitted). Here, Plaintiff cannot establish how many (if any) Thothub users would have purchased a subscription to access Plaintiff's photographs had they not been "diverted" by the alleged infringement. Nor is there any principled way to determine how much—if at all—her commercial content was "devalued," especially because it apparently has never been sold. *See* Compl. ¶¶ 51-54. Not only would calculating Plaintiff's damages be an exercise in pure speculation, but the Court could not apportion the amount of Plaintiff's injury attributable to the Defendants' alleged conduct, much less to Cloudflare's in particular. *See Ozeran v. Jacobs*, 2018 WL 1989525, at \*9 (C.D. Cal. Apr. 25, 2018), *aff'd*, 798 F. App'x 120 (9th Cir. 2020) (dismissing legal service provider's RICO claim against a rival because the "alleged injury—the devaluation of his advertisement and loss of potential customers—[wa]s too attenuated to satisfy the civil RICO proximate cause requirement."). Absent a provable, concrete financial injury, Plaintiff's RICO claims must be dismissed.

Even more fundamentally, Plaintiff's allegations are insufficient to show the required causal connection between Cloudflare's alleged conduct and any alleged harm to her business or property. RICO standing requires a plaintiff to "show that the defendant's RICO violation proximately caused her injury … [which] requires some direct relation between the injury asserted and the injurious conduct alleged." *Canyon Cty.*, 519 F.3d at 981 (internal quotation marks and citation omitted) (explaining that injury must have occurred "by reason of" defendant's RICO violation). Showing "but for" causation is not enough. *Id.* "[T]he central question ... is whether the alleged violation led directly to plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Allegations must be sufficient to show that a particular defendant caused harm to the plaintiff: generalized allegations against a group of defendants are insufficient. *See Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1023 (C.D. Cal. 2011) (dismissing RICO claim based on copyright and trademark infringement because

1   plaintiff "d[id] not differentiate between the injury caused by each [defendant's] alleged

2   pattern of racketeering acts, but consider[ed] the acts of racketeering en masse").

3       Strikingly absent from Plaintiff's narrative is any allegation that Cloudflare

4   proximately caused her harm: her allegations are insufficient to show *any* connection

5   between Cloudflare's alleged conduct and her alleged injuries, let alone a direct, causal

6   one. Rather, her alleged injury stems from acts of her own subscribers and fans in

7   "leaking" her alleged images, and from acts of Thothub and its users in posting them

8   online and making them available to others. Cloudflare did nothing to cause these acts,

9   and Plaintiff does not (and could not) allege that it did. Even if Cloudflare had never

10   provided services to Thothub, or never existed at all, that would not have prevented

11   Plaintiff's images from being leaked, or being posted on Thothub. *See Scoggins v.*

12   *HSBC Bank USA*, 2015 WL 12670410, at *3 (C.D. Cal. Oct. 8, 2015) (dismissing RICO

13   claim against provider of banking services for lack of "but for" and proximate causation,

14   because "even if [Defendant] were not in the picture, the gang members may still have

15   stolen from Plaintiffs and then deposited the proceeds … elsewhere"). And to the extent

16   Cloudflare's alleged conduct occurred after the alleged infringement, it was plainly not

17   the proximate cause of resulting harm. *See Oki Semiconductor Co. v. Wells Fargo Bank,*

18   *Nat. Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002) (rejecting RICO claim for failure to

19   establish "but for" or proximate causation where Defendant's acts took place after the

20   alleged conspiracy stole Plaintiff's property). As described above at § II.A., Cloudflare

21   acts as an intermediary and a buffer between a website and its visitors, providing

22   security and protecting the website from DDoS attacks. Cloudflare does not own or

23   operate Thothub, cannot control what is posted on any given website, and lacks the

24   ability to remove infringing content. Removing Cloudflare's services would do nothing

25   to remove the content, as users could still visit the website directly without the benefit

26   of Cloudflare's security buffer. And even if CDN services contributed in any way to the

27   harm Plaintiff allegedly suffered—which they did not—countless other companies also

28   offer CDN services. Cloudflare could not plausibly be considered the proximate cause

of any harm flowing from the use of this type of service, any more than a Halloween supply company could be said to have "caused" a bank's losses from masked robbers. On the facts Plaintiff alleges, it cannot plausibly be said that Cloudflare is even a "but for" cause of her alleged injuries, let alone their proximate cause. Plaintiff thus lacks standing to assert her RICO claim.

### 2.     Plaintiff Fails to State a Claim Under 18 U.S.C. § 1962(c)

Even if Plaintiff did have RICO standing, her Complaint fails to come close to plausibly pleading a RICO violation under 18 U.S.C. § 1962(c), for which "plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*) (*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiff's 1962(c) claim relies entirely on Cloudflare's alleged provision of content delivery and reverse proxy services to Thothub, and fails to adequately plead the first two elements.[10]

### (a)     Plaintiff Fails to Plead that Cloudflare Was Part of a RICO "Enterprise"

Taking the second prong first, as courts often do, a plaintiff must allege that all defendants are collectively part of a single RICO enterprise. *See Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *3-4 (C.D. Cal. July 13, 2015). Plaintiff tries to do so by alleging that four entirely unrelated Defendants[11] were engaged in an "association-in-fact" enterprise. *See* Compl. ¶ 247. An "association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. U.S.*, 556 U.S. 938, 946 (2009) (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)). To show an association-in-fact enterprise, a plaintiff must

---

[10] For purposes of this motion, Cloudflare focuses substantively on prongs 1 and 2, although Plaintiff's claim also fails under prongs 3 and 4. Among other things, Plaintiff's claim that Cloudflare's provision of lawful commercial services amounts to criminal copyright infringement under 18 U.S.C. § 2319 is manifestly implausible.

[11] Plaintiff does not allege any interaction between Cloudflare and either Bangbros or Multi Media (the "Advertising Defendants"), nor any link between Thothub and the three Defendants collectively. Thus, to the extent the Court dismisses Plaintiff's RICO "enterprise" claims against the Advertising Defendants, it should do so with respect to Cloudflare as well, and for the same reasons.

---

11

establish: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence that the associates function as a continuing unit. *Odom*, 486 F.3d at 552 (citation omitted).

As this Court has recognized, there is a "remarkable uniformity ... that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez*, 2015 WL 4270042, at *8-11; *see, e.g.*, *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3 (C.D. Cal. Jan. 28, 2016) ("[T]he fact that [eBay and PayPal] provided general professional services ... to the public at large, does not provide a basis for inferring that [they and the other defendants] shared a common unlawful purpose' or combined as an enterprise in furtherance of that purpose."); *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) ("Accepting plaintiff's allegations as sufficient … would lead to the absurd conclusion that each of the many million combinations of merchant, MasterCard and lender is a RICO enterprise."). Courts dismiss such claims by finding that the plaintiff has failed to plead a "common purpose" of the RICO enterprise. *Gomez*, 2015 WL 4270042, at *9; *Stitt v. Citibank, N.A.*, 748 F. App'x 99, 101 (9th Cir. 2018) ("The mere existence of … a servicing contract between [a defendant] and [its vendor] does not establish a common purpose under RICO."). There can be no common purpose of an enterprise where, as here, each defendant is merely acting in its own economic interest. "Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an 'enterprise'" even if their alleged actions assist[]" another defendant in an alleged illegal "scheme." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012).

Plaintiff's own allegations are fatal to her claim, for they plainly show an ordinary business relationship between a service provider and a customer. The services Cloudflare allegedly provided to Thothub are available to the general public. *See* Compl. ¶¶ 163-65 (enumerating Cloudflare's alleged services). Plaintiff struggles to

evade this conclusion with a vague, unsourced, and apparently invented allegation that unidentified Cloudflare "representatives" discussed "Thothub's operations and goals" with unidentified members of its "leadership team"[12] before entering into a contract for services. Compl. ¶ 168. But this "identifie[s] exactly the type of arms-length business transaction, with each party pursuing its own independent economic interests, that does not constitute a RICO enterprise." *In re Countrywide*, 2012 WL 10731957 at *9 ("[Plaintiff's] allegation amounts to one that '[Defendant] offered to buy something, and the [third party] obliged."). Plaintiff concedes that "Thothub pays Cloudflare *pursuant to a services agreement*" "[i]n exchange for Cloudflare's content delivery services and anonymity protection." Compl. ¶ 10 (emphasis added); *id.* ¶ 8 ("Cloudflare contracts with Thothub to provide content delivery and security services for Thothub."). An ordinary business relationship like this is plainly insufficient to plead an enterprise support RICO liability. *See Gomez*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) ("[T]he statutory requirements of RICO 'cannot be circumvented by attempting to characterize a routine contractual relationship for services as an independent enterprise.' ... Allowing such circumvention would not only expand RICO beyond Congress's intent, it would also undermine the integrity of the judicial system by making liability depend on counsel's artful pleading practices, rather than the actual circumstances giving rise to litigation.") (citation omitted).

**(b)    Plaintiff Fails to Plead that Cloudflare Participated in the Conduct of the Alleged Enterprise's Affairs**

Plaintiff also fails to allege Cloudflare's participation in the *conduct* of any enterprise's affairs, as required under the first prong of § 1962(c). Preliminarily, where a "plaintiff[] ha[s] failed to allege sufficiently the existence of an association-in-fact enterprise ... [it] cannot, as a logical matter, be found to have alleged distinct enterprise conduct." *Ellis v. J.P.Morgan Chase & Co.*, 2015 WL 78190, at *6 (N.D. Cal. Jan. 6,

---

[12] This allegation is in considerable tension with Plaintiff's claim that Thothub's "Members" or managers are "unidentified persons." Compl. ¶ 17.

2015), *aff'd* sub nom. *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380 (9th Cir. 2018). But even if there had been such an enterprise, civil RICO requires that the "[d]efendant must 'conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs.'" *Gomez*, 2015 WL 4270042, at *4 (C.D. Cal. July 13, 2015) (quoting 18 U.S.C. § 1962(c)). Such conduct "means more than mere participation in the enterprise's affairs. RICO liability only attaches to 'those who participate in the operation or management of an enterprise through a pattern of racketeering activity.'" *Id.* (citation omitted). So "one must have some part in *directing* [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)) (emphasis added).

Plaintiff's claim must also be dismissed because she pleads only ordinary business conduct by Cloudflare, not enterprise conduct. RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves*, 507 U.S. at 185 (emphasis in original). And the means of "conducting" the enterprises affairs must be "through a pattern of racketeering activity," 18 U.S.C. § 1962(c), which Plaintiff also fails to show. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"). Here, Cloudflare's alleged conduct in carrying out its business affairs is not only lawful, but laudable: its content delivery and reverse proxy services not only serve Cloudflare's clients (and Cloudflare's own business interests), but by enhancing the security, performance, and reliability of a vast array of websites, they help to secure the Internet as a whole. Such ordinary business conduct is plainly insufficient to support a RICO claim. *See Wimo Labs*, 2016 WL 11507382, at *3 (dismissing RICO claims where the "allegations as to PayPal and eBay [we]re wholly consistent with ordinary business conduct and an ordinary business purpose[,]" and failed "to distinguish ordinary conduct from unlawful conduct[.]") (internal quotation marks and alterations omitted).

Finally, nothing in Plaintiff's Complaint comes close to meeting her burden to allege that Cloudflare "directed" the supposed enterprise's affairs in any way. *Reves*, 507 U.S. at 179. Plaintiff alleges that Cloudflare provides reverse proxy services to

Thothub for a fee, but "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008); *and see Goren v. New Vision Int'l*, 156 F.3d 721, 728 (7th Cir. 1998) ("[P]erforming services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability"). Plaintiff's allegations fall far short of showing that Cloudflare "directed" the enterprise—which, in any event, did not exist—and her claim under § 1962(c) must, therefore, be dismissed.

### 3. Plaintiff Fails to State a Claim Under §§ 1962(a) and (d).

Plaintiff's RICO claims under § 1962(a) (investment of RICO income) and § 1962(d) (conspiracy to violate RICO) are equally deficient. As to § 1962(a), Plaintiff's sole allegation is that Defendants "received income derived from the pattern of racketeering activity described herein and used the income to acquire or invest in an enterprise in interstate commerce." Compl. ¶ 261. Not only is this exactly the sort of "formulaic recitation of a cause of action's elements" that "will not do" under *Twombly*, but "[a]lleging that a defendant reinvested 'proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation.' ... Otherwise, 'almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 920 (C.D. Cal. 2011) (citation omitted). Moreover, Plaintiff does not, and cannot, allege that she was injured by Cloudflare's use of any income it received from Thothub: instead, she alleges only that she was harmed by the alleged infringing activity itself. *See* Compl. ¶ 260. But a RICO plaintiff seeking relief under § 1962(a) must "allege[] an[] injury that is 'separate and distinct' from the economic loss that [allegedly] flowed from the predicate acts themselves." *Toyota Motor Corp.*, 785 F. Supp. 2d at 920. Plaintiff's failure to make such an allegation dooms her claim.

Her § 1962(d) "conspiracy" claim fares no better. "A defendant cannot be liable for a RICO conspiracy under Section 1962(d) if the defendant is not liable under …

Sections 1962(a), (b), or (c)." *Pac. Recovery Sols. v. United Behavioral Health*, 2020 WL 5074315, at *8 (N.D. Cal. Aug. 25, 2020). *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."). Plaintiff's RICO conspiracy claim thus fails for all the reasons articulated above. *See Citibank*, 748 F. App'x at 101 (Section 1962(c) and (d) claims failed due to failure to plead a RICO enterprise); *Ellis v. J.P.Morgan Chase & Co.*, 2015 WL 78190, at *6 (N.D. Cal. Jan. 6, 2015), *aff'd*, 752 F. App'x 380 (9th Cir. 2018) (§ 1962(d) claim failed due to "fail[ure] to allege the requisite substantive elements of … Section 1962(c).").[13]

### B.   Plaintiff Fails to State a Claim for Copyright Infringement

The Complaint also fails to allege facts sufficient to state a claim for either direct or contributory copyright infringement against Cloudflare. It merely alleges that Cloudflare directly infringed unidentified works "by reproducing and storing copies of the Works on its servers and distributing copies of the Works to the public through its content delivery network," ¶ 268,[14] but fails to allege the requisite volition to state a claim for direct copyright infringement. It also fails to allege facts sufficient to support contributory infringement by Cloudflare, as it fails to adequately allege Cloudflare's material contribution to infringement.

### 1.   Plaintiff Fails to Allege Registration of Her "Works"

Preliminarily, Plaintiff's copyright claims should be dismissed because she fails either to plead a valid registration, or to identify the works at issue. "[N]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made[.]" 17 U.S.C. § 411(a). This requirement is *not* met when an application is filed: the registration must actually issue

---

[13] Plaintiff's Complaint also falls far short of substantively pleading a violation of § 1962(d). Plaintiff's (apparently invented) allegation of a phone call between Thothub and Cloudflare to develop a "bespoke proposal" fails, even if true, to connect the "information" that Cloudflare allegedly "acquired" about Thothub's operations, to an *intent* by Cloudflare to further Thothub's goals. Compl. ¶ 168.

[14] Plaintiff alleges vaguely that Cloudflare "optimizes Thothub's display of infringing works," but does not allege that Cloudflare itself displayed works at issue. Compl. ¶ 8.

before a copyright owner may bring suit. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019). In addition, a plaintiff must identify, with specificity, which work or works were allegedly copied. *See TVB Holdings USA Inc. v. Enom Inc.*, 2014 WL 12581778, at *3 (C.D. Cal. Jan. 6, 2014). Plaintiff's Complaint fails to identify which works were allegedly infringed, or that they were registered. *See* Compl. ¶ 69 (conceding that certain "applications remain pending"). Accordingly, her copyright claims must be dismissed. *See Fourth Estate Pub. Benefit Corp.*, 139 S.Ct. at 887, 892; *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (complaint cannot be amended to include works registered post-filing).

### 2.   Plaintiff Fails to Sufficiently Allege that Cloudflare Directly Infringed Her Copyrights

Plaintiff alleges that Cloudflare provided caching and reverse proxy services to Thothub—which Cloudflare's systems performed automatically, just as when providing the same services to tens of millions of websites and Internet properties that subscribe to Cloudflare's services. Plaintiff's allegations are insufficient to show that Cloudflare engaged in any volitional conduct that caused the infringement of Plaintiff's copyrights.

To allege direct copyright infringement, a plaintiff must allege ownership of a valid copyright, and that it was copied without authorization. *Musero v. Mosaic Media Grp., Inc.*, 2010 WL 11595453, at *2 (C.D. Cal. Aug. 9, 2010). Fundamental to the second prong, stating a claim for direct infringement "requires the plaintiff to show … 'volitional conduct'[] by the defendant" that *caused* the infringement. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Merely "operating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made." *Fox Broadcasting Co., Inc. v. Dish Network LLC*, 747 F. 3d 1060, 1067 (9th Cir. 2014); *Giganews*, 847 F.3d at 670 ("[A]utomatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an Internet service provider strictly liable for copyright infringement.") (alterations and citation omitted). Rather, "[i]n determining who actually 'makes' a

17

copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). "[T]he so-called 'volition' element of direct infringement … is a basic requirement of causation[,]" since "*direct* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement." *Giganews*, 847 F.3d at 666 (quoting district court, emphases in original).

Specifically, a service provider's automatic creation of "cache" copies of information in the ordinary course of its business does not constitute direct copyright infringement. *See, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995) (system operator was not liable for direct copyright infringement due to "[its] act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it" "without any human intervention."); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1114 (D. Nev. 2006) (online service provider did not directly infringe "by operating its cache and presenting … links to works within it"); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("When [an online service provider] automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing."). In such cases, "it is the user, not [the service provider], who creates and downloads a copy" of the requested content. *Field*, 412 F. Supp. 2d at 1115.

The Complaint lacks any allegation that Cloudflare acted with volition to infringe Plaintiff's alleged copyrights, and thus fails to state a claim for direct infringement by Cloudflare. Instead, Plaintiff's allegations show that Cloudflare's conduct was *non*-volitional: she repeatedly concedes that Cloudflare took automated actions in response to requests from Thothub or its users:

- "Cloudflare … ***serves requests*** to and from its customers' servers." Compl.

1    ¶ 169 (internal quotation marks and alterations omitted).

2    • "Cloudflare's network and servers" "support[]" "***Thothub URLs where***

3    ***Waidhofer's works have been publicly displayed[.]***" *Id.* ¶ 171.

4    • "Cloudflare … optimizes ***Thothub's display*** of infringing works." *Id.* ¶ 8.

5    • "***When an end-user requests*** a page that contains a copyrighted work from

6    [Thothub] … Cloudflare distributes a copy of the ***requested content*** to the

7    end-user's device"." *Id.* ¶ 173.

8    Such "automated, non-volitional conduct … in response to a user's request does

9    not constitute direct infringement under the Copyright Act." *Field*, 412 F. Supp. 2d at

10   1115 (collecting cases). Because Plaintiff does not allege that any volitional conduct by

11   Cloudflare caused the infringement, her claim should be dismissed with prejudice.

12   **3.    Plaintiff Fails to Adequately Allege Contributory Infringement**

13   The Complaint also fails to adequately allege facts sufficient to hold Cloudflare

14   liable for contributory infringement. It is a bedrock requirement that contributory

15   infringement requires showing that the defendant acted with "culpable intent." *Metro–*

16   *Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005); *Cobbler*

17   *Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ("Nothing in [the]

18   complaint alleges, or even suggests, that [defendant] actively induced or materially

19   contributed to the infringement through purposeful, culpable expression and conduct.")

20   (internal quotation marks and citation omitted); "An allegation that a defendant merely

21   provided the means to accomplish an infringing activity is insufficient to establish [the]

22   claim." *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22,

23   2014). Where (as here) the defendant is "[a] computer system operator," showing the

24   requisite intent requires showing that the defendant "has *actual* knowledge that *specific*

25   infringing material is available using its system, and can take simple measures to

26   prevent further damage to copyrighted works, yet continues to provide access to

27   infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F. 3d 1146, 1172 (9th Cir.

28   2007) (emphases in original; citations and quotation marks omitted).

1    Plaintiff's allegations are insufficient to show that Cloudflare had the requisite

2    intent, as *Grokster* and its progeny require. Plaintiff does not (and could not) allege that

3    Cloudflare's services played any role when Plaintiff's own subscribers allegedly

4    "leaked" copies of her images, or when they were posted on Thothub. And she utterly

5    fails to allege that Cloudflare could have taken simple measures, or that it *failed* to take

6    available simple measures, to "prevent further damage to [Plaintiff's] copyrighted

7    works." Rather, she concedes that Cloudflare *did* take the only simple measure available

8    to it in attempting to address her claims of infringement: namely, "Cloudflare passed

9    [Plaintiff's] notice directly to Thothub." Compl. ¶ 72; *see id.* ¶ 179 (conceding that

10   Cloudflare "forwards … requests for removal of content to [the alleged direct

11   infringer]"). Her sole vague, conclusory allegation that "Cloudflare has not taken

12   reasonable action to address Thothub's repeat infringement," Compl. ¶ 185, is

13   insufficient to support her contributory infringement claim, particularly in light of her

14   other allegations.

15   Not only does Plaintiff fail to identify any simple measures available to

16   Cloudflare that it did not take, her own allegations establish that Cloudflare took the

17   very actions the Ninth Circuit has recognized can satisfy "simple measure" for purposes

18   of contributory infringement analysis in this context. The Ninth Circuit, in *ALS Scan,*

19   *Inc. v. Steadfast Networks, LLC*, 819 Fed. App'x 522, 524 (9th Cir. 2020), recently held

20   that a computer system operator that leased servers to an allegedly infringing website

21   could not be held liable for contributory infringement when it took the "simple measure"

22   of forwarding notices of claimed infringement to the website, and there was no evidence

23   defendant had "other simple measures at its disposal." Here, Plaintiff concedes that

24   Cloudflare forwarded Plaintiff's infringement notices to Thothub, Compl. ¶¶ 72, 179,

25   and that she could readily have obtained identifying information about Thothub and its

26   hosting provider from Cloudflare, Compl. ¶ 243. At the same time, Plaintiff does not

27   allege (and could not plausibly allege) that the withdrawal of Cloudflare's services

28   would have had any effect on the availability or accessibility of Thothub's website. This

case thus presents an easier question than the motion to dismiss the district court denied earlier in that same *ALS Scan* case. *See* Case No. 16-cv-05051-GW-AFM, Dkt. No. 60 (C.D. Cal. Oct. 24, 2016). Plaintiff's own allegations and the Ninth Circuit's recent decision make clear that Cloudflare took all appropriate steps consistent with the nature of its services to address complaints alleging infringing content on a website using those services. And, at a minimum, nothing in Plaintiff's allegations suggest that Cloudflare "materially contributed to the infringement through 'purposeful, culpable expression and conduct.'" *Cobbler Nevada, LLC*, 901 F.3d at 1148.

Instead of attempting to allege that Cloudflare had the requisite intent for contributory infringement, Plaintiff simply seeks to hold Cloudflare liable for providing its ordinary services "pursuant to a services agreement." Compl. ¶ 10. This is precisely the type of conduct—"merely provid[ing] the means to accomplish an infringing activity"—that "is insufficient to establish a claim for copyright infringement." *Tarantino*, 2014 WL 2434647 at *3. Not only does Plaintiff fail to allege the required purposeful conduct by Cloudflare, but her allegations are to the contrary: she concedes that, to the extent "Cloudflare's computer systems and servers … copied, hosted, and otherwise distributed copies of … copyrighted works belonging to Waidhofer," it was in response to "requests to and from [its customers'] servers," Compl. ¶ 169; that "Cloudflare retrieves the works from [Thothub's] host servers when an end-user visits the page that includes the works," *id.* ¶ 172; and that "*[w]hen an end-user requests a page* that contains a copyrighted work from … Thothub … Cloudflare distributes a copy of the requested content to the end-user's device[,]" *id.* ¶ 173 (emphasis added). The Complaint fails to allege that Cloudflare acted intentionally or made any causal contribution to the alleged direct infringement, and Cloudflare concededly took the only simple measure available to it when it forwarded Plaintiff's notices to the alleged infringer. Plaintiff's contributory infringement claim should be dismissed.

### C.   Plaintiff Fails to State a Negligence Claim Against Cloudflare

Plaintiff's negligence claim against Cloudflare fails for three independent

reasons: (1) it is preempted by the Copyright Act; (2) it is precluded by Section 230 of the Communications Decency Act; and (3) Plaintiff fails to allege its elements.

### 1.    The Copyright Act Preempts Plaintiff's Negligence Claim

Plaintiff's negligence claim is preempted by the Copyright Act. 17 U.S.C. § 301(a) ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright … are governed exclusively by this title …."). "[W]hen plaintiff's claim relies solely on defendant's use of copyrighted material—that is, the reproduction, performance, distribution, or display of the work—the claim is preempted." *McCormick v. Sony Pictures Entm't*, 2008 WL 11336160, at *9 (C.D. Cal. Nov. 17, 2008). To survive preemption, state law claims arising from allegations of unlawful copying must have an "extra element" that "changes the nature of the action so that it is *qualitatively* different from a copyright … infringement claim." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993) (internal quotation marks and citation omitted, emphasis in original).

Plaintiff's claim lacks the required extra element: subtract her copyright claim, and nothing remains. Her negligence allegations simply paraphrase her infringement allegations. *Compare* Compl. ¶¶ 301-302 (alleging Defendant acted negligently by providing "storage, delivery, and security services for Thothub" that contributed to Thothub's alleged activities as a so-called "pirate site"), *with* Compl. ¶ 274 ("Cloudflare causes or materially contributes to the infringing conduct, among other things, by distributing the stolen works through its content delivery network, reproducing copies of the stolen works on its servers, and shielding the direct infringers from enforcement actions"). "[T]he recharacterization of the claim as one of 'negligence' does not add a legally cognizable additional element." *Our House Films, LLC v. Tunnel, Inc.*, 2018 WL 7348847, at *2 (C.D. Cal. Dec. 11, 2018) (finding preemption where plaintiff's "reference to negligence depends on acts of unauthorized performance, distribution or display—which the Copyright Act already proscribes" (citations omitted)). Plaintiff's negligence claim depends entirely on allegations that Cloudflare enabled infringement

of her copyrights, precisely what the Copyright Act preempts.

## 2. Section 230 of the CDA Precludes Plaintiff's Negligence Claim

Under § 230 of the Communications Decency Act ("CDA"), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C § 230(c)(1). Section 230 establishes "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service" and "expressly preempts any state law to the contrary." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (citations omitted).

Cloudflare easily meets the definition of a "provider … of an interactive computer service" as a "system … software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). And Plaintiff seeks to hold Cloudflare liable for "information" (copies of Plaintiff's works) that originated with "another information content provider (Thothub).[15] Negligence claims come within the ambit of § 230, since "what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress … Courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009)); *and see, e.g.*, *Kangaroo Mfg. Inc. v. Amazon.com Inc.*, 2019 WL 1280945, at *6 (D. Ariz. Mar. 20, 2019) (dismissing negligence claims as precluded by § 230). In *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *15 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017), this Court held that Section 230 preempted state law claims brought against an online service provider for, among other things, "'offering for free' adult-oriented content without purchasing expensive licenses, thereby making it impossible for businesses like

---

[15] Plaintiff's allegation that she was harmed "as a result of" Cloudflare's "providing … security services for Thothub" borders on the frivolous. Compl. ¶¶ 8, 301.

Perfect 10 that actually purchase these licenses to compete[.]" The same is true here.

### 3. Plaintiff Fails to Properly Plead Negligence, Let Alone Gross Negligence, Against Cloudflare

Even if Plaintiff's negligence claim were not preempted by the Copyright Act or precluded by the CDA, she fails to plead its elements: (1) that Cloudflare owed her a duty of care;[16] (2) that Cloudflare breached that duty; and (3) that the breach caused Plaintiff "to suffer harm or loss." *Our House Films*, 2018 WL 7348847, at *2.

Under California law, "[t]he determination whether in a specific case the defendant will be held liable [on a negligence theory] to a third person not in privity … involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). Here, each factor weighs strongly against finding a duty of care. *First*, Plaintiff does not (and could not) allege that Cloudflare "intended" to affect her by providing its generally available commercial services to Thothub; to find otherwise would imply that *every* online service provider owed a duty to *every* Internet user to monitor how its lawful services were being used by *any* customer—an absurdity. *Second*, for the same reason, no harm to Plaintiff was foreseeable. *Third*, as discussed in detail above, any harm to Plaintiff was (and is) highly speculative and not concrete. *Fourth*, as detailed above, Cloudflare's conduct had no impact on Plaintiff's injury, since the content would still have been available with or without Cloudflare's services. *Fifth*, Cloudflare lacks moral blame: its services are intended to, and do, ensure its customers' safety and security online. And *sixth*,

---

[16] As a preliminary matter, the fact that "[t]he only possible basis for a duty to protect another from copyright infringement—if such a duty can exist—is in copyright law[,]" strongly implies preemption here. *Watermark Publishers v. High Tech. Sys.*, 1997 WL 717677, *15 (S.D. Cal. June 18, 1997).

1  punishing Cloudflare would not serve to prevent future harm, since websites like
2  Thothub would continue to exist with or without Cloudflare's services. Accordingly,
3  Plaintiff cannot establish a duty of care with respect to Plaintiff.

4      But even if Cloudflare *had* owed a duty to Plaintiff, she fails to plead that it was
5  breached. Cloudflare did not own or control Thothub, and lacked the power either to
6  remove content from Thothub, or to remove the website from the Internet. The only
7  thing Cloudflare could do to protect Plaintiff was forward her copyright notices to
8  Thothub—which it did. Compl. ¶ 72. Accepting Plaintiff's breathtakingly broad
9  negligence theory would lead to the absurd result that *any* plaintiff could sue *any* service
10 provider—even one that, like Cloudflare, serves millions of customers—merely for
11 providing general, lawful commercial services to alleged tortfeasors.

12     Finally, Plaintiff fails to adequately allege that Cloudflare's purported negligence
13 proximately caused her harm: Cloudflare played no role in posting Plaintiff's
14 photographs on Thothub, and lacked the ability to remove them after they were posted.
15 Even if Cloudflare had refused its services to Thothub, the website would have
16 remained online. Plaintiff fails to adequately allege *any* of the elements of negligence.

17 **V.    CONCLUSION**

18     For these reasons, the Court should dismiss Counts One, Two, Three, Five, Six,
19 and Eleven against Cloudflare with prejudice as amendment would be futile.

20 Dated: October 14, 2020                WINSTON & STRAWN LLP

21                                        By: */s/ Jennifer A. Golinveaux*
22                                             Jennifer A. Golinveaux
                                             Thomas J. Kearney
23                                           WINSTON & STRAWN LLP
                                             101 California Street, 35th Floor
24                                           San Francisco, CA 94111-5840
                                             (415) 591-1000 (telephone)
25                                           jgolinveaux@winston.com
                                             tkearney@winston.com
26
                                             Michael S. Elkin
27                                           WINSTON & STRAWN LLP
                                             200 Park Avenue
28                                           New York, NY 10166

1

 (212) 294-6700 (telephone)
melkin@winston.com

2

3

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700 (telephone)
eranahan@winston.com

4

5

6

*Attorneys for Defendant
CLOUDFLARE, INC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CLOUDFLARE'S NOTICE OF MOTION AND MOTION TO DISMISS