UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DENIECE WAIDHOFER, an
individual; MARGARET MCGEHEE,
an individual; and RYUU LAVITZ,
LLC, a Massachusetts limited liability
company,

        Plaintiffs,

   v.

CLOUDFLARE, INC., a Delaware
corporation; BANGBROS.COM, INC.,
a Florida corporation; SONESTA
TECHNOLOGIES, INC., a Florida
corporation; MULTI MEDIA LLC, a
California limited liability company;
CRAKMEDIA INC., a Canadian
corporation; and JOHN DOES 1-21, as-
yet unidentified individuals,

        Defendants.

Case No. 2:20-cv-06979-FMO-AS

**PLAINTIFFS' RESPONSE TO
ADVERTISER DEFENDANTS'
MOTION TO DISMISS (DKT 85)**

Date Filed: Nov. 18, 2020
Hearing:    Jan. 21, 2021
Time:       10:00 AM
Courtroom: 6D

Judge: Hon. Fernando Olguin

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| INTRODUCTION | | 1 |
| LEGAL STANDARDS | | 2 |
| PROCEDURAL ISSUES | | 2 |
| MERITS ISSUES | | 3 |
| I. | The Complaint Plausibly Alleges an Agency Relationship | 4 |
| II. | The Complaint Plausibly Alleges Contributory Infringement | 7 |
| | A. Knowledge of Infringement | 7 |
| | B. Material Contribution | 12 |
| III. | The Complaint Plausibly Alleges RICO Claims | 15 |
| | A. Applicable Pleading Standard | 17 |
| | B. Standing | 18 |
| | C. Section 1962(d) Conspiracy Claim | 20 |
| | D. Section 1962(a) Investment Claim | 23 |
| IV. | The Complaint Plausibly Alleges Unfair Competition | 24 |
| CONCLUSION | | 25 |

i

PLAINTIFFS' RESPONSE TO ADVERTISERS' MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

# TABLE OF AUTHORITIES

**Page(s)**

## CASE LAW

*ALS Scan, Inc. v. Cloudflare, Inc.*,
    2017 WL 1520444 (C.D. Cal. Feb. 16, 2017) ............................................. 12

*ALS Scan, Inc. v. Cloudflare, Inc.*,
    No. 2:16-cv-05051, Dkt 53 (C.D. Cal. Oct. 3, 2016) ................................. 11

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................... 19, 20

*Arista Records LLC v. Lime Group LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011)...................................................... 8, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 2

*Bannon v. United States*,
    156 U.S. 464 (1895) ...................................................................................... 21

*Beck v. Prupis*,
    529 U.S. 494 (2000) ............................................................................... 19, 20

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 2

*Brady v. Dairy Fresh Prods. Co.*,
    974 F.2d 1149 (9th Cir. 1992) ........................................................................ 5

*Bryant v. Mattel, Inc.*,
    2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ................................... 19, 20, 21

*C&M Café v. Kinetic Farm, Inc.*,
    2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) ...................................... 18, 19

ii

*Community for Creative Non-Violence v. Reid*,

    490 U.S. 730 (1989) ................................................................... 5

*Coultas v. Liberty Mutual Fire Insurance Co.*,

    2015 WL 2376003 (D. Or. May 18, 2015)................................. 23

*Davis v. CBS Interactive, Inc.*,

    2012 WL 12884914 (C.D. Cal. July 13, 2012) ........................... 8

*Day v. AT&T Corp.*,

    63 Cal. App. 4th 325 (Cal. App. 1998)..................................... 24

*DeVoto v. Pacific Fidelity Life Ins. Co.*,

    618 F.2d 1340 (9th Cir. 1980) ................................................ 10

*Dion LLC v. Infotek Wireless, Inc.*,

    2007 WL 3231738 (N.D. Cal. Oct. 30, 2007) ........................... 4

*Elsevier Ltd. v. Chitika, Inc.*,

    826 F. Supp. 2d 398 (D. Mass. 2011) ...................................... 14

*Ferguson Beauregard/Logic Controls, Div. of Dover Res. Inc. v.*

    *Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003)...................... 18

*Fonovisa, Inc. v. Cherry Auction, Inc.*,

    76 F.3d 259 (9th Cir. 1996) ............................................... 7, 12

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*,

    139 S. Ct. 881 (2019) ............................................................... 3

*Gomez v. Guthy-Renker, LLC*,

    2015 WL 4270042 (C.D. Cal. July 13, 2015) ........................... 23

*Grimmett v. Brown*,

    75 F.3d 506 (9th Cir. 1996) .................................................... 16

*Hennessy v. Infinity Insurance Co.*,

    358 F. Supp. 3d 1074 (C.D. Cal. 2019)................................... 17

iii

PLAINTIFFS' RESPONSE TO ADVERTISERS' MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

*Imageline, Inc. v. CafePress.com, Inc.*,

    2011 WL 1322525 (C.D. Cal. Apr. 6, 2011)............................................. 4, 6

*In re Syntex Corp. Securities Litigation*,

    95 F.3d 922 (9th Cir. 1996) ........................................................................ 3

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,

    617 F.3d 1146 (9th Cir. 2010) .................................................................. 25

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*,

    391 F. Supp. 3d 959 (N.D. Cal. 2019) ..................................................... 18

*Lopez v. Smith*,

    203 F.3d 1122 (9th Cir. 2000) (en banc).................................................. 25

*Kristenson v. Credit Payment Services, Inc.*,

    2015 WL 4477425 (D. Nev. July 20, 2015)................................................ 6

*Kodadek v. MTV Networks, Inc.*,

    152 F.3d 1209, 1212–13 (9th Cir. 1998)................................................. 25

*Maloney v. T3Media, Inc.*,

    853 F.3d 1004 (9th Cir. 2017) .................................................................. 25

*Mavrix Photos, LLC v. Livejournal, Inc.*,

    873 F.3d 1045 (9th Cir. 2017) ....................................................... 4, 5, 6, 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

    545 U.S. 913 (2005) ................................................................................. 10

*Minx International Inc. v. Club House Creations, Inc.*,

    2016 WL 878479 (C.D. Cal. Mar. 7, 2016) ............................................... 2

*Moore v. Kayport Package Express, Inc.*,

    885 F.2d 531 (9th Cir. 1989) .................................................................... 18

*Mostowfi v. i2 Telecom Int'l, Inc.*,

    269 Fed. App'x 621 (9th Cir. 2008) ........................................................ 17

*Nugget Hydro, L.P. v. Pacific Gas & Electric Co.*,
    981 F.2d 429 (9th Cir. 1992) ................................................................ 24

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ........................................................... 16, 23

*Oki Semi. Co. v. Wells Fargo Bank, N.A.*,
    298 F.3d 768 (9th Cir. 2002) ............................................................. 5, 23

*Patel Burica & Assocs., Inc. v. Lin*,
    2019 WL6954256 (C.D. Cal. Dec. 19, 2019) ........................................ 2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................... 10, 11, 12, 13, 15

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ........................................ 1, 19, 23

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) .............................. 1, 11, 12, 14, 15

*Perfect 10, Inc. v. Visa International Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ......................................................... 7, 14, 16

*Philips North America LLC v. KPI Healthcare, Inc.*,
    2020 WL 3032765 (C.D. Cal. Jan. 24, 2020) ........................................ 3

*Pinkerton v. U.S.*,
    328 U.S. 640 (1946) ............................................................................. 20

*Salinas v. U.S.*,
    522 U.S. 52 (1997) .......................................................................... 19, 21

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*,
    256 F. Supp. 399 (S.D.N.Y. 1966) ...................................................... 12

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) ............................................................................. 16

v

PLAINTIFFS' RESPONSE TO ADVERTISERS' MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

*Sid Avery & Associates, Inc. v. Pixels.com, LLC*,

    2020 WL 6114918 (C.D. Cal. Aug. 18, 2020) ................................................. 5

*Sony Corp. of America v. Universal City Studios, Inc.*,

    464 U.S. 417 (1984) ........................................................................... 10, 12

*Stewart v. Wachowski*,

    2004 WL 2980783 (C.D. Cal. Sept. 28, 2004) ..................................... 17, 18

*Sybersound Records, Inc. v. UAV Corp.*,

    517 F.3d 1137 (9th Cir. 2008) ............................................................. 19, 24

*Trenz v. Sirius XM Radio, Inc.*,

    2015 WL 11658715 (S.D. Cal. July 13, 2015) .......................................... 6

*U.S. v. Fernandez*,

    388 F.3d 1199 (9th Cir. 2004) ............................................................... 21

*U.S. v. Yannotti*,

    541 F.3d 112 (2d Cir. 2008) ................................................................. 21

*United Brotherhood of Carp. & Joiners of Am. v. Build. & Constr. Trades Dep't*,

    911 F. Supp. 2d 1118 (E.D. Wash. 2012) ................................................. 5

*United States v. Collazo*,

    2020 WL 7052298 (9th Cir. Dec. 2, 2020) .............................................. 22

*United States v. U.S. Gypsum Co.*,

    438 U.S. 422 (1978) ............................................................................. 22

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ............................................................... 17

*Zhai v. Zhang*,

    2018 WL 6137609 (C.D. Cal. Nov. 5, 2018) .............................................. 4

## RULES AND STATUTES

17 U.S.C. § 411(a)................................................................................. 3

18 U.S.C. § 1961(1) ........................................................................... 19

18 U.S.C. § 1962(a) ........................................................................... 16

18 U.S.C. § 1962(d) ........................................................................... 16

Fed. R. Civ. P. 9(b)............................................................................. 17

Fed. R. Civ. P. 9(d)............................................................................... 2

## OTHER AUTHORITIES

Restatement (Second) of Agency § 2................................................... 23

Restatement (Second) of Agency § 219 (1958) .................................. 23

Restatement (Second) of Torts § 8A cmt. b (1965)............................ 10

Restatement (Third) of Agency § 3.01 (2006) ..................................... 4

PLAINTIFFS' RESPONSE TO ADVERTISERS' MOTION TO DISMISS

*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

Plaintiffs Deniece Waidhofer ("Waidhofer"), Margaret McGehee ("McGehee"), and Ryuu Lavitz LLC ("Lavitz") ("Plaintiffs") submit this response to the motion to dismiss (Dkt 85 or "Adv. Br.") the First Amended Complaint (the "Complaint") filed by the Advertiser Defendants ("Advertisers").

## INTRODUCTION

Thothub was a pirate site devoted to illegally copying works originally published by OnlyFans.com and Patreon.com creators on the creators' paid subscriber accounts. The Advertisers are porn companies whose advertisements appeared on almost every Thothub page. Though the Advertisers insist they had only a "garden-variety marketing relationship" with Thothub, the Complaint alleges otherwise. The Advertisers' so-called "affiliate marketing" relationship with Thothub revolved around CrakRevenue, who served as the Advertisers' agent and "affiliate manager." Through CrakRevenue's affiliate management, the Advertisers knew or should have known that the crypto-commissions and services they provided Thothub's operators materially contributed to Thothub's flagrant piracy of works from OnlyFans and Patreon creators like Plaintiffs.

This case resembles *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), in which this Court upheld copyright and RICO claims based on similar allegations regarding a marketing network's connections with an infringing site.[1] In this case, the Advertisers' attributable knowledge, conduct, and material support (including via their agent CrakRevenue) of an infringing site, Thothub, pursuant to their affiliate marketing and management relationship likewise gives rise to claims under copyright, RICO, and unfair competition law. As in *Cybernet*, the Court here should deny the motion to dismiss.

---

[1] *See also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) (granting preliminary injunction in favor of plaintiff in the same case).

**LEGAL STANDARDS**

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**PROCEDURAL ISSUES**

As a threshold matter, the Advertisers contend that Plaintiffs McGehee and Lavitz's copyright claims must be dismissed because their "copyright registrations *post-date* the filing of the [original] complaint by nearly a month" (Adv. Br. at 9), even though each Plaintiff first asserted her respective copyright claims *after* the U.S. Copyright Office issued registrations for her copyrights.[2] This argument misconstrues the relation-back doctrine and the requirements of Section 411(a).

It is well established that the relation-back doctrine is party-specific and applies only when: (1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th

---

[2] The Complaint alleges that Lavitz and McGehee were issued valid copyright registrations and states the registration numbers. (Compl. ¶¶ 100, 117). The certificates themselves need not have been attached to the Complaint. *Patel Burica & Assocs., Inc. v. Lin*, 2019 WL6954256, *3 (C.D. Cal. Dec. 19, 2019); *Minx Int'l Inc. v. Club House Creations, Inc.*, 2016 WL 878479, *3 (C.D. Cal. Mar. 7, 2016); *see also* Fed. R. Civ. P. 9(d) ("In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done.").

Cir. 1996). Here, Waidhofer's original complaint did not provide notice of Lavitz's and McGehee's copyright claims. Furthermore, the Advertisers admit that McGehee and Lavitz are "two entirely new plaintiffs *unrelated to Waidhofer*." (Adv. Br. at 3, emphasis added). Thus, McGehee and Lavitz's initial pleading does not relate back to the date of Waidhofer's original complaint.

This Court recently rejected a similar argument relying on the same cases as the Advertisers in *Philips North America LLC v. KPI Healthcare, Inc.*, 2020 WL 3032765 (C.D. Cal. Jan. 24, 2020) (Selna, J).. In that case, plaintiff filed for and obtained copyright registrations after the date of its original complaint. *Id*. After the registrations issued, plaintiff amended the complaint to add claims for copyright infringement. *Id.* at *2. Like the Advertisers here, the defendants in *Philips* moved to dismiss the copyright claims under Section 411(a). *Id.* This Court rejected that argument, finding that *Malibu Media* and *Izmo* (the same cases relied on by the Advertisers here) were inapposite because they concerned "curing a defective, existing claim for copyright infringement." *Id.* The Court held that the copyright claims were properly instituted in the amended complaint. *Id.* at 3.

Here, as in *Philips*, McGehee's and Lavitz's copyright claims were first asserted in the amended complaint, which was filed *after* their respective copyrights were registered. Indeed, more compelling than the facts in *Philips*, McGehee and Lavitz were not even parties to the original complaint. Because McGehee and Lavitz instituted their infringement claims after the copyrights were registered, their claims are proper under the Copyright Act. *See generally Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019).

## <u>MERITS ISSUES</u>

### I.     The Complaint Plausibly Alleges an Agency Relationship.

One key aspect of the claims against the Advertisers is the allegation that CrakRevenue acted as their agent with respect to Thothub. The Advertisers deride

3

the Complaint as "offer[ing[ only vague, misdirected allegations regarding agency." (Adv. Br. at 13–14). However, the agency allegations are meticulously pled and plausibly allege that CrakRevenue "[had] authority to act on behalf of the principal and 'the [Advertisers] [had] a right to control the actions of the agent.'" *Mavrix Photos, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 3.01 (2006) ("Restatement")).

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* (quoting Restatement). "An agency relationship may be created through actual or apparent authority." *Id.* "Actual authority arises through 'the principal's assent that the agent take action on the principal's behalf.'" *Id.* (quoting Restatement). "Whether an agency relationship exists also depends on the level of control a principal exerts over the agent." *Id.* "To sufficiently plead an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." *Imageline, Inc. v. CafePress.com, Inc.*, 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011). [3]

Federal courts apply the common law of agency to analyze a principal's liability under the Copyright and RICO Acts for actions of putative agents. *See Mavrix*, 873 F.3d at 1053; *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (applying agency law to federal copyright claims); *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 2020 WL 6114918, *4–5 (C.D. Cal. Aug. 18, 2020)

---

[3] The Advertisers' brief suggests that pleading agency requires "factual allegation(s) that CrakRevenue was the Advertiser Defendants' fiduciary, and thus had a duty to 'act loyally for the principal's benefit in all matters connected with the agency relationship.'" (Adv. Br. at 13, citing *Zhai v. Zhang*, 2018 WL 6137609, *7 (C.D. Cal. Nov. 5, 2018)). This is wrong. *See Dion LLC v. Infotek Wireless, Inc.*, 2007 WL 3231738, *4 (N.D. Cal. Oct. 30, 2007) (rejecting defendant's argument that these elements must be pled to show agency as "meritless"). The partial quote from *Zhai* arose in the different context of a breach of fiduciary duty claim.

(same); *United Broth. Of Carp. & Joiners of Am. v. Build. & Constr. Trades Dep't*, 911 F. Supp. 2d 1118, 1135 (E.D. Wash. 2012) ("General rules of agency are applicable to civil RICO claims.") (citing *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992)); *Oki Semi. Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 776 (9th Cir. 2002) ("Vicarious liability based on the doctrine of respondeat superior [ ] fosters RICO's deterrent and compensatory goals.").

The Complaint alleges specific facts regarding the Advertisers' agency relationship with CrakRevenue. For instance, it alleges that CrakRevenue had actual authority to place the Advertisers' ads (including their marks and content) on Thothub (Compl. ¶¶ 13, 245–48, 281, 282–85); that CrakRevenue has been "their marketing agent for years" (*id.* ¶ 280); that CrakRevenue "provides 'affiliate management' services to affiliates like Thothub … 'on behalf of the advertiser or merchant'" (*id.* ¶¶ 14–15, 242, 260–61, 267, 281); that CrakRevenue paid commissions to Thothub in relation to sales or traffic driven to the Advertisers' sites, using Advertisers' money, on Advertisers' behalf (*id.* ¶¶ 16, 243, 260, 262); that the Advertisers' spokespersons admitted in public statements that "its ads were placed on Thothub" by a "third-party" advertising network (*id.* ¶¶ 282, 284); that the Advertisers admitted they "set the terms by which CrakRevenue markets their programs" and imposed "marketing program terms" on CrakRevenue (*id.* ¶ 283); that the Advertisers directed CrakRevenue to remove their ads from Thothub after this lawsuit was filed (*id.* ¶¶ 282–85); and that CrakRevenue dutifully complied with the Advertisers' respective directives "[w]ithin hours" (*id.* ¶ 286).

These specific, well-pled facts—taken as true as they must—plausibly allege that the Advertisers assented to CrakRevenue's agency and exercised control over CrakRevenue with respect to Thothub. *Cf. Pixels.com*, 2020 WL 6114918, at *4 (denying summary judgment based on evidence that putative agents "have a formal, contractual relationship with [defendant]"); *Mavrix*, 873 F.3d at 1054–56 (denying

summary judgment where plaintiff "presented evidence [defendant] gave its [putative agents] explicit and varying levels of authority" and putative agents "performed a vital function in [defendant's] business model"); *see also Trenz v. Sirius XM Radio, Inc.*, 2015 WL 11658715, *2 (S.D. Cal. July 13, 2015) (distinguishing cases involving "an agency relationship with an entity who hired a marketing company to promote its own product" as "far more plausible").

By contrast, cases rejecting agency claims involve bare unsupported legal conclusions or allegations at odds with undisputed facts. *Cf. Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1146–48 (C.D. Cal. 2015) (inadequate pleading where no allegation that putative agents "had any sort of legal relationship with [defendant] at the time" of alleged conduct); *Imageline, supra*, at *4 (inadequate pleading where "only allegations" were "nothing more than legal conclusions"); *Kristenson v. Cred. Payment Servs., Inc.*, 2015 WL 4477425, *6–7 (D. Nev. July 20, 2015) (granting summary judgment given "no evidence" that "defendants had either the legal or practical ability to control" alleged agent).

Unlike these cases, the allegations here—for example, that the Advertisers contracted with, imposed terms on, granted authority to, and explicitly directed CrakRevenue with respect to Thothub; that CrakRevenue immediately complied with their directives; that CrakRevenue was authorized to use the Advertisers' marks; that CrakRevenue paid commissions to Thothub for the Advertisers using *their* money based on traffic or sales on *their* websites; and that Advertisers and CrakRevenue have made specific public statements indicating agency—are not at all conclusory. Because the Complaint adequately pleads that CrakRevenue acted as the Advertisers' agent regarding Thothub, the Advertisers may be liable for CrakRevenue's actions and knowledge with regard to affiliate marketing and management related to Thothub. *See Mavrix*, 873 F.3d at 1953–54.

## II. The Complaint Plausibly Alleges Contributory Infringement.

Calling the allegations "absurd" and "based on a smorgasbord of vague and conclusory theories" (Adv. Br. at 10, 11), the Advertisers argue that the copyright claims do not meet either element for contributory infringement. The Advertisers doth protest too much. In fact, these copyright claims are straightforward. The Advertisers are online pornography companies, not ISPs. Based on their standing in this industry and the direct involvement of their agent CrakRevenue as affiliate manager, the Advertisers knew or should have known about the infringement on Thothub. Moreover, the Advertisers' support materially and directly facilitated the infringement by enabling Thothub's operators to vastly expand the scale of infringement. Therefore, the Advertisers may be held contributorily liable.

Because the Advertisers are not ISPs, some recent cases are not entirely apt. Instead, the claims here warrant resort to classical copyright and tort doctrine. As the Ninth Circuit has explained, "[c]ontributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)). The "basic test" for contributory infringement is whether defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Visa*, 494 F.3d at 795. The Complaint adequately alleges both of these elements against the Advertisers.

### A. Knowledge of Infringement

"Stating a claim under the material contribution theory of contributory liability requires allegations that defendant *knew or should have known* of specific infringing material." *Davis v. CBS Interactive, Inc.*, 2012 WL 12884914, *3 (C.D. Cal. July 13, 2012). This standard does not require direct knowledge of infringement; rather, "constructive knowledge" can be a "sufficient basis for

contributory liability." *Id.*; *see also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (finding that material contribution theory requires "actual or constructive knowledge of the infringing activity").

The Complaint alleges that infringement on Thothub was obvious, especially for online porn titans like the Advertisers. "Thothub's primary purpose—the reason that it existed—was to publish [] stolen paywalled content" from Licensed Sites. (*Id.* ¶ 5). This fact was readily apparent at a cursory glance; for example, between June 8 and July 8, 2020, over 90% of the 208 new posts on Thothub contained content tagged as being from Licensed Sites. (*Id.* ¶ 141). Meanwhile, only 7 of these 208 posts (about 3%) were tagged as "verified," among "only 38 'verified' posts in Thothub's entire history" over multiple years. (*Id.* ¶¶ 142–43). Thothub's unlawful purpose was also obvious in view of public reviews by leading reviewers in the Advertisers' industry (Compl. ¶¶ 17, 136–37, 288–90); plain statements on Thothub, Google searches, and other public sources (*id.* ¶¶ 5, 135–36, 141–44, 165–81, 291); and basic facts about the Licensed Sites (*id.* ¶¶ 32–52). These allegations go well beyond mere suggestion that the "website permit[ted] the exchange of copyrighted material," as the Advertisers argue. (Adv. Br. at 13). Rather, they create a plausible inference that the Advertisers had *actual knowledge* of pervasive criminal piracy on Thothub. *See* Fed. R. Civ. P. 9(b) (stating that knowledge and other conditions of the mind "may be alleged generally").

Moreover, the Advertisers had *constructive knowledge*. The Complaint alleges that "the Advertisers and Thothub were involved in a so-called 'affiliate marketing' relationship through CrakRevenue, pursuant to which the Advertisers paid commissions to Thothub, while their agent, CrakRevenue provided 'affiliate management' services for Thothub on the Advertisers behalf." (*Id.* ¶¶ 260). CrakRevenue's website says the "core of affiliate marketing consists of a close relationship between advertisers (also known as 'merchants') and affiliates" and that

"[t]his same relationship is governed by a thorough set of rules and details: the affiliate program." (*Id.* ¶ 261). CrakRevenue says an "Affiliate Manager develops, supports, and manages an affiliate program while offering dedicated help to the affiliates which, in turn, help [*sic*] drive the sales of the program," and the affiliate manager "act[s] on behalf of the advertiser." (*Id.* ¶ 267). CrakRevenue "require[d] prospective affiliates to 'be as detailed and forthcoming as possible when it comes to providing info about [their] traffic, URLs, and marketing strategies." (*Id.* ¶¶ 263–64). And CrakRevenue "only accept[ed] the best, most qualified affiliates … based on an extensive & thorough subscription process overseen by a team of more than 15 Affiliate Managers." (*Id.* ¶ 265). CrakRevenue's conduct and knowledge in performing these functions are attributable to the Advertisers.

CrakRevenue also provided numerous services to affiliates on behalf of advertisers, such as "personalized advice and tips," "deep customization options," "custom" design work, "precise recommendations on a case-by-case basis," "advi[ce] on the best offers on the market for you," "top notch support," and "perfect match offers best tailored to [affiliates'] traffic, type of content, [geographic area], etc." (*Id.* ¶¶ 269–76). The Complaint alleges that "Thothub's affiliate manager at CrakRevenue was Vincent Gariepy," and that Mr. Gariepy communicated with Thothub's operator(s) "via a now-removed Skype connection." (*Id.* ¶ 265). Mr. Gariepy says that, "on a daily basis," he "work[s] alongside and coach[es] our new affiliates to help them reach great heights." (*Id.* ¶ 278). CrakRevenue's acts and knowledge regarding these efforts are also attributable to the Advertisers.

These well-pled facts sufficiently allege that the Advertisers "knew or should have known" about infringement of Plaintiffs' works on Thothub. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171–72 (9th Cir. 2007) (citing *Netcom*, 907 F. Supp. at 1374). "'Tort law ordinarily imputes to an actor the intention to cause the natural and probable consequences of his conduct.'" *Id.* at 1171 (quoting *DeVoto v.*

*Pac. Fid. Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980)). "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.* (quoting Restatement (Second) of Torts § 8A cmt. b (1965)); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 487–89 (1984) (Blackmun, J., dissenting) ("[A] finding of contributory infringement has never depended on actual knowledge of particular instances of infringement; it is sufficient that the defendant ha[s] reason to know that infringement is taking place.").

Under these common-sense principles, Plaintiffs need not have alleged that the Advertisers "themselves had actual knowledge of the specific acts of infringement of plaintiffs' works on thothub.tv." (Adv. Br. at 12). Indeed, the Supreme Court rejected such a rule in *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). There, the Court criticized the Ninth Circuit's then-rule barring liability "unless the [defendant] had 'specific knowledge of infringement at a time at which they contributed to the infringement.'" 545 U.S. at 933–34 (quoting Ninth Circuit opinion on appeal). The Court held that its prior decision in *Sony* (on which the Ninth Circuit rule was based) "did not displace other theories of secondary liability." *Id.* at 934. Under "rules of fault-based liability derived from the common law," contributory liability may lie "where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement." *Id.*

The Advertisers' liability does not revolve around their operation of a computer system; the Advertisers are not ISPs. *Cf. Amazon.com*, 508 F.3d at 1172 ("we hold that *a computer system operator* can be held contributorily liable if it has *actual knowledge that specific infringing material is available using its system* and can take simple measures to prevent further damage to copyrighted works") (emphasis added and citations omitted). Instead, liability is based on the Advertisers'

10

actual or constructive knowledge that they materially contributed to Thothub's rampant piracy due to the litany of facts alleged in the Complaint, including their affiliate marketing and management relationship.

These facts are very similar to those in *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002). In that case, plaintiff presented evidence (in a motion for preliminary injunction) that Cybernet—the operator of a service called "Adult Check" for pornographic websites—had "directly paid infringing websites based on the number of users that registered with the web-service provider through the infringing sites, provided technical and content advice to the infringing sites, and attempted to control the quality of the sites to present the websites' consumers with a unified brand." *ALS Scan, Inc. v. Cloudflare, Inc.*, No. 2:16-cv-05051, Dkt 53, at 7 n.3 (C.D. Cal. Oct. 3, 2016) ("*ALS II*") (discussing *Cybernet*). In addition, "Cybernet's site reviewers review[ed] every site before allowing the sites to utilize the Adult Check system." *Cybernet*, 213 F. Supp. 2d at 1169. Given these facts, applying the preliminary-injunction standard, this Court found "serious questions as to Cybernet's constructive knowledge of infringement." *Id.* at 1170. Likewise, here, based on similar conduct, the knowledge element is well-pled.

## B. Material Contribution

The second element of contributory infringement on a material-contribution theory is that the defendant made a material contribution to the alleged infringement. This means that defendant "played a significant role in direct infringement committed by others." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 422 (S.D.N.Y. 2011). Or as this Court put it, contributory liability in copyright requires a showing that the defendant's "participation in the infringing conduct of the primary infringer is 'substantial.'" *ALS Scan, Inc. v. Cloudflare, Inc.*, 2017 WL 1520444, *3 (C.D. Cal. Feb. 16, 2017) ("*ALS III*"). Contributions that "significantly

magnify the effects of otherwise immaterial infringing activities" may be substantial. *Id.* (quoting *Amazon.com*, 508 F.3d at 1172).

Generally, material contributions must have some "direct connection" to "the reproduction, alteration, display [or] distribution" of copyrighted works. *See Amazon.com*, 508 F.3d at 795–96. But the defendant itself need not make copies, so long as it plays a substantial role in causing infringement. *See, e.g.*, *Fonovisa*, 494 F.3d at 798 (finding contributory liability where defendant swap-meet operator "provided the 'site and facilities' for the infringing activity"); *Sony*, 464 U.S. at 438 n.18 (approving contributory liability for "infringer's advertising agency" and others in *Mark-Fi Records*, 256 F. Supp. 399 (S.D.N.Y. 1966)); *Cybernet*, 213 F. Supp. 2d at 1170 (finding material contribution where defendant paid infringing sites based on the number of users that registered with the defendant's service through the infringing sites and provided technical and content advice to the infringing site) (discussed in *ALS II*, *supra*, at 7 n.3).

The Complaint alleges that, as part of the "affiliate marketing," "the Advertisers' ads appeared on all or nearly all Thothub pages that contained infringing content," and "Thothub's owners received a commission for each lead and/or sale generated through the ads." (Compl. ¶ 243). Moreover, "[t]he revenue that derived from these commissions was necessary to pay for services that allowed Thothub to distribute infringing material to a large audience." (*Id.* ¶ 244). In addition, as the "affiliate manager," CrakRevenue provided myriad services, including "personalized advice and tips," "deep customization options," "custom" design work, "precise recommendations on a case-by-case basis," "advi[ce] on the best offers on the market for you," and "perfect match offers best tailored to [affiliates'] traffic, type of content, [geographic area], etc." (*Id.* ¶¶ 269–76).

The Complaint draws a "direct connection" between these efforts and "the reproduction, alteration, display [or] distribution" of copyrighted works. *See*

*Amazon.com*, 508 F.3d at 795–96. As alleged, "[o]ne of the primary [Thothub] Operators, Teller, stated that he knew of no other way for Thothub to distribute the content without this advertising revenue." (*Id.* ¶ 244).[4] Specifically, Teller stated in a June 2019 message regarding "ad transparency" that Thothub was "nearing a whopping 9Terabytes of data usage a day" and had recently required "another round of server upgrades (double the forum power and double the main website power)." (*Id.* ¶ 253). He apologized for the increased advertising but said, "I don't know any other way," apparently referring to how to pay for the technical upgrades. (*Id.* ¶ 254). Based on the daily volume of data Teller identified, Thothub's hosting costs were likely sky-high. (*Id.* ¶¶ 255–59). These allegations tie a direct line between the Advertisers' payments and the alleged infringement.

The Advertisers' contributions are similar to those this Court found material in *Cybernet*. In that case, defendant "market[ed] [its own] Adult Check brand through advertising [on the infringing site], it pa[id] webmasters commissions directly based upon the number of Adult Check users that register[ed] through the site, it provide[d] technical and content advice, [and] it review[ed] sites." 213 F. Supp. 2d at 1170. Moreover, similar to CrakRevenue's affiliate marketing and management work, defendant's "entire business model [was] premised on harnessing the competitive pressures between individual webmasters into a cooperative system that benefits the webmasters by increasing the overall value to consumers." *Id.* (discussed with approval in *ALS II*, *supra*, at 7 n.3). On these facts, the Court found "a strong likelihood of establishing material contribution." *Id.*

---

[4] Teller (as known on Thothub) was a leading operator of Thothub. For instance, the Complaint alleges that Teller authored a "Community Guidelines Update 2020" message in June 2019 that described an "official guidelines manual for all [users] and the mods [moderators]" on Thothub and demanded "[a]dherence to these guidelines.": (Compl. ¶¶ 154–55). Teller also authored the "Welcome to the thothub.tv forums" message in April 2019. (*Id.* ¶ 156). And Teller routinely posted about operational issues regarding "Thothub's computer systems." (*Id.* ¶ 158).

The Advertisers contend that this case is similar to *Visa*, *Elsevier*, and *ALS II*, where courts found no material contribution. Key facts differentiate those cases from this one. In *Visa*, the court considered claims against credit card companies that had "continu[ed] to process credit card payments to the infringing websites despite having knowledge of ongoing infringement." *Visa*, 494 F.3d at 796. The Ninth Circuit held these activities were not directly connected to reproduction, alteration, display, or distribution of works. *Id.* at 796–97. Similarly, in *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398 (D. Mass. 2011), which involved allegations that the defendant had placed advertisements on the infringing site, the court found "no allegations" as to "how [the advertising] revenue substantially assisted [the] allegedly infringing activities." *Id.* at 406.[5] And in *ALS II*, this Court found that it was "entirely unclear from the [complaint] how serving an advertisement on a website encourage[d] infringement, other than by enabling the website to profit from those advertisements." *ALS II*, *supra*, at 6–7.

Unlike here, plaintiffs' allegations in those cases did not directly connect the support provided to the infringement. The plaintiffs in each case merely asserted that the defendants could be held liable for advertising on the infringing site, regardless of whether this substantially contributed to infringement. In this case, by contrast, the Complaint alleges that the Advertisers (via CrakRevenue) supported infringement through affiliate management of Thothub. *Cf. Cybernet*, 213 F. Supp. 2d at 1170. And the advertising payments to Thothub's operators are closely tied to the infringement because, in Teller's words, there was not "any other way" (Compl. ¶ 254) to afford the data services needed for broad infringement. *See Amazon.com*, 508 F.3d at 1172 (finding that contributions that "significantly magnify the effects

---

[5] The *Elsevier* court noted that *total* payments to the infringing site over more than two years "amounted to $513.93, or approximately $17.72 per month on average." *Id.* at 406 n.18.

of otherwise immaterial infringing activities" may be material). As such, the Complaint directly connects the Advertisers' support to infringement.

Finally, there are additional facts solidifying the direct connection between the Advertisers and the acts of infringement. Shortly after the original complaint was filed, the Advertisers directed their advertising agent "to immediately remove any of their ads that may be appearing on thothub.tv" and demanded that "this site be put on an exclusion list." (Compl. ¶¶ 282–85). "Within hours of these directives from the respective Advertisers to CrakRevenue, the Advertisers' advertisements were removed from Thothub," and "[d]ays later, Thothub shut down and was no longer available online." (*Id.* ¶ 286). Unlike *Visa* where the court noted that "there would still be infringement" even without defendants' services, these specific allegations raise a plausible inference that the Advertisers' support was, in fact, vital to Thothub's infringement. *Cf. Visa*, 494 F.3d at 796.

### III.   The Complaint Plausibly Alleges RICO Claims.

The Racketeering Influenced and Corrupt Organizations Act (RICO) "is to be read broadly" and "should 'be liberally construed to effectuate its remedial purposes.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497–98 (1985) (quoting RICO legislative history)). "The statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima*, 473 U.S. at 498.

The Complaint pleads that the Thothub enterprise engaged in a pattern of racketeering activity through criminal copyright infringement directed at OnlyFans and Patreon creators. *See Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (reciting elements of civil RICO claim). Through their affiliate marketing and management relationship, the Advertisers conspired with the Thothub enterprise to further this unlawful scheme. *See* 18 U.S.C. § 1962(d). By reason of this

15

racketeering conspiracy, Plaintiffs' interests in business or property—including copyrights—were injured. *See id.* § 1964(c). Further, the Advertisers paid commissions derived from the racketeering activity to Thothub's operators using crypto-currency, which separately injured Plaintiffs by obstructing their ability to identify, and collect damages from, the operators. *See id.* § 1962(a). These claims are well within the broad scope of RICO's remedial purpose.

The Advertisers throw several arguments against the wall; none stick. *First*, Rule 9(b) pleading standards do not apply. *Second*, Plaintiffs have standing because the racketeering activity directly injured their interests in copyrights (among other injuries), which clearly confers RICO standing. *Third*, the Complaint adequately alleges that the Advertisers, by and through their agent, agreed to facilitate the unlawful scheme with Thothub's operators, as required for liability on a RICO conspiracy claim under Section 1962(d). *Fourth*, the Complaint adequately alleges that Plaintiffs suffered a separate injury by reason of Thothub's payment of commissions via crypto-currency, as required by Section 1962(a).

## A. Applicable Pleading Standard

The Advertisers contend that Rule 9(b) applies to the RICO claims. (Adv. Br. at 17–18). However, Rule 9(b) does not apply because Plaintiffs' RICO claims—which concern predicate acts of criminal copyright infringement—do not "sound in fraud" as that term is understood in the Ninth Circuit.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole

must satisfy the particularity requirements of Rule 9(b)." *Id.* at 1103–04. On the other hand, where plaintiff alleges "some fraudulent conduct and some non-fraudulent conduct … only the allegations of fraud are subject to Rule 9(b)'s heighted pleading requirements." *Id.* "The rule does not require that allegations supporting a claim be stated with particularity *when those allegations describe non-fraudulent conduct.*" *Id.* (emphasis added).

Here, the RICO claims do not allege predicate acts of fraud or sounding in fraud. *Cf. Mostowfi v. i2 Telecom Int'l, Inc.*, 269 Fed. App'x 621, 624 (9th Cir. 2008) (finding "plaintiffs' RICO claim was 'grounded' in fraud because it alleged a uniform course of fraudulent conduct"); *Stewart v. Wachowski*, 2004 WL 2980783, *4 (C.D. Cal. Sept. 28, 2004) (mail and wire fraud); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (securities fraud); *Hennessy v. Infinity Ins. Co.*, 358 F. Supp. 3d 1074, 1082 (C.D. Cal. 2019) (consumer fraud and false advertising). Instead, the predicate acts are criminal copyright infringement, which do not sound in fraud. *See Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 973 (N.D. Cal. 2019). Because the Complaint does not "alleg[e] fraud or mistake," Rule 9(b) does not apply.

The Advertisers misplace reliance on *Stewart* for the proposition that Rule 9(b) applies to criminal copyright RICO claims. In that case, plaintiff alleged that defendants "feloniously acquired [plaintiff]'s copyrighted works … by and through false pretenses," a specific averment of fraud. *Stewart, supra*, at 5. The Court noted that it was "arguable that willful infringement [as required for criminal infringement] is a species of fraud." *Id.* at n. 32. But this dicta contradicts Rule 9(b)'s plain language that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See Kevin Barry*, 391 F. Supp. 3d at 973; *Ferguson Beauregard/Logic Controls, Div. of Dover Res. Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003) ("Willfulness does not equate to fraud, and thus, the

pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b).”). Because Plaintiffs' RICO claims do not sound in fraud, the heightened pleading standards of Rule 9(b) do not apply.

**B. Standing**

The Advertisers' next argument—that Plaintiffs "lack standing" to bring the RICO claims—is wrong for three primary reasons. *First*, Plaintiffs clearly have standing to assert RICO claims because they own the copyrights that were infringed. *Second*, the Advertisers can be held liable for the actions of their co-conspirators under Section 1962(d). *Third*, the Complaint draws a direct causal line between the Advertisers' conduct and the infringement of Plaintiffs' works.

<u>*First*</u>, Plaintiffs have standing to assert RICO claims because their copyrights were infringed by the Thothub enterprise. "Misuse of intellectual property can suffice to confer standing for a RICO claim." *C&M Café v. Kinetic Farm, Inc.*, 2016 WL 6822071, *8 (N.D. Cal. Nov. 18, 2016); *Bryant v. Mattel, Inc.*, 2010 WL 3705668, *11 (C.D. Cal. Aug. 2, 2010). Indeed, RICO specifically lists criminal copyright infringement as a predicate. *See* 18 U.S.C. § 1961(1). "Given this, it follows that misuse and infringement of trademarks and copyrights can give rise to a legally cognizable injury under RICO." *C&M Café*, *supra*; *see also Cybernet*, 167 F. Supp. 2d at 1127 (finding standing to assert RICO claims based on copyright).

No one has suffered more direct injuries than Plaintiffs as the result of the infringement of their copyrights. This is the essence of standing. Indeed, "only copyright owners and exclusive licensees of copyright may enforce a copyright or a license." *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008). This is not a case where Plaintiffs' injuries flow from another person's more direct injury. *See Holmes*, 503 U.S. at 268–74; *see also Anza*, 547 U.S. at 460 (explaining that the "requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be

expected to vindicate the laws by pursuing their own claims"). Because Plaintiffs' interests in property were directly injured, Plaintiffs have standing under RICO.

*Second*, the Advertisers may be held liable for acts of co-conspirators in furtherance of the conspiracy. Under "well-established common-law civil conspiracy principles" that RICO adopts, conspiracy "is a means for establishing vicarious liability for the underlying tort." *Beck v. Prupis*, 529 U.S. 494, 503 (2000) (quotation omitted); *see also Salinas v. U.S.*, 522 U.S. 52, 63–64 (1997) (explaining that RICO conspirators are "each [] responsible for the acts of each other"). Therefore, "[a] civil RICO 'plaintiff may sue co-conspirators who might not themselves have violated one of the substantive provisions of [Section] 1962 pursuant to the well-established rule that a conspirator can be held 'vicariously liable for the underlying torts' committed by his co-conspirators." *Bryant*, *supra*, at 12 (quoting *Beck*). "Vicarious liability for a co-conspirator's independently wrongful overt acts committed in furtherance of the RICO conspiracy is consistent with the long-standing principle that a conspirator should be held liable for the foreseeable consequences of the unlawful agreement, *i.e.*, overt acts in furtherance of the conspiracy." *Id.* (citing *Pinkerton v. U.S.*, 328 U.S. 640, 647 (1946)).

The Advertisers contend the Plaintiffs' injuries were not caused by the Advertisers because they "did not post any of the allegedly infringing materials on thothub.tv; did not own or operate the accused thothub.tv website; and did not themselves place the ads on the thothub.tv site." (Adv. Br. at 18). The Advertisers have mostly ignored the conspiracy allegations and focused on their own direct conduct. But as alleged in the Complaint, Plaintiffs' injuries were caused by a racketeering conspiracy involving the Advertisers. Under conspiracy law, because the Advertisers were part of a racketeering conspiracy, Plaintiffs may sue them for injuries caused by the underlying acts of racketeering. *See infra* at 20–22 (discussing merits of the RICO conspiracy claim against the Advertisers).

1      *Third*, in light of allegations discussed above with respect to contributory

2  infringement, the Complaint adequately pleads that the Advertisers' own conduct

3  (and that of its agents) proximately caused Plaintiffs' injuries. "When a court

4  evaluates a RICO claim for proximate causation, the central question it must ask is

5  whether the alleged violation led directly to plaintiff's injuries." *Anza v. Ideal Steel*

6  *Supply Corp.*, 547 U.S. 451, 461 (2006). The Advertisers materially contributed to

7  the alleged infringement by providing affiliate management services and funds

8  needed for infringing services. This support led directly to Plaintiffs' injuries;

9  indeed, within days of the Advertisers ending support, Thothub went down along

10  with all of Plaintiffs' infringed works that had appeared on the site.

## C. Section 1962(d) Conspiracy Claim

11      A RICO conspiracy claim under Section 1962(d) requires showing that the

12  defendant "knowingly agreed to facilitate a scheme which includes the operation or

13  management of a RICO enterprise." *U.S. v. Fernandez*, 388 F.3d 1199, 1230 (9th

14  Cir. 2004). "A conspiracy may exist even if a conspirator does not agree to commit

15  or facilitate each and every part of the substantive offense." *Salinas v. U.S.*, 522 U.S.

16  52, 63–64 (1997). "A conspirator need not have 'specific knowledge of or

17  participation in each predicate act conducted by other members' of the conspiracy."

18  *Bryant, supra*, at *12 (quoting *U.S. v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008)).

19  Rather, "[i]t suffices that he adopted the goal of furthering or facilitating the criminal

20  endeavor." *Id.* (quoting *Salinas*, 522 U.S. at 65). None of the Advertisers' grab-bag

21  arguments defeats the RICO conspiracy claim.

22      *First*, as explained above in regards to the agency allegations, the Complaint

23  well pleads that CrakRevenue acted as the Advertisers' agent regarding Thothub.

24      *Second*, whether or not the Advertisers "agreed to a substantive violation" or

25  "engaged in any underlying predicate acts" is immaterial. (Adv. Br. at 21). Rather,

26  the question is whether the Advertisers "adopted the goal of furthering or facilitating

the criminal endeavor." *See Bryant, supra*, at 12. Similarly, in *Salinas*, the defendant argued that he was not liable for RICO conspiracy "unless he himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under [Section] 1962(c)." 522 U.S. at 61. The Supreme Court rejected this argument, explaining that "it would erode the common-law principle that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Id.* at 64 (citing *Bannon v. United States*, 156 U.S. 464 (1895)). "To require an overt act to be proven against every member of the conspiracy, or a distinct act connecting him with the combination to be alleged, would not only be an innovation upon established principles, but would render most prosecutions for the offence nugatory." *Id.* (quoting *Bannon*, 156 U.S. at 469). Rather, the Court held:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but *it suffices that he adopt the goal of furthering or facilitating the criminal endeavor*. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

*Id.* at 65 (emphasis added); *see also United States v. Collazo*, 2020 WL 7052298, *5 & n.7 (9th Cir. Dec. 2, 2020) (explaining that, in criminal case, "the government must prove that the defendant had the 'intent to effectuate the object of the conspiracy'" but need not "prove that the defendant … committed the unlawful object of the conspiracy" or "took an overt act in furtherance of the agreement") (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978)).

The Complaint alleges that the Advertisers "agreed to facilitate the Thothub Enterprise's criminal endeavor to unlawfully use, copy, steal, and distribute copyrighted works from the Licensed Sites," or alternatively, that "CrakRevenue adopted the goal of furthering and facilitating the Thothub Enterprise's criminal endeavor while acting as the Advertisers' agent." (Compl. ¶ 311). These allegations

21

are eminently plausible in light of the detailed catalog of facts regarding the Advertisers' affiliate marketing and management relationship with Thothub through their agent, CrakRevenue. Therefore, the Complaint plausibly alleges that the Advertisers agreed to facilitate the unlawful scheme.

_Third_, it strains credulity for the Advertisers to contend that their relationship with Thothub was a "garden-variety marketing arrangement." (Adv. Br. at 22). The alleged relationship went far beyond the mere arms-length placement of ads. Instead, the relationship closely resembled the marketing relationship in _Cybernet_. _See_ 167 F. Supp. 2d at 1126–27 (denying motion to dismiss RICO claims where defendant allegedly paid infringing sites based on the number of users that registered with the defendant's service through the infringing sites and provided technical and content advice to the infringing site); _see also Odom v. Microsoft Corp._, 486 F.3d 541, 545, 552–53 (9th Cir. 2007) (finding RICO claims adequately pled based in part on allegations of "a comprehensive strategic alliance" between alleged co-conspirators)_; Gomez v. Guthy-Renker, LLC_, 2015 WL 4270042, *11 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client.").

The Advertisers overread _Oki Semiconductor v. Wells Fargo Bank_ to mean that agency liability cannot attach where the alleged agent was "not an employee" (Adv. Br. at 21) of defendant, a view that would upend agency law. 298 F.3d 768, 776–77 (9th Cir. 2002). In _Oki_, the Ninth Circuit simply applied established law that the principal cannot be liable for acts of an agent that are not "within the course and scope of [the agent's] employment." _Id._ (citing Restatement (Second) of Agency § 219 (1958)); _see also_ Restatement (Second) of Agency § 2. By contrast, as explained above, CrakRevenue's affiliate management with respect to Thothub was done on behalf, and at the control, of the Advertisers. CrakRevenue's conduct is therefore well within the course and scope of the agency relationship.

22

### D. Section 1962(a) Investment Claim

Regarding the Section 1962(a) claim, the Advertisers' only argument is that Plaintiffs "do not allege they suffered independently and distinctly from the reinvestment of the enterprise's income." (Adv. Br. at 20). Not so. The 1962(c) (Count I) and 1962(d) (Count II) claims relate primarily to Plaintiffs' copyright and business interests, while the 1962(a) claim (Count III) alleges a "separate and distinct" injury flowing from the impairment of Plaintiffs' enforcement efforts. (*See* Compl. ¶¶ 308, 312, 318). In short, the former two counts relate to Plaintiffs' intellectual property and businesses, whereas the latter count relates to Plaintiffs' choses of action. *See Coultas v. Liberty Mut. Fire Ins. Co.*, 2015 WL 2376003, *5 (D. Or. May 18, 2015) ("choses of action have long been characterized … as personal property falling within the definition of 'chattel'").

As this Court held in *Cybernet*, the mere fact that this separate harm may derive in part from "reinvestment" into the enterprise is not fatal to the claim. In that case, as here, the defendant urged that the RICO Section 1962(a) claims should be dismissed because the claims involved "reinvestment" in the enterprise. *Cybernet*, 167 F. Supp. 2d at 1127. This Court found that, "[a]lthough the Ninth Circuit has rejected a bare 'reinvestment theory,' it also recognized that a plaintiff may show that the racketeering income was reinvested *in a way that hurt the plaintiff*." *Id.* (citing *Nugget Hydro, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992)) (emphasis in original).

Here, Plaintiffs do not "allege that the reinvestment of proceeds from the alleged racketeering activity went back into the enterprise to continue the racketeering activity." *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008). Instead, the Complaint alleges an "injury separate and distinct from the injuries incurred from the predicate act[s]" of infringement. *See id.* Whereas the racketeering activity deprived Plaintiffs' of reasonable royalties and other

benefits through use of their copyrights for the conspiracy claim, the illicit reinvestment allowed Thothub's operators to remain anonymous and insulate the funds from enforcement actions for the investment claim. The Complaint thus adequately pleads a separate injury for the Section 1962(a) claim.

## IV. The Complaint Plausibly Alleges Unfair Competition.

Finally, the Advertisers contend that the unfair competition claims (Counts VI and VII) should be dismissed because: (a) "Plaintiffs assert only secondary theories of liability"; (b) "plaintiffs improperly seek damages"; and (c) the unfair competition claims are preempted by the Copyright Act. (Adv. Br. at 22–23). None of these scattershot, under-developed arguments holds water.

*First*, Plaintiffs do not claim the Advertisers contributed to *someone else's* unfair competition. This is a far cry from *Emery v. Visa*, where plaintiffs' theory was predicated on Visa's alleged role in helping third-party merchants unfairly compete in areas of business unrelated to Visa's own. 95 Cal. App. 4th 952 (Cal. App. 2002). Rather, the Advertisers themselves unfairly competed against Plaintiffs and other creators on the Licensed Sites (who are direct competitors to the Advertisers' own business) by participating in affiliate marketing with Thothub. (*E.g.* Compl. ¶¶ 294–95). As a result of the unfair competition, the Advertisers were unjustly enriched and the Plaintiffs were injured. *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (Cal. App. 1998) (explaining that, for UCL claim, the "offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep"). The Advertisers are accountable for their own conduct in competing unfairly against Plaintiffs, not someone else's.[6]

*Second*, the Advertisers misread the Complaint, which does not seek damages for unfair competition but instead seeks an award of "equitable restitution and other

---

[6] The Advertisers wrongly suggest that agency law does not apply in unfair competition cases. *But see Visa*, 95 Cal. App. 4th at 961–62 (analyzing various agency theories).

24

proper relief for the Advertisers' unfair competition under California law." (Compl., Prayer for Relief, at 87). In addition, the Amended Complaint alleges that the Advertisers have been "unjustly enriched as a result of the unfair competition" and that Plaintiffs "ha[ve] been injured." (*Id.* at ¶¶ 335, 341).

*Third*, the unfair competition claims are not preempted by federal copyright law. *See generally Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017). In *Maloney*, the Ninth Circuit held that "a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising," but not where "the work itself is being distributed for personal use." *Id.* at 1016.

The Complaint alleges here that the Advertisers "unfairly competed with Plaintiffs by using their names, likenesses, reputations, fame, and intellectual property to drive traffic and sales for the Advertisers' services." (Compl. ¶ 334). Thus, the Advertisers—through affiliate marketing—drove traffic to Thothub using the Plaintiffs' names and reputations in order to increase sales of the Advertisers' services. *Cf. Jules Jordan Video, Inc. v. 144942 Can. Inc.*, 617 F.3d 1146, 1151–4 (9th Cir. 2010) (finding preemption where claim based "not [on] the exploitation of [plaintiff's] likeness on an unrelated product or in advertising"). Because this is akin to using Plaintiffs' likenesses to sell Advertisers' services, it asserts different rights from federal copyright law. *Cf. Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212–13 (9th Cir. 1998) (finding preemption where state-law claim restated copyright claim that defendants "released a cartoon derived from [plaintiff's] drawings without his authorization"). Accordingly, the claim is not preempted.

## CONCLUSION

The Advertisers' motion to dismiss should be denied.[7]

---

[7] However, if the Court finds that any part of the motion should be granted, it should grant Plaintiffs leave to amend the Complaint to allege additional facts that may cure any perceived defects. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

Respectfully submitted,

By:    Brett S. Rosenthal_____

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Sean F. Gallagher (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Joshua M. Russ (*pro hac vice*)
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
Brett.rosenthal@rm-firm.com

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799
creiter@reitergruber.com

*Counsel for Plaintiffs*

PLAINTIFFS' RESPONSE TO ADVERTISERS' MOTION TO DISMISS
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that the above document will be served at the time of filing

4   on all counsel of record via the Court's electronic filing system.

5

6

7   _____ /s/ _____

8           Brett S. Rosenthal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28