1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
4  Facsimile:  (213) 443-3100

5  Attorney for Defendants
   Multi Media, LLC and Sonesta Technologies, Inc.
6  (f/k/a BangBros.com Inc.)

7

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11
   DENIECE WAIDHOFER, an              Case No. 2:20-cv-06979
12 individual; MARGARET MCGEHEE,
   an individual; and RYUU LAVITZ,    **DEFENDANTS MULTI MEDIA,**
13 LLC, a Massachusetts limited liability **LLC AND SONESTA**
   company;                           **TECHNOLOGIES, INC.'S (f/k/a**
14                                     **BANGBROS.COM INC.)**
             Plaintiffs,              **REPLY IN SUPPORT OF THEIR**
15                                     **MOTION TO DISMISS THE FIRST**
        vs.                            **AMENDED COMPLAINT**
16
   CLOUDFLARE, INC., a Delaware
17 corporation; BANGBROS.COM, INC.,   Date:       December 17, 2020
   a Florida corporation; SONESTA     Time:       10:00 a.m.
18 TECHNOLOGIES, INC., a Florida      Judge:      Fernando M. Olguin
   corporation; MULTI MEDIA LLC, a    Courtroom:  6D
19 California limited liability company;
   CRAKREVENUE INC., a Canadian
20 corporation; and JOHN DOES 1-21, as-
   yet unidentified individuals,
21
             Defendants.
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................. 2

I.     PLAINTIFFS' CONTRIBUTORY COPYRIGHT  INFRINGEMENT
       CLAIM SHOULD BE DISMISSED ...................................................... 2

       A.     Plaintiffs' Contributory Infringement Claim Is Meritless ............ 2

              1.     Plaintiffs' Knowledge Allegations Fail Under Binding
                     Precedent ............................................................................ 2

              2.     Plaintiffs' Material Contribution Arguments Contravene
                     Ninth Circuit Precedent ..................................................... 6

       B.     Plaintiffs McGehee and Ryuu Lavitz's Copyright Claims Must
              Be Dismissed for Failure To Comply With 17 U.S.C. § 411(a) .......... 11

II.    PLAINTIFFS FAIL TO STATE VIABLE RICO CLAIMS ..................... 12

       A.     Plaintiffs' RICO Claims Are Subject to Rule 9(b)'s Heightened
              Pleading Requirements .............................................................. 13

       B.     Plaintiffs' RICO Claims Fail Because Plaintiffs Do Not
              Adequately Allege Proximate Cause .......................................... 14

       C.     Plaintiffs Fail to Allege a Substantive Violation of § 1962(a) ............ 18

       D.     Plaintiffs Fail to Allege a Violation of § 1962(d) ....................... 19

       E.     The Advertiser Defendants Are Not Vicariously Liable for
              CrakRevenue's Alleged RICO Violations ................................... 21

III.   THE FAC FAILS TO STATE AN UNFAIR COMPETITION CLAIM ....... 22

       A.     Plaintiffs' Unfair Business Practices and Unfair Competition
              Claims Are Preempted ............................................................... 22

       B.     Plaintiffs' Unfair Competition Claims Separately Fail Because
              They Are Improperly Based on Vicarious Liability ..................... 23

IV.    PLAINTIFFS' FAC SHOULD BE DISMISSED AS TO THE
       ADVERTISER DEFENDANTS WITHOUT LEAVE TO AMEND ............. 24

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*A&M Records, Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ........................................................... 2

*ALS Scan, Inc. v. Cloudflare, Inc.,*
2017 WL 1520444 (C.D. Cal. Feb. 16, 2017) ................................... 3, 6

*ALS Scan, Inc. v. Steadfast Networks, LLC,*
819 Fed. App'x 522 (9th Cir. 2020) ................................................. 3, 4

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006) ........................................................................... 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................. 4

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ............................................................. 5

*Best Deals on TV, Inc. v. Naveed,*
2007 WL 2825652 (N.D. Cal. Sept. 26, 2007) .................................. 13

*Blocker v. Black Ent. Television, LLC,*
2019 WL 1416471 (D. Or. Mar. 6, 2019) ..................................... 24, 25

*Bryant v. Mattel, Inc.,*
2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ..................................... 17

*C&M Cafe v. Kinetic Farm, Inc.,*
2016 WL 6822071 (N.D. Cal. Nov. 18, 2016) ................................... 16

*David v. CBS Interactive, Inc.,*
2012 WL 12884914 (C.D. Cal. July 13, 2012) ................................ 3, 4

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) ........................................................ 10, 24

*Elsevier Ltd. v. Chitika, Inc.,*
826 F. Supp. 2d 398 (D. Mass 2011) ................................................... 6

*Emery v. Visa Int'l Serv. Ass'n,*
95 Cal. App. 4th 952 (2002) .............................................................. 22

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,*
139 S. Ct. 881 (2019) ............................................................. 10, 11, 12

*Fyk v. Facebook, Inc.*
808 Fed. App'x 597 (9th Cir. 2020) ..................................................... 5

*Gomez v. Guthy-Renker, LLC*,
   2015 WL 4270042 (C.D. Cal. July 13, 2015) ........................................ 19, 20

*Hall v. SeaWorld Ent., Inc.*,
   747 Fed. App'x 449 (9th Cir. 2018) ...................................................... 24

*Harrell v. Hornbrook Cmty. Servs. Dist.*,
   2016 WL 5160171 (E.D. Cal. Sept. 20, 2016) ...................................... 25

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) .......................................................... 17, 18

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ........................................................ 10, 24

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) .................................................................. 11

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 2359228 (N.D. Cal. June 4, 2019) ........................................ 11

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) .............................................................. 22

*Kamal v. County of Los Angeles*,
   2018 WL 4328467 (C.D. Cal. Sept. 6, 2018) ........................................ 14

*Kevin Barry Fine Art Associates v. Ken Gangbar Studio, Inc.*,
   391 F. Supp. 3d 959 (N.D. Cal. 2019) .................................................. 13

*Kristensen v. Credit Payment Servs. Inc.*,
   2015 WL 4477425 (D. Nev. July 20, 2015) .......................................... 9

*Los Angeles Turf Club, Inc. v. Horse Racing Labs, LLC*,
   2016 WL 6823493 (C.D. Cal. May 2, 2016) ........................................ 18

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ........................................................... 2, 3

*Malibu Media, LLC v. Doe*,
   2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ...................................... 11, 12

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .............................................................. 22

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
   873 F.3d 1045 (9th Cir. 2017) ................................................................ 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd. is even
   more misplaced. See 545 U.S. 913 (2005)* ............................................ 3

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ............................................................... 20

ADVERTISER DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*,
    298 F.3d 768 (9th Cir. 2002)........................................................14, 15, 16, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d, 1146 (9th Cir. 2007) ...............................................................9

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    213 F. Supp. 2d 1146 (C.D. Cal. 2002)....................................5, 7, 8, 19, 20

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007)......................................................6, 7, 9, 22

*Philips North America LLC v. KPI Healthcare, Inc.*,
    2020 WL 3032765 (C.D. Cal. Jan. 24, 2020) .........................................11, 12

*Sid Avery and Assocs., Inc. v. Pixels.com, LLC*,
    2020 WL 6114918 (C.D. Cal. Aug. 18, 2020) ................................................5

*Stewart v. Wachowski*,
    2004 WL 2980783 (C.D. Cal. Sept. 28, 2004) ..............................................13

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)..............................................................17, 18

*Trenz v. Sirius XM Radio, Inc.*,
    2015 WL 11658715 (S.D. Cal. July 13, 2015)................................................5

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ...................................................................25

## **Statutory Authorities**

17 U.S.C. § 411(a) ............................................................................10

18 U.S.C. § 1956 .............................................................................13

## **PRELIMINARY STATEMENT**

Plaintiffs' opposition brief presents no basis for avoiding dismissal of their First Amended Complaint ("FAC"). Plaintiffs still have not pled—and cannot plead—any legally cognizable copyright, RICO or unfair competition claim as to the Advertiser Defendants.

In their opposition, plaintiffs double down on their legally groundless position that their allegations of generalized knowledge of purported copyright infringement on the third-party thothub.tv website are sufficient for contributory copyright infringement liability. Plaintiffs' contentions are unsupported by the authorities they cite and indeed have been rejected by Ninth Circuit precedent, which requires an alleged infringer's knowledge of *specific* acts of infringement of the plaintiff's copyrights. Plaintiffs' constructive knowledge argument is similarly unavailing. It rests on deficient agency allegations and, in any event, likewise fails to plead any facts suggesting that the purported agent, a third-party ad platform known as CrakRevenue, had any such knowledge of specific acts of infringement of any plaintiffs' copyrights. As for the material contribution element, plaintiff's opposition arguments are a non-starter because they too directly contravene governing Ninth Circuit precedent and conjure supposed allegations contained nowhere in the FAC.

Nor can plaintiffs' opposition salvage their even more groundless RICO claims. Those claims should be dismissed because they fail to meet Rule 9(b)'s pleading requirements, fail to allege proximate cause and state no substantive violation of § 1962(a) or § 1962(d).

Finally, plaintiffs' opposition fails to meaningfully dispute that their unfair competition claims are preempted by federal copyright law and are barred because they are based on vicarious liability.

The FAC should be dismissed with prejudice as against the Advertiser Defendants.

## ARGUMENT

## I.  PLAINTIFFS' CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED

### A.  Plaintiffs' Contributory Infringement Claim Is Meritless

Each plaintiff's contributory copyright infringement claim should be dismissed for failure to state a claim.  In their opposition, plaintiffs double down on their premise that their allegations of generalized knowledge of purported copyright infringement on the third-party thothub.tv website is sufficient, despite its clear rejection by Ninth Circuit precedent.[1]  Plaintiffs' constructive knowledge argument is similarly unavailing, because it rests on deficient agency allegations, and fails to plead any facts suggesting that the purported agent, CrakMedia, had such specific knowledge either.  As for  material contribution, plaintiffs' allegations are a non-starter because they too directly contravene governing Ninth Circuit precedent and conjure supposed allegations contained nowhere in the FAC.  We address these in turn.

### 1.  Plaintiffs' Knowledge Allegations Fail Under Binding Precedent

To satisfy the knowledge element for a contributory copyright infringement claim, the Ninth Circuit requires a defendant have "'actual knowledge of *specific acts of infringement*'" of the plaintiff's copyrights by an infringer.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)).  Plaintiffs admit that the FAC does *not* allege that the Advertiser Defendants had actual knowledge of specific infringement of the plaintiffs' alleged works on the thothub.tv site.  *See* Opp. at 7-8.  Indeed, they do not even argue that any factual allegation in the FAC allows an

---

[1]  As stated in the motion to dismiss (at 3 n.2), the Advertiser Defendants assume the truth of the well-pled allegations of the FAC solely for purposes of this motion, even though the FAC is riddled with frivolous allegations and elementary errors as to the Advertiser Defendants and their operations.

1   inference that the Advertiser Defendants had any knowledge about *specific acts* of

2   infringement of plaintiffs' copyrights in this case.   Plaintiffs instead rely on

3   allegations of generalized knowledge wholly divorced from any specific acts of

4   infringement of plaintiffs' works on thothub.tv.  Thus, for example, they assert that

5   their purportedly "factual" allegations give rise to an inference that the Advertiser

6   Defendants had knowledge "of pervasive criminal piracy on Thotub," which in turn

7   are based on allegations such as that "infringement on Thothub was obvious,

8   especially for online porn titans like the Advertisers."  Opp. at 8.  But Ninth Circuit

9   precedent is clear: such allegations of knowledge about supposed "rampant"

10   infringement *in general* are insufficient as a matter of law because they do not speak

11   to knowledge of *specific* acts of infringement of *plaintiffs'* purported copyrights.

12   *Luvdarts*, 710 F.3d at 1072.[2]  This alone necessitates dismissal of their contributory

13   infringement claims.

14        Plaintiffs also try to evade the knowledge requirement by pointing to the FAC's

15   allegation that the Advertiser Defendants had "actual or constructive knowledge that

16   they materially contributed to Thothub's rampant piracy due to the litany of facts

17   alleged in the Complaint, including their affiliate marketing and management

18   relationship."  Opp. at 10-11.  That is not the governing legal standard.  Plaintiffs must

19   plead the Advertiser Defendants knew of the specific infringement of plaintiffs' works

20   on thothub.tv—not that they knew their advertising dollars somehow supposedly

21   contributed to alleged "rampant piracy" in general.  *See Luvdarts*, 710 F.3d at 1072.[3]

22

23        [2]   *See also ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 Fed. App'x 522, 524

24   (9th Cir. 2020) ("To be liable for contributory copyright infringement, the knowledge

25   required is 'more than a generalized knowledge . . . of the possibility of

26   infringement.'"); *ALS Scan, Inc. v. CloudFlare, Inc.*, 2017 WL 1520444, at * 3 (C.D.

27   Cal. Feb. 16, 2017) (same); *David v. CBS Interactive, Inc.*, 2012 WL 12884914, at *3

28   (C.D. Cal. July 13, 2012) (same).

        [3]   Plaintiffs' invocation of *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* is
     even more misplaced.  *See* 545 U.S. 913 (2005).  *Grokster* involved an inducement

Plaintiffs also urge that the Advertiser Defendants had constructive knowledge of infringement through a third-party advertising platform, CrakRevenue.  Opp. at 8-10.  This too fails.  First, plaintiffs do not allege that CrakRevenue had (or should have had) knowledge of "specific acts of infringement" of plaintiffs' works, which alone defeats plaintiffs' argument.  *See Steadfast Networks,* 819 Fed. App'x at 524; *David,* 2012 WL 12884914, at *4.[4]  Second, plaintiffs do not allege any colorable facts supporting imputation of CrakRevenue's (unspecified) knowledge to the Advertiser Defendants.  For instance, their claims of an agency relationship between the Advertiser Defendants and CrakRevenue are nothing more than rote parroting of legal elements.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs attempt to rely on vague, conclusory allegations in the FAC that the Advertiser Defendants had a "agency relationship with CrakRevenue."  Opp. at 5.

---

theory of contributory liability where one "distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement."  *See* Opp at 10; *Grokster*, 545 U.S. at 936-37.  Plaintiffs have not pled a claim for inducement liability in this case as against the Advertiser Defendants.

[4]  Plaintiffs cite *David* (Opp. at 7-8), but that case supports dismissal. The court there confirmed that, whether under an actual or constructive knowledge standard, a plaintiff still must plead knowledge of *specific* infringements of a plaintiff's works under Ninth Circuit law, and then proceeded to dismiss plaintiff's contributory copyright infringement claim based on his failure to do so.  *David,* 2012 WL 12884914, at *4 ("Plaintiffs [did] not allege that Defendants had knowledge—actual or constructive—of *specific* works of the Plaintiffs." (emphasis in original)). The *David* court also went on to also grant dismissal because there was no material contribution: "Defendants' services do not allow for direct infringement, as Defendants do not provide the 'site and facilities' for users to find copyrighted material."  *Id.*  As is undisputed here as well, Advertiser Defendants' ads do not allow direct infringement because they are also not the "sites and facilities" to find copyrighted material—rather, those ads served the opposite purpose to direct users *toward the Advertiser Defendants' content.*

But all plaintiffs then recite as purported factual allegations are normal business practices conducted at arm's length, including a contractual business relationship. This is insufficient to establish agency.  *See* Mot. at 13-14; *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003), *superseded by statute on other grounds*, *Fyk v. Facebook, Inc.* 808 Fed. App'x 597 (9th Cir. 2020).   Moreover, two cases plaintiffs cite in support involved an alleged agent that was directly involved with primary aspects of the principal's business.  *See Sid Avery and Assocs., Inc. v. Pixels.com, LLC*, 2020 WL 6114918, at *4-5 (C.D. Cal. Aug. 18, 2020) (relationship between defendants and vendor that "manufacture[s] and ship[s] its products"); *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054-56 (9th Cir. 2017) (relationship between defendant social media platform and its "moderators").   Plaintiffs make no such allegations here, nor could they.  Plaintiffs' other case -- *Trenz v. Sirius XM Radio, Inc.*, 2015 WL 11658715, at *2-3 (S.D. Cal. July 13, 2015) -- cites only dicta grounded in a statutory analysis of the Telephone Consumer Protection Act and thus is unavailing here.

Plaintiffs rely heavily on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002), for their knowledge arguments, but *Cybernet* has facts radically different from those alleged here.  The defendant there in the allegedly received "approximately 2,000 e-mails . . . notifying [it] of alleged copyright infringement on its system." *Id.* at 1169.  Here, by contrast, plaintiffs do not allege that they sent even a single notice of alleged infringement to the Advertiser Defendants (or to CrakRevenue either).  Further, in *Cybernet*, the defendant's "site reviewers review[ed] every site before allowing the sites to utilize the [the defendant's service]." *Id.*  This type of knowledge is not alleged here.  Indeed, that plaintiffs tout *Cybernet* as their most applicable authority (Opp. at 1) only serves to confirm their allegations here fall far short of the legal standards set forth in this Circuit.

2.      **Plaintiffs' Material Contribution Arguments Contravene Ninth Circuit Precedent**

Plaintiffs' opposition recites the basic test for material contribution, but then abandons it.    In particular, they argue the FAC sufficiently pleads material contribution by alleging that the Advertiser Defendants' "ads appeared on all or nearly all Thothub pages that contained infringing content" and that this revenue "derived from these commissions was necessary to pay for services that allowed Thothub to distribute infringing material to a large audience." Opp. at 12.  This theory has been flatly rejected in this Circuit.  Thus, in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, the court found that "mak[ing] it easier for infringement to be *profitable*" is too far down the causal chain to satisfy the material contribution standard.  494 F.3d 788, 797 (9th Cir. 2007) (emphasis in original).  Indeed, *Visa* rejected plaintiffs' contention here that one materially contributes "to the infringement by offering services that allow it to happen on a larger scale than would otherwise be possible" because such a standard could extend "to include any tangible or intangible component related to any transaction in which infringing material is bought and sold." *Id.* at 799.

Moreover, as shown in the Advertiser Defendants' motion, even if an agency relationship existed between the Advertiser Defendants and CrakRevenue (it doesn't), courts have rejected similar arguments that advertising brokers materially contribute to infringement.  *See* Mot. at 16; Opp. at 14-15.[5]  According to plaintiffs, this Court should disregard *Visa*, *ALS II*, and *Elsevier* because rather than "merely assert[ing] that the defendants [in those cases] could be held liable for advertising on the infringing site, regardless of whether this substantially contributed to infringement," the FAC here "alleges that the Advertisers (via CrakRevenue) supported infringement through affiliate management of Thothub." Opp. at 14.  Plaintiffs' claim here that the

_____

[5]    *Visa*, 494 F.3d 788 ; *ALS Scan, Inc. v. Cloudflare, Inc.* (*ALS II*), Case No. 2:16-cv-05051-GW (AFMx), ECF No. 53 (C.D. Cal. Oct. 3, 2016); *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398 (D. Mass 2011).

plaintiffs in *Visa*, *Elsevier*, and *ALS II* did not allege any material contribution at all is clearly wrong, as those decisions make clear.

The courts in those cases found the plaintiffs' material contribution arguments unavailing and did so for reasons pertinent to the allegations at issue here. Plaintiffs avoid the similarities between the cases the Advertiser Defendants cite and focus on their allegation that advertising revenue was necessary to Thothub's continued operations. *See* Opp. at 15 (purporting to distinguish *Visa*, 494 F.3d at 796, because plaintiffs' "allegations raise a plausible inference that the Advertisers' support was, in fact, vital to Thothub's infringement"). But, as plaintiffs fail to mention, *Visa* considered and preempted plaintiffs' point just one page later in the opinion:

> If users couldn't pay for images with credit cards, infringement could continue on a large scale because other viable funding mechanisms are available. For example, a website might decide to allow users to download some images for free and to make its profits from advertising, or it might develop other payment mechanisms that do not depend on the credit card companies.

*Visa*, 494 F.3d at 797. Thus, the Advertiser Defendants' ads cannot be a necessary material contribution in the way plaintiffs allege because, as *Visa* expressly ruled, other funding mechanisms are interchangeable. Indeed, advertising revenue is explicitly identified as interchangeable with the payments alleged in *Visa*. *Id.* And, as in *Visa*, the Advertiser Defendants here are even further down the "causal chain" than the advertising brokers who were found *not* to have materially contributed to infringement on websites on which they placed ads. *Id.*

Plaintiffs' reliance on *Cybernet* for the material contribution prong of the contributory infringement test is misplaced. Cybernet provided a suite of services for a "network" of adult websites and controlled access to those websites through paid memberships. *Cybernet*, 213 F. Supp. 2d at 1158, 1171. Cybernet's "entire business model [was] premised" on its interaction with a "cooperative" network of over

314,000 managed websites. *Id.* at 1163, 1170. Cybernet provided a portfolio of services to these websites, including: a unified subscription service that *regulated user access* to all 314,000 of Cybernet's managed websites (on a tiered basis depending on price); mandatory guidelines for managed-website content; age verification services for adult websites; and a managed-website search engine for users with keywords assigned to each website by Cybernet. *Id.* at 1158-59.

As this makes evident, plaintiffs' assertion that the FAC contains allegations "similar" to *Cybernet* regarding the Advertiser Defendants' ads on Thothub is meritless. *See* Opp. at 1, 13. None of the extensive controls that Cybernet possessed—including *regulating access* to the allegedly infringing material—is present nor even alleged here. Indeed, unlike here, Cybernet's "***entire business model*** [was] premised on" providing these extensive services found to be materially contributing to infringement. *Cybernet*, 213 F. Supp. 2d at 1170 (emphasis added). Moreover, Cybernet exerted "control" over the thousands of websites in its system to "present[] to consumers as a unified brand." *Id.* Plaintiffs do not and cannot allege facts showing that the Advertiser Defendants controlled the thothub.tv site, let alone sufficiently to present Thothub as part of the Advertiser Defendants' "brand."

There are additional reasons why Cybernet presented a case that bears no resemblance to this one. Here, plaintiffs cite advertising puffery allegedly found on *CrakRevenue's* website regarding "advice and tips," "recommendations," "coach[ing]" and generic references to "customization" of customers' online advertising—but none of that advertising is alleged to be directly infringing in this case. *See* Opp. at 9. Rather, plaintiffs' theory is that advertising *dollars* ultimately from the Advertiser Defendants (through CrakRevenue) were later used by a third-party website (thothub.tv) for its general operations. Nor do plaintiffs allege, factually, that the Advertiser Defendants even used the advertising services that are described on the CrakRevenue site as alleged by plaintiffs. Cybernet's services, on the other hand, *regulated user access* to the directly infringing content, crafted search

engine keywords and results for users to locate that content, and provided age verification systems to access that content. As is obvious, these situations differ vastly, and plaintiffs' reliance on *Cybernet* to show material contribution in this litigation is frivolous.

Finally, plaintiffs' opposition recites an allegation that the Advertiser Defendants had control of infringement because they directed CrakRevenue to cease advertisements on Thothub when this litigation was filed. *See* Opp. at 15 (quoting FAC ¶¶ 282-85). Plaintiffs at best strained contention fails as a matter of law for two separate reasons. First, plaintiffs cannot distinguish (and don't even really try to distinguish) the binding Ninth Circuit decisions cited in the motion to dismiss which rejected plaintiffs' particular argument here. *See* Mot. at 14 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d, 1146, 1173-74 (9th Cir. 2007) (declining to find defendant Google had a right to control allegedly infringing site even though it could cancel an advertising partnership with the sites because the agreement "does not give Google the right to stop direct infringement by third-party websites"); *Visa*, 494 F.3d at 803 ("[T]he mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires."); *see also Kristensen v. Credit Payment Servs. Inc.*, 2015 WL 4477425, at *6 (D. Nev. July 20, 2015) ("Merely having the contractual right to stop receiving benefits of the infringement is not enough; the defendant must have direct legal and practical control over the infringing activity itself.")). Plaintiffs' illogical, unsupported attempt to equate the Advertiser Defendants' oversight of their *ads* with control over infringement on the Thothub website is meritless under this authority. Plaintiffs' additional attempt to distinguish *Visa* fails for the same reasons previously stated: other funding mechanisms can replace advertising revenue without affecting infringement, which negates any materiality argument. *Visa*, 494 F.3d at 797.

Second, the inference plaintiffs ask the Court to draw – that the Advertiser Defendants had control the over the alleged infringement on thothub.tv because they

asked CrakRevenue to cease advertising on that site and that was the cause of www.thothub.tv's decision to cease operations – is improper here because it is implausible.  Plaintiffs confirm the facial implausibility of their allegations by arguing it was the Advertiser Defendants' request to CrakRevenue to cease advertising, and not *plaintiffs' contemporaneous 91-page lawsuit naming Thothub and its individual operators*, that caused the shutdown of www.thothub.tv.  At one point in the FAC, plaintiffs even assert the thothub.tv website "was shut down in the wake *of this lawsuit*," not because of the Advertiser Defendants' actions.  FAC ¶ 7 (emphasis added).   And Thothub lives on at the www.thothub.ru mirror site without the Advertiser Defendants' ads, which  further shows the implausibility of plaintiffs' contention here.  FAC ¶ 231.  As a matter of law, plaintiffs' strained, implausible allegations cannot survive a motion to dismiss.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible"(internal citations omitted)) ; *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014).

Plaintiffs have not alleged, and cannot allege, material contribution.  The alleged infringement of plaintiffs' works by unknown users who uploaded those works to thothub.tv would have occurred regardless of whether a third party placed any ads whatsoever on thothub.tv – let alone the Advertiser Defendants' ads.  Plaintiffs' contributory infringement claim fails for this reason as well.

**B.**     **Plaintiffs McGehee and Ryuu Lavitz's Copyright Claims Must Be Dismissed for Failure To Comply With 17 U.S.C. § 411(a)**

There is an additional, independent reason why the copyright claims by two of the plaintiffs, Margaret McGehee and Ryuu Lavitz, LLC, must be dismissed.  A plaintiff must have an issued copyright registration prior to instituting a civil action for copyright infringement.  17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 892 (2019).  These two plaintiffs, however, concede that all of their copyright registrations were issued by the Copyright Office only *after* this action was filed on August 3, 2020.  Mot. at 9; Opp. at 2.  As the Supreme Court held, this failure requires dismissal and cannot be cured through amendment.  *Fourth Estate*, 139 S.Ct. at 889, 892.

Plaintiffs' attempt to brush off this fatal defect is unavailing.  Citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996), they argue that their copyright allegations do not relate back to the initial complaint, as if that could cure their admitted lack of timely copyright registrations.  Opp. at 2-3.  Plaintiffs conflate different doctrines and statutes with different purposes, and the authority they cite is off-point.  No copyright claims were at issue in *In re Syntax*, which also was decided decades before the Supreme Court's controlling *Fourth Estate* decision interpreting the statutory requirements of section 411(a) of the Copyright Act.  Moreover, as plaintiffs ignore, *Malibu Media* found plaintiffs' theory here to be inconsistent with *Fourth Estate*: "with respect to relation-back, Plaintiff's argument would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to ***filing suit***.  Were it correct, a plaintiff could file suit at any time, notwithstanding Section 411(a)'s precondition, and simply update the complaint when registration finally occurred." *Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *2 (S.D.N.Y. Apr. 2, 2019) (emphasis added); *see also Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (approving of *Malibu Media*).

1    Plaintiffs do not seriously contest any of this authority; indeed, they do not even

2    address the substance of *Malibu Media* or *Izmo*.   Instead, they merely treat those

3    decisions as having been purportedly "rejected" by *Philips North America LLC v. KPI*

4    *Healthcare, Inc.*, 2020 WL 3032765 (C.D. Cal. Jan. 24, 2020).   Opp. at 3.   That case

5    does not assist plaintiffs.   *Philips* involved an entirely new **_claim_** for copyright

6    infringement first asserted in the amended complaint where the works were registered

7    after the filing of the original complaint.   *Id.* at *3.   The court distinguished those the

8    allegations before it from *Izmo* and *Malibu Media*, which it noted were decisions that

9    addressed attempts to "cur[e] a defective *existing* claim for copyright infringement."

10   *Id.* (emphasis added.)   Here, unlike *Philips*, the original complaint in this civil action

11   *already* asserted copyright infringement, and it would directly run afoul of section

12   411(a)'s plain language and the Supreme Court's holding in *Fourth Estate* to allow

13   amendment to cure the lack of registration as of the time of the suit's filing.[6]

14   Dismissal of these two plaintiffs' contributory copyright infringement claims

15   is required as a matter of law for failure to comply with section 411(a)'s requirements.

16   **II.    PLAINTIFFS FAIL TO STATE VIABLE RICO CLAIMS**

17   Plaintiffs' RICO claims should be dismissed because (1) plaintiffs' allegations

18   fail to meet Rule 9(b)'s pleading requirements, (2) plaintiffs have not alleged their

19   harm was proximately caused by any of the Advertiser Defendants' alleged actions as

20   is required to establish RICO standing; (3) plaintiffs' allegations of a substantive

21   violation of § 1962(a) or § 1962(d) fail as a matter of law; and (4) the Advertiser

22   Defendants cannot be held liable for CrakRevenue's alleged actions.

23

24

25   ───────────────

26   [6]   That these plaintiffs were newly added parties with the FAC does not assist their argument.   Section 411(a) provides that "no civil action . . . shall be instituted until

27   preregistration or registration," and "accepting the Amended Complaint as though it 'instituted' a new action for purposes of Section 411(a) . . . . would fly in the face of

28   Section 411(a)'s text."   *Malibu Media*, 2019 WL 1454317, at *3.

**A.      Plaintiffs' RICO Claims Are Subject to Rule 9(b)'s Heightened Pleading Requirements**

Plaintiffs do not contest that their RICO claims as alleged in the FAC fail to meet Rule 9(b)'s heightened pleading requirements.  Instead, they argue that Rule 9(b) should not apply to their RICO claims because they "do not allege predicate acts of fraud or sounding in fraud."  Opp. at 17.  Plaintiffs' FAC, however, shows on its face that this is incorrect.   In several instances, plaintiffs accuse the Advertiser Defendants of paying commissions "to Thothub's owners (and other pirate sites) in whole or in part in cryptocurrency to prevent detection, inhibit enforcement and collections, and minimize paper trials."  FAC ¶¶ 13; *see also*  ¶¶ 243, 317-18.  This is an allegation of "laundering of monetary instruments," 18 U.S.C. § 1956, and these money laundering allegations play a central role in both plaintiffs' § 1962(a) investment claims and § 1962(d) conspiracy claims.   FAC ¶¶ 243, 317-18.   As plaintiffs do not dispute, "[m]ost courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements because money laundering involves an element of fraud," and thus 9(b)'s heightened pleading requirements applies. *Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652, at *7 (N.D. Cal. Sept. 26, 2007).

Plaintiffs argue *Stewart v. Wachowski*, 2004 WL 2980783 (C.D. Cal. Sept. 28, 2004), is inapplicable and attempt to distinguish it on the ground that "[i]n that case, plaintiff alleged that defendants 'feloniously acquired [plaintiff]'s copyrighted works . . . by and through false pretenses,' a specific averment of fraud."  Opp. at 17.  This argument ignores, however, that plaintiffs here allege the Advertiser Defendants engaged in copyright infringement by way of paying for advertisements "in the form of cryptocurrency to prevent detection and inhibit enforcement related to copyright infringement on Thothub."   *E.g.* FAC ¶ 243.  This unambiguous allegation of laundering monetary instruments, which courts hold is fraudulent in nature, is central to the way plaintiffs have chosen to allege their RICO claims.  Thus, just as in *Stewart*, plaintiffs have made a specific averment of fraud in order to allege their infringement,

and, just like *Stewart*, plaintiffs' copyright infringement allegations must likewise be pleaded with particularity because they "sound in fraud." *Stewart*, 2004 WL 2980783 at *5.[7]

Plaintiffs' RICO claims should be dismissed for failure to meet the requirements of Rule 9(b).

**B.    Plaintiffs' RICO Claims Fail Because Plaintiffs Do Not Adequately Allege Proximate Cause**

As is undisputed, "RICO liability requires a direct and proximate causal relationship between" the defendant's conduct and the plaintiff's asserted injury. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002); *see Kamal v. County of Los Angeles*, 2018 WL 4328467, at *14 (C.D. Cal. Sept. 6, 2018) ("In addition to alleging RICO injury, a plaintiff must also show that a defendant's predicate acts were the 'but-for' and proximate cause of the alleged injury.").

Although proximate causation is a threshold requirement for civil RICO claims, plaintiffs' opposition spends but one paragraph addressing it, summarily claiming "[t]he Advertisers materially contributed to the alleged infringement by providing affiliate management services and funds needed for infringing services." Opp. at 20. Not only does this argument fail to show how plaintiffs were proximately harmed, but the allegations of the FAC affirmatively show the opposite: the connection between plaintiffs' alleged harm and the Advertiser Defendants' alleged actions is remote and

---

[7]   To the extent plaintiffs cites *Kevin Barry Fine Art Associates v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959 (N.D. Cal. 2019), for the proposition that Rule 9(b) does not apply to garden-variety RICO claims based on copyright infringement bereft of fraudulent allegations, this authority misses the mark. *Id.* at n.1.  Notably, whether Rule 9(b)'s heightened pleading standard applied was never addressed in *Kevin Barry*, as the court stated,  "[a]ll parties since agreed at the hearing on these motions that Rule 8's notice-pleading standard applies." *Id.*  Unlike the allegations in *Kevin Barry*, plaintiffs have interwoven allegations sounding in fraud into, and made them an integral part of, their RICO claims.

speculative at best.  Indeed, as plaintiffs make clear, their theory is that the Advertiser Defendants allegedly harmed plaintiffs through a complex, lengthy causal chain that is even more attenuated than in cases where the Ninth Circuit held proximate cause was lacking as a matter of law.

*Oki Semiconductor* demonstrates the point.  There, a RICO enterprise stole millions of dollars of semiconductors from a company on several occasions.  The company argued a bank teller proximately caused this loss by (1) "associat[ing] with [the] enterprise engaged in theft, transportation, and sale of stolen computer chips"; (2) "act[ing] as the Conspiracy's financial mastermind and bookkeeper"; and (3) "orchestrate[ing] the Conspiracy's financial affairs." *Oki Semiconductor*, 298 F.3d at 771, 773-74.  Even though "[b]ut for [bank teller's] ability to establish sham bank accounts and launder the proceeds of the Conspiracy's thefts, the Conspiracy may not have undertaken to steal [the company's] semiconductors," these allegations were insufficient to show the bank teller's actions had any "'direct relationship' to the armed robbery." *Id.* at 774.  Indeed, "[t]hat [the teller] knew about the robbery or indirectly provided support for it (or theoretically, that she packed sandwiches to feed the thieves) does not mean her actions at Wells Fargo directly caused the theft." *Id.*

Here, the sum total of plaintiffs' non-conclusory allegations is that the Advertiser Defendants (1) contracted with CrakRevenue and (2) paid CrakRevenue commissions if and when it placed advertisements that drove traffic to the Advertiser Defendants' sites.  FAC ¶¶ 12-18, 186, 243, 261-62.  The Advertiser Defendants did not post the infringing content on Thothub, own or operate the site, or even place any advertisements on the site.  To the contrary, the FAC makes plain that it was plaintiffs' own Patreon and OnlyFans subscribers, as well as Thothub users, that stole their content and posted it.  *E.g. id.* ¶¶ 90-95, 163.  Indeed, to connect the Advertiser Defendants' actions to plaintiffs' harm, plaintiffs must create an attenuated chain, alleging: the Advertiser Defendants agreed to contract with CrakRevenue, *id.*; who allegedly engaged in an "affiliate marketing relationship" with Thothub, *id.* ¶ 15; who

allegedly amassed users, including plaintiffs' own subscribers from Patreon and OnlyFans, *e.g.* ¶ 92; who then allegedly posted infringing copies of plaintiffs' images, *e.g.* ¶¶ 90-95, 163; which harmed plaintiffs, *id.* ¶ 124-34. Thus, the Advertiser Defendants' actions are far more removed from the eventual harm than the teller in *Oki Semiconductor*, who "acted as the Conspiracy's financial mastermind and bookkeeper" and "knew about the robbery or indirectly provided support for it." 298 F.3d at 771, 773-74. Since the alleged conduct is far more attenuated than that of the bank teller in *Oki Semiconductor*, there can be no "direct relationship" to the harm plaintiffs allege here under the governing standards of the Ninth Circuit.

Further, the FAC does not plausibly allege the Advertiser Defendants' actions were the "but for" cause of plaintiffs' harm. Although plaintiffs state "[a]bsent the financial support of the Advertisers, Thothub could not have continued to provide infringing works with anywhere close to the frequency and scale that it did," FAC ¶ 259, they admit the Advertiser Defendants are no longer advertising on Thothub and that a "direct copycat," www.thothub.ru, is still running. *Id.* ¶ 231. If a direct copy of Thothub is still running and displaying infringing content, then the Advertiser Defendants now absent support could not have been the "but for" cause of the alleged infringement, and plaintiffs' allegations to the contrary fall short of *Iqbal*'s plausibility requirement. 556 U.S. at 678.

Nor can plaintiffs salvage their RICO claims with their erroneous argument that they have standing to sue under RICO because they own copyrights they alleged were infringed. (Opp. at 18.) As an initial matter, plaintiffs' contention fails because they have no valid copyright infringement claim as against the Advertiser Defendants for the reasons previously explained. Further, nothing in the cases cited by plaintiffs absolve them of the requirements that RICO allegations, even where intellectual property is asserted, must show "defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). Plaintiffs cite *C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL

6822071 (N.D. Cal. Nov. 18, 2016), for the proposition that "misuse of intellectual property can suffice to confer standing for a RICO claim." (*id.* at *8), but that decision did not dispense with the required RICO causation requirements.  To the contrary, *C&M Cafe* held proximate cause was satisfied for only certain individual defendants who were directly involved in the claimed intellectual property infringement.  *Id.* at *1-2; *see id.* at *5, *8.  This is in stark contrast to the allegations here, where the FAC does not allege the Advertiser Defendants engaged in any direct copyright infringement and the purported conduct by the Advertiser Defendants is far removed causally from plaintiffs asserted injuries.[8]

Solely for the purposes of their 1962(d) conspiracy claim, plaintiffs also argue the unremarkable proposition that Advertiser Defendants "may be held liable for acts of co-conspirators in furtherance of the conspiracy" and then contend plaintiffs were proximately harmed by the acts of the Advertiser Defendants' alleged coconspirators. Opp. at 19.  However, this argument not only fails for the same reasons under Ninth Circuit law already discussed, but it overlooks that plaintiffs have wholly failed to allege the necessary predicate for the Advertiser Defendants' involvement in a RICO conspiracy: namely, that the Advertiser Defendants made "an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses" as required.  *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)*; see also* section II(D) *infra*.

---

[8]  Plaintiffs also, in passing, cite *Bryant v. Mattel, Inc.*, 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010), a case in which the defendants consisted of (i) a company who bribed a competitor's employees to steal trade secrets, *id.* at *4, *12; (ii) an employee who accepted the bribes and disclosed the trade secrets, *id.* at *4, *9; and (iii) the company's CEO who recruited the employee, received trade secrets directly from him, and directed others to solicit trade secrets, *id.* *17-18.  The defendants in *Bryant* thus were directly and extensively involved in the accused conduct, and *Bryant* cannot salvage plaintiffs' lack of standing under RICO here precisely because, as previously discussed, the conduct by the Advertiser Defendants alleged here is much further removed causally from plaintiffs' claimed injuries.

1    Plaintiffs' RICO claims fail for lack of standing and should be dismissed.

2    **C.   Plaintiffs Fail to Allege a Substantive Violation of § 1962(a)**

3    Plaintiffs' § 1962(a) "investment of racketeering income" claim separately fails

4    because plaintiffs do not allege an "an investment injury separate and distinct from

5    the injury flowing from the predicate act." *Sybersound Records, Inc. v. UAV Corp.*,

6    517 F.3d 1137, 1149 (9th Cir. 2008).   Plaintiffs argue their "investment of

7    racketeering income" claims are not barred because the Advertiser Defendants'

8    alleged "reinvestment allowed Thothub's operators to remain anonymous and insulate

9    the funds from enforcement actions for the investment claim." Opp. at 24.  Although

10   plaintiffs' argument further confirms their lack of standing due the remote, convoluted

11   connection between plaintiffs' alleged harm and the Advertiser Defendants' alleged

12   actions, it fails as a matter of substantive law under § 1962(a).  Under Ninth Circuit

13   precedent, "[r]einvestment of proceeds from alleged racketeering activity back into

14   the enterprise to continue its racketeering activity is insufficient to show proximate

15   causation." *Sybersound*, 517 F.3d at 1149.  First, plaintiffs' FAC admits on its face

16   that their injury flows from the "reinvestment" in the "Thothub Enterprise," FAC

17   ¶ 317-318, and thus it cannot be a "separate injury" under the unambiguous holding

18   in *Sybersound*.   517 F.3d at 1149.   Second, if there was any doubt whether

19   "remain[ing] anonymous" and "insulat[ing] the funds from enforcement" was a part

20   of the alleged "racketeering activity," one need look only to the FAC to see that the

21   enterprise plaintiffs have alleged includes "concealing" Thothub's operators and

22   avoiding detection.  FAC ¶¶ 10, 11, 13, 211, 214.  Thus, plaintiffs have only alleged

23   they were injured by the Advertiser Defendants reinvesting "proceeds from alleged

24   racketeering activity back into the enterprise to continue its racketeering activity,"

25   *Sybersound*, 517 F.3d at 1149, which is not "an injury that is 'separate and distinct'

26   from the operation of [the alleged enterprise]," *Los Angeles Turf Club, Inc. v. Horse*

27   *Racing Labs, LLC*, 2016 WL 6823493, at *5 (C.D. Cal. May 2, 2016).  Accordingly,

28   plaintiffs' § 1962(a) claim should be dismissed on this further, independent basis.

### D.   Plaintiffs Fail to Allege a Violation of § 1962(d)

Plaintiffs' § 1962(d) conspiracy claim fails for two separate reasons.  First, plaintiffs seek to hold the Advertiser Defendants liable for advertisements allegedly appearing on Thothub without alleging the necessary predicate for a RICO conspiracy: namely, that the Advertiser Defendants made "an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard*, 208 F.3d at 751. Plaintiffs argue the Advertiser Defendants "adopt[ed] the goal of furthering or facilitating the criminal endeavor."  Opp. at 20-21.  Yet the sole paragraph that plaintiffs point to as alleged support for their assertion consists of only conclusory language.  *Id*. at 21 (citing FAC ¶ 311 ("Advertisers 'agreed to facilitate the Thothub Enterprise's criminal endeavor to unlawfully use, copy, steal, and distribute copyright works from the Licensed Sites" and "CrakRevenue adopted the goal of furthering and facilitating the Thothub Enterprise's criminal endeavor while acting as the Advertisers' agent.")).  Nor are any facts alleged in the remainder of the FAC showing how the Advertiser Defendants supposedly "agreed to facilitate" or "adopted the goal of facilitating" Thothub's copyright infringement.  Accordingly, these legal conclusions, bereft of facts showing how the Advertiser Defendants allegedly "agreed to facilitate" or "adopted the goal of facilitating" Thothub's copyright infringement, cannot survive a motion to dismiss under even general pleading standards, let alone under Rule 9(b).  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Second, "RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and a client." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015).  Despite their heavy use of conclusory rhetoric to suggest otherwise,  plaintiffs do not assert any *facts* showing the alleged relationship between the Advertiser Defendants and

CrakRevenue involved anything more than a routine placement of advertisements through a third-party ad platform.

Plaintiffs argue their allegations resemble those in *Cybernet*, Opp. at 22, but this argument does not hold up because the facts asserted in *Cybernet* are far afield from those alleged here. *See* 167 F. Supp. 2d 1114. In *Cybernet*, a subscription adult website acted as "a combination gateway and quality assurance site for a number of other websites"; by paying a subscription fee to the site, the site's customers could "access and view the content on any of the related sites within the [subscription site's] 'family'"; the subscription site "monitor[ed] the quality of the various sites"; and "affiliated sites automatically direct[ed] non-[subscribing] users to the [subscription] site when they attempt[ed] to enter one of the affiliated sites without using [the subscription site]." *Id.* 1118. Here, in stark contrast, plaintiffs' allegations show the Advertiser Defendants' garden variety marketing arrangement consisted of merely (1) contracting with CrakRevenue and (2) paying CrakRevenue commissions if and when it placed advertisements that drove traffic to the Advertiser Defendants' sites. FAC ¶¶ 12-18, 186, 243, 261-62. Accordingly, unlike in *Cybernet*, such a "routine contract between a service provider and a client," cannot support a RICO conspiracy claim under § 1962(d). *See Gomez*, 2015 WL 4270042, at *11.

Plaintiffs erroneously rely on *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), to argue the alleged relationship between the Advertiser Defendants and CrakRevenue constitutes a RICO enterprise. Opp. at 22. As plaintiffs fail to mention, the relationship and unity of conduct in *Odom* was far more extensive than that alleged here. In *Odom*, "Microsoft invested $200 million in Best Buy and agreed to promote Best Buy's online store," and in return, Best Buy agreed to distribute Microsoft's MSN service compact disks; sign customers up for MSN accounts without their knowledge; lie to their customers about the same; transmit the customers' payment information to Microsoft; and allow Microsoft to surreptitiously bill the customers' credit or debit cards indefinitely. *Id.* at 543, 552. Here, in sharp contrast, nothing of

the sort is alleged in the FAC; rather, plaintiffs allege that the Advertiser Defendants contracted with CrakRevenue to pay commissions if and when CrakRevenue placed advertisements that drove traffic to the Advertiser Defendants' sites. Plaintiffs also cite *Guthy-Renker*, (Opp. at 22), but that case cuts against them: the court there found the allegations there amounted to nothing but a "routine contractual relationship for services" which was insufficient to state a RICO claim. 2015 WL 4270042, at *11.

Plaintiffs' § 1962(d) conspiracy claim should be dismissed.

## E.     The Advertiser Defendants Are Not Vicariously Liable for CrakRevenue's Alleged RICO Violations

To the extent plaintiffs argue the Advertiser Defendants are vicariously liable for CrakRevenue's alleged RICO violations because "CrakRevenue acted as the Advertisers' agent regarding Thothub," Opp. at 20, 21, this argument misses the mark because CrakRevenue's supposed RICO violations were not the types of acts "that [CrakRevenue] was hired to perform." *Oki Semiconductor*, 298 F.3d at 775–76.

"[A]n employer will be vicariously liable based on the doctrine of respondeat superior if its employee's acts were committed within the course and scope of her employment." *Id.* 775–76. Conduct is within the course and scope of employment if, *inter alia*, "the act was of a kind that the employee was hired to perform." *Id.* at 776. Here, plaintiffs allege CrakRevenue was hired as the Advertiser Defendants' "marketing agent," and "[i]n particular, BangBros has used CrakRevenue since at least 2015, and Chaturbate has used CrakRevenue since at least 2018." FAC ¶ 280. However, plaintiffs seek to saddle the Advertiser Defendants with liability for CrakRevenue's alleged agreement to facilitate a "criminal endeavor to unlawfully use, copy, steal, and distribute copyright works from the Licensed Sites." FAC ¶ 311. This is a far cry from what plaintiffs allege CrakRevenue was hired to do—market the Advertisers Defendants' sites by placing advertisements for those sites. According to plaintiffs' own allegations in the FAC, the terms by which CrakRevenue allegedly operated prohibited "advertising on websites that use stolen

or unlicensed content" and that offending websites would be placed "on an exclusion list." FAC ¶¶ 283, 284. Because plaintiffs do not and cannot allege facts to establish the Advertiser Defendants hired CrakRevenue to engage in the alleged RICO conduct, plaintiffs' reliance on respondeat superior fails.

## III.   THE FAC FAILS TO STATE AN UNFAIR COMPETITION CLAIM

Plaintiffs' unfair competition claims fail because they are (1) preempted by federal copyright law and (2) barred since such claims cannot be predicated on secondary or vicarious liability as a matter of law. Plaintiffs' arguments in opposition are unavailing, and these claims should be dismissed on these grounds.

### A.   Plaintiffs' Unfair Business Practices and Unfair Competition Claims Are Preempted

Plaintiffs' assertion that their unfair competition claims are not preempted by federal copyright law is contrary to the plain allegations in their FAC and based on mistaken analogy to precedent.

Plaintiffs suggest their claims here are supposed "publicity-right" claims that "may proceed when a likeness is used non-consensually on merchandise or in advertising". Opp. at 25 (citing *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017)). But plaintiffs do not allege that the *Advertiser Defendants* are using the plaintiffs' image "on merchandise or in advertising." *See Maloney*, 853 F.3d at 1016. To the contrary, plaintiffs' allegations make clear that the Advertiser Defendants' advertisements consisted of "direct feed[s] into a live webcam session" and "short clips. . . from scenes from BangBros adult content"—not depictions of plaintiffs, their likenesses, or copyrighted works. FAC ¶¶ 245-48. Further, both cases plaintiffs cite in support of their contention cut directly against their arguments. *Maloney* and *Jules Jordan Video, Inc. v. 144942 Canada Inc.* found the claims at issue there were preempted by the Copyright Act. *Maloney*, 853 F.3d at 1020; *Jules Jordan*, 617 F.3d 1146, 1155 (9th Cir. 2010). Because the FAC shows that plaintiffs' unfair competition claims are preempted by the Copyright Act, they should be dismissed.

**B.** **Plaintiffs' Unfair Competition Claims Separately Fail Because They Are Improperly Based on Vicarious Liability**

There is no debate that an "unfair practices claim under section 17200 cannot be predicated on vicarious liability. . . . A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate sections 17200 or 17500." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002). Plaintiffs do not dispute this is the law but instead argue their unfair business practices claims are not barred because "the Advertisers themselves unfairly competed against Plaintiffs and other creators on the Licensed Sites (who are direct competitors to the advertisers' own business) by participating in affiliate marketing with Thothub." Opp. at 24.

Plaintiffs' newly minted theory of liability, however, is flatly contrary to the allegations in the FAC. Plaintiffs' FAC alleges that "[t]he Advertisers, either directly or through CrakRevenue, unfairly competed with plaintiffs by using their names, likenesses, reputations, fame and intellectual property to drive traffic and sales for the Advertisers' services" and "caus[ed] the leaking of their paywall content." FAC ¶¶ 333-34, 339-40. Further, the facts alleged elsewhere in the FAC show the Advertiser Defendants did not themselves participate in these activities. To the contrary, (1) plaintiffs' subscribers, Thothub's Operators, and Thothub's users were the ones who allegedly "leak[ed]" and uploaded plaintiffs' images to Thothub, FAC ¶¶ 84, 90-95, 103-11, 117-19, 163-181, 304-05, and (2) Thothub's Operators placed the advertisements on Thothub and "us[ed plaintiffs'] names, likenesses, reputations, fame and intellectual property to drive traffic and sales." FAC ¶¶ 148, 186, 282.

Additionally, plaintiffs do not allege the Advertiser Defendants had "unbridled control" over these practices. The sole factual, non-conclusory allegation plaintiffs make in this regard is that *after* learning of Waidhofer's suit on or about August 3, 2020, the Advertiser Defendants asked CrakRevenue to *cease* advertising their sites on Thothub, CrakRevenue complied, and thothub.tv was shut down shortly thereafter.

FAC ¶¶ 282-86.  This is not "unbridled control" over CrakRevenue by any plausible definition.  By plaintiffs' untenable account, a defendant's taking steps to ask a third party to *stop* conduct that is the subject of a complaint *after* a complaint is made *creates* liability.  Moreover, as explained above, plaintiffs only confirm the facial implausibility of their allegations by arguing that it was the Advertiser Defendants' request, and not plaintiffs' contemporaneous 91-page lawsuit naming Thothub and its individual operators, that caused the shutdown of Thothub.  Thothub also lives on at the www.thothub.ru mirror site without the Advertiser Defendants' ads, which  further shows the implausibility of plaintiffs' position here.  FAC ¶¶ 231  As also explained previously, Ninth Circuit authority holds that such allegations cannot survive a motion to dismiss as a matter of law.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108; *Eclectic Properties*, 751 F.3d at 996–97.

Plaintiffs' legally meritless unfair competition claims should be dismissed as their allegations fall short of the required legal standards.

## IV.   PLAINTIFFS' FAC SHOULD BE DISMISSED AS TO THE ADVERTISER DEFENDANTS WITHOUT LEAVE TO AMEND

Plaintiffs devote nothing but a terse footnote to asking for leave to amend their FAC, stating simply the Court "should grant Plaintiffs leave to amend the Complaint to allege additional facts that may cure any perceived defects."  Opp. at 25.  However, the prolix allegations already set forth in the FAC show plaintiffs cannot plausibly allege contributory copyright infringement claims against the Advertiser Defendants (*see supra* § I(A)); cannot plead alleged facts showing they were proximately harmed by the Advertiser Defendants' actions alleged in plaintiffs' RICO claims (*see supra* § II(B)); cannot plausibly allege the Advertiser Defendants are vicariously liable for CrakRevenue's alleged RICO violations (*see supra* § II(E)); and cannot maintain their unfair business practices or unfair competition claims against the Advertiser Defendants because they are preempted by federal copyright law and are based on vicarious liability (*see supra* § III(A)-(B)).  As such, "[i]t would be inappropriate to

permit Plaintiff[s] leave to amend simply to contradict previous allegations." *Blocker v. Black Ent. Television, LLC*, 2019 WL 1416471, at *9 (D. Or. Mar. 6, 2019) ("[f]utility alone can justify the denial of a motion for leave to amend"); *see Hall v. SeaWorld Ent., Inc.*, 747 Fed. App'x 449, 452 (9th Cir. 2018).  Nor have plaintiffs provided the Court with any reasoning or facts at all showing how they would be able to amend their FAC to cure these basic pleading defects.

Further, even though five months have passed since plaintiffs filed their original complaint, plaintiffs have been unable to cure these pleading deficiencies, which have been continuously pointed out by the Advertiser Defendants.  *Blocker*, 2019 WL 1416471, at *8  ("The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint") (quoting *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)). And, despite plaintiffs' attempt to cure their deficiencies by means of filing their FAC, they have been entirely unsuccessful.  *Harrell v. Hornbrook Cmty. Servs. Dist.*, 2016 WL 5160171, at *8 (E.D. Cal. Sept. 20, 2016) ("District courts have particularly broad discretion to dismiss without leave to amend based on futility where a plaintiff has amended once already.").

### CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

DATED:  December 30, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____

Michael T. Zeller
Attorney for Defendants Multi Media, LLC and Sonesta Technologies, Inc. (f/k/a BangBros.com Inc.)