Michael S. Elkin (*pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400

*Attorneys for Defendant*
*CLOUDFLARE, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION—LOS ANGELES**

| | |
|---|---|
| DENIECE WAIDHOFER, an individual; MARGARET MCGEHEE, an individual; and RYUU LAVITZ, LLC, a Massachusetts limited liability company,<br><br>            Plaintiffs,<br><br>    vs.<br><br>CLOUDFLARE, INC., a Delaware corporation; BANGBROS.COM, INC., a Florida corporation; SONESTA TECHNOLOGIES, INC., a Florida corporation; MULTI MEDIA LLC, a California limited liability company; CRAKMEDIA INC., a Canadian corporation; and JOHN DOES 1-21,<br><br>            Defendants. | Case No. 2:20-cv-06979-FMO-AS<br><br>**DEFENDANT CLOUDFLARE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge:   Hon. Fernando M. Olguin<br>Date:    January 21, 2021<br>Time:    10:00 a.m.<br>Place:   Courtroom 6D – 6th Floor<br>             350 W. 1st Street<br>             Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  PLAINTIFFS FAIL TO PLEAD VOLITIONAL CONDUCT BY
     CLOUDFLARE ........................................................................................ 3

     A.   Plaintiffs misrepresent the FAC to try to create the false impression
          that Cloudflare "made copies other than at the users' direction." ............ 4

     B.   Plaintiffs' proposed "one request, one copy" rule is inconsistent
          with binding Ninth Circuit precedent ......................................................... 5

     C.   Cloudflare's alleged deletion of material from its servers is not
          volitional conduct causing direct infringement ........................................ 10

     D.   Plaintiffs' allegations concerning Cloudflare's purported "intent"
          are irrelevant to direct infringement ......................................................... 11

III. PLAINTIFFS FAIL TO PLEAD CONTRIBUTORY INFRINGEMENT . 13

     A.   Plaintiffs' reliance on the *ALS Scan* case is misplaced, and fails to
          address the arguments in Cloudflare's Motion to Dismiss. ..................... 15

     B.   Plaintiffs do not sufficiently allege that Cloudflare could have
          taken, or failed to take, "simple measures to prevent" infringement ....... 18

     C.   Plaintiffs' allegations fail to show that Cloudflare acted with the
          required culpable intent to cause infringement. ....................................... 22

IV.  CONCLUSION ...................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001), *as amended* (Apr. 3, 2001) .................................... 11

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
  819 Fed. App'x 522 (9th Cir. 2020) .................................................................. 17, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 10

*BWP Media USA, Inc. v. Polyvore, Inc.*,
  922 F.3d 42 (2d Cir. 2019) ................................................................................ 8, 9

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) ................................................................. 13, 14, 22

*DISH Network LLC v. Jadoo TV, Inc.*,
  2020 WL 5816579 (N.D. Cal. Sept. 30, 2020) ....................................................... 11

*Disney Enters., Inc. v. Hotfile Corp.*,
  798 F. Supp. 2d 1303 (S.D. Fla. 2011) ................................................................... 7

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) .................................................................................. 9

*Field v. Google Inc.*,
  412 F. Supp. 2d 1106 (D. Nev. 2006) .................................................................... 7

*Fox Broad. Co. v. Dish Network LLC*,
  747 F.3d 1060 (9th Cir. 2014) .......................................................................... 5, 6

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................. *passim*

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................. 13, 18, 21

*Perfect 10, Inc. v. Giganews, Inc.*,
  2013 WL 2109963 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th
  Cir. 2017) ........................................................................................................ 12

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .......................................................... 6, 7, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .............................................................. 20, 22

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  907 F. Supp. 1361 (N.D. Cal. 1995) ................................................. 6, 7, 12

*Rosen v. eBay, Inc.*,
  2018 WL 4808513 (C.D. Cal. Apr. 4, 2018) ............................................. 11

*Tarantino v. Gawker Media, LLC*,
  2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .................................... 14, 23

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41
  (2019) ...................................................................................... 7, 8, 11

*Wolk v. Kodak Imaging Network, Inc.*,
  840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.
  Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) ......................... 7

**Statutes**

17 U.S.C. § 106 ................................................................................................. 11

17 U.S.C. § 501(a) ........................................................................................... 11

17 U.S.C. § 512 ................................................................................................ 23

17 U.S.C. § 512(i) ............................................................................................ 23

Fed. R. Civ. P. 11 ..................................................................................... *passim*

## I.      INTRODUCTION

Attempting to shore up a dubious legal theory and deficient pleading, Plaintiffs' Opposition to Cloudflare's Motion to Dismiss takes great liberties with the law and the facts. It paints a factual picture that Plaintiffs' First Amended Complaint simply does not allege, relying on mischaracterizations of the pleadings and misleading and inaccurate summaries of the law, focusing to a significant degree on off-point, out-of-circuit authority while ignoring controlling Ninth Circuit law. And recognizing that the facts are insufficient to state a claim of copyright infringement against Cloudflare—an online service provider whose only connection to the alleged infringement was that content passed through its automated system—Plaintiffs go so far as to double down on allegations that appear to have been made up out of whole cloth, falsely claiming that Cloudflare provided its "Argo Tunnel" services to the thothub.tv website at issue.

**Regarding Plaintiffs' claim of direct infringement**, Plaintiffs fail to allege that Cloudflare, in simply providing its standard CDN and security services, engaged in the volitional copying required by binding Ninth Circuit precedent. Instead, Plaintiffs falsely claim in their Opposition that the FAC alleges Cloudflare made copies "other than at a user's direction," although the FAC itself alleges no such thing (nor could Plaintiffs, consistent with their Rule 11 obligations). Building on that false claim, they urge the Court to simply ignore the Ninth Circuit's well established standard for analyzing volitional conduct, and adopt a novel "one request, one copy" rule that flies in the face of clear Ninth Circuit precedent, and lacks support even in the cases Plaintiffs cite. The FAC's allegations do not meet the Ninth Circuit's standard, or *any* standard, for showing volitional conduct.

Even less persuasive is Plaintiffs' logic-defying theory that if a service provider *deletes* material from its system *after* being notified of alleged infringement, that amounts to volitionally "selecting" works "to store." This theory of concocted post-hoc "volition" is contrary to binding authority. And the Court should reject out of hand Plaintiffs' final, frivolous argument that because a handful of alleged infringers

supposedly use Cloudflare's off-the-shelf security and CDN services, this shows a "contribution to the creation of infringing copies" "so great" that it warrants imposing liability on Cloudflare for direct infringement in the absence of *any* volitional conduct.

**Regarding Plaintiffs' claim of contributory infringement**, Plaintiffs are similarly unable to show that Cloudflare knowingly, materially contributed to infringement of any of Plaintiffs' works at issue in this case, or that Cloudflare could have taken "simple measures" that would have "prevented" further harm to Plaintiffs' works due to infringement by third parties. Nor do Plaintiffs come close to alleging that Cloudflare acted with the culpable intent required to hold an online provider of content-neutral services liable for contributory infringement. Instead of responding to Cloudflare's Motion to Dismiss by attempting to demonstrate that the FAC's allegations adequately plead contributory infringement under the Ninth Circuit's standard, Plaintiffs fall back on an unpublished four-years-old decision in an unrelated case—but ignore a subsequent decision by the Ninth Circuit in the very same case that flatly contradicts their arguments. As Plaintiffs' own allegations show, their reliance on allegations and findings concerning a different plaintiff in a different case is misguided and fails to support their claims in *this* case. In a misguided effort to survive dismissal of the contributory liability claim, the FAC contains wholly invented allegations that Cloudflare provided its Argo Tunnel service to Thothub.tv. Plaintiffs' Opposition relies on this false claim in an apparent attempt to meet the "simple measures" prong of contributory infringement by simply fabricating some—any—such measure. Those false allegations are the subject of Cloudflare's pending Rule 11 motion, ECF 102, and even if they were true fail to save Plaintiffs' contributory liability claim. *See infra* § III.A.

**Plaintiffs' Opposition is factually inconsistent with their own allegations in the FAC.** Plaintiffs already stretched the facts in the FAC; their Opposition stretches them past the breaking point. Rather than squarely address Cloudflare's Motion to Dismiss, which discusses in detail the flaws in the FAC's actual allegations, Plaintiffs

simply mischaracterize those allegations. The FAC's *actual* allegations show that Cloudflare *did not* act with the volition required to support Plaintiffs' direct infringement claims; Plaintiffs' response is to falsely describe their own allegations. A side by side comparison highlights the extent of Plaintiffs' mischaracterizations:

| **False Characterization of FAC Allegations** | **Actual Allegation in FAC** |
|---|---|
| "the Complaint alleges … Cloudflare itself instigated the copying and storage of copyrighted works, not at the direction of users, when it **made additional copies on its servers** for *other* users **after delivering a single copy at a *different* user's request**." Opp. 7:26-8:2 (bold emphasis added. italics in original). | "where a user sought Thothub content … **Cloudflare retrieved the content from Thothub's servers then provided it to the user. The content then remained on Cloudflare's servers.** If another user requested the content, Cloudflare **delivered it directly without having to retrieve the content** from Thothub again." FAC ¶ 200 (bold emphases added). |
| "Cloudflare's brief ignores the allegations … that it **selected, via a non-automated process, which works would be copied and stored** on its systems after notice of infringement." Opp. 5:7-12 (bold emphasis added) | "After receiving the takedown letter from Waidhofer, on or about July 29, 2020, Cloudflare **deleted stored copies** of Waidhofer's works on Thothub from its own servers. On information and belief, these copies of Waidhofer's copyrighted works were intentionally deleted through a non-automated process." FAC ¶ 225 (bold emphases added). |

Put aside Plaintiffs' mischaracterizations of the FAC and the relevant law, and their claims against Cloudflare crumble. The FAC against Cloudflare should be dismissed.

## II.    PLAINTIFFS FAIL TO PLEAD VOLITIONAL CONDUCT BY CLOUDFLARE

In a convoluted and highly misleading effort to save their direct infringement claim, Plaintiffs misrepresent their own allegations to try to create the appearance that Cloudflare may have engaged in the type of volitional copying required by binding

Ninth Circuit authority. They do this by first falsely claiming that the FAC alleges that Cloudflare "made copies other than at the users' direction[,]" then falsely arguing that this shows Cloudflare's conduct was volitional. Neither is true. The cited portion of the FAC (¶ 200) simply alleges the unremarkable fact that Cloudflare's CDN services rely on "cache" copies of content to function, while acknowledging that such copies are made and delivered only at the request of users. This is exactly the type of non-volitional conduct that the Ninth Circuit has repeatedly made clear _does not_ create liability for direct copyright infringement. Moreover, even if Cloudflare's automated system _had_ responded to user requests by automatically creating "additional" copies in the manner Plaintiffs suggest, that would still not be volitional conduct under Ninth Circuit law. Plaintiffs' novel theory of volition also lacks support in the out-of-circuit case that Plaintiffs rely on, but misinterpret.

Plaintiffs' second theory of direct infringement, that Cloudflare engaged in volitional copying (that is, that it _caused_ the infringement) by _later_ selecting content to take down, is logically fallacious and legally unsupported. And their third argument, based on vague, spurious claims that Cloudflare is a "key player in the piracy ecosystem," is simply frivolous.

### A. Plaintiffs misrepresent the FAC to try to create the false impression that Cloudflare "made copies other than at the users' direction."

In an effort to show volitional copying, Plaintiffs baldly misrepresent their own allegations through misleading paraphrases and selective quotations. Then, relying on this fictionalized version of the FAC's actual allegations, Plaintiffs urge the Court to ignore binding authority and adopt a "one request, one copy" rule that flies in the face of clear Ninth Circuit precedent. Contrary to what they say in their Opposition, the FAC _does not_ allege that Cloudflare's system created "additional" copies only "after serving as a 'pass-through' conduit" for requested content. _See_ Opp. 8:8-20 (citing FAC ¶¶ 200, 195). In fact, Plaintiffs do not allege that Cloudflare's system created _any_ "additional" copies at all. The FAC simply alleges the unremarkable (and non-actionable) fact that

Cloudflare's CDN service functions by temporarily retaining "cache" copies of material that its system automatically delivers to users at their request:

> In circumstances where a user sought Thothub content not already stored on Cloudflare's servers, Cloudflare **retrieved** the content from Thothub's servers **then** provided it to the user. The content **then remained** on Cloudflare's servers. If another user requested the content, Cloudflare delivered it directly **without having to retrieve the content** from Thothub again.

FAC ¶ 200 (emphases added). In other words, according to Plaintiffs' own allegations, Cloudflare's system responded to an *initial* user request by "retrieving" content— copying it to Cloudflare's server. Cloudflare "then" provided the requested content to the requesting user. The first, user-requested copy "then remained" on Cloudflare's system for some period of time, enabling Cloudflare to respond to subsequent requests from other users "without having to retrieve the content … again." Plaintiffs' allegations mean that Cloudflare's caching system resulted in *fewer* copies being made, not more.[1]

### B. Plaintiffs' proposed "one request, one copy" rule is inconsistent with binding Ninth Circuit precedent.

Even if Plaintiffs had actually pleaded that Cloudflare created "additional copies," it would not save their direct infringement claim: the "one request, one copy" rule they propose is flatly inconsistent with the Ninth Circuit's rule that "operating a system used *to make copies at the user's command* does not mean that the system operator, rather than the user, caused *copies* to be made." *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) (emphases added).[2] This rule applies

---

[1] The other FAC allegations Plaintiffs cite do not support their inaccurate paraphrase, either: FAC ¶ 195 alleges that Cloudflare was often able to provide previously-requested content with "no[] need to retrieve this content from Thothub's servers." And FAC ¶ 197 similarly alleges only that "the most commonly accessed" Thothub pages were stored on Cloudflare's servers. Both these allegations indicate that Cloudflare's system resulted in fewer, not "additional," copies. None of them support Plaintiffs' theory of direct infringement, for each shows, at most, only non-volitional conduct by Cloudflare's automated systems.

[2] Plaintiffs quote the immediately following sentence from *Fox*, in which the Court

1  even where, because of the nature of the computer system, a user's action results in the
2  automatic creation of multiple copies of the work in the course of the system's ordinary,
3  pre-programed operation. And it is so even if users request "cached" material that they
4  themselves did not initially request. Thus, even Plaintiffs' *false* summary of their
5  allegations does not describe volitional conduct under Ninth Circuit precedent.

6      The Ninth Circuit's *Giganews* decision held that there was no volitional conduct
7  where the defendant's computer system had been programmed to automatically make
8  multiple copies in response to a user's request, then distribute copies of the content to
9  still other users. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 663-64 (9th Cir. 2017).
10 The defendant, Giganews, owned and operated multiple servers that were a part of
11 USENET, an international collection of connected computer servers. When a USENET
12 user posted a content file, or "message," to a local server, it would "automatically
13 propagate to other Usenet servers, which [would] then propagate the messages to
14 another Usenet server, and so on[,]" resulting in "[t]he dissemination of messages to
15 USENET servers around the world is an automated process that does not require direct
16 human intervention or review." *Id.* (internal quotation marks omitted). If other users
17 later requested the same content, the system would provide it to them. The Ninth Circuit
18 held that the defendant's conduct did not constitute the volitional conduct required for
19 a finding of direct infringement. *Id.* at 669. To the same effect is the seminal *Netcom*
20 case, widely recognized as the source of the volitional requirement. *Religious Tech. Ctr.*
21 *v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995). *Netcom*
22 held that "the automatic copying of [a] message … onto Netcom's computer and onto
23 other computers on the Usenet" "[a]ccording to a prearranged pattern established by
24 Netcom's software" did *not* create direct infringement liability, even though the copies
25 remained "available to Netcom's customers and Usenet neighbors, who [could] then

26

27 applies the general rule to the case at hand, using the singular term "copy" because the
   only question then before the Court concerned the creation of a single copy in response
28 to a user's request. *Fox*, 747 F.3d at 1067.

1    download the messages to their own computers." *Id.* at 1367–68.

2        Other courts have also explicitly rejected Plaintiffs' "additional copies" theory of

3    liability. For example, in *Disney Enters., Inc. v. Hotfile Corp.*, the court dismissed a

4    direct infringement claim based on "alleg[ations] that [the defendant's online system]

5    makes *additional* copies once the copyrighted material is uploaded to the server." 798

6    F. Supp. 2d 1303, 1309 (S.D. Fla. 2011) (emphasis added) ("This argument … fails, for

7    courts have repeatedly held that the automated conduct of software, unaided by human

8    intervention, is not 'volitional.'"). *See also, e.g.*, *Wolk v. Kodak Imaging Network, Inc.*,

9    840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com,*

10   *Inc.*, 569 F. App'x 51 (2d Cir. 2014) (no volitional conduct where online image hosting

11   platform allegedly created electronic "preview pages" of products imprinted with the

12   plaintiff's images, as well as transmitting copies of the images to vendors who actually

13   created the ordered products).

14       Plaintiffs' *actual* allegations put Cloudflare even more comfortably within Ninth

15   Circuit precedent. For example, in *Field v. Google Inc.*, the Nevada district court held

16   that even when a user requests content previously cached by an online service provider,

17   "it is the user, not [the service provider], who creates and downloads a copy of the

18   cached Web page." 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (the service provider

19   "is passive in this process" since its "computers respond automatically to the user's

20   request[,]" without which "the alleged infringement at issue in this case would not

21   occur."). So too here: "[t]he automated, non-volitional conduct by [the service provider]

22   in response to a user's request does not constitute direct infringement under the

23   Copyright Act." *Id.*; *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 737 (9th

24   Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019) ("Zillow's automated

25   processes storing or caching VHT's photos are insufficiently volitional to establish that

26   Zillow directly infringed VHT's [copyrights] … Users, not Zillow, 'selecte[d]' images

27   to add to their personal boards and 'instigate[d]' the automatic caching process by

28   saving a particular image.") (quoting *Giganews*, 847 F.3d at 670).

7

Plaintiffs nonetheless argue, based on vague language plucked out of context from a minority *concurring* opinion in an out-of-circuit decision, that Cloudflare can avoid liability for direct infringement only if it limits its system to creating a single copy in response to any user request, delivering that one copy to that user and no one else. Opp. 6, 7-10 (citing *BWP Media USA, Inc. v. Polyvore, Inc.*, 922 F.3d 42 (2d Cir. 2019)). Not only is this contrary to the law in the Ninth Circuit, and every other circuit to have considered the issue, it is not even what the *Polyvore* case says. In that case, the defendant offered a service that allowed users to select images from other websites; the images were copied and stored on Polyvore's website, where users could search for and locate them. In addition to the exact copy the user had requested, the system allegedly created eight more copies that "altered the user-uploaded content … [by] resiz[ing] the uploaded images[,]" *and* assigned the "altered" copies "separate URLs that could be viewed by anyone at any time." *BWP Media USA, Inc. v. Polyvore, Inc.*, 922 F.3d 42, 59 (2d Cir. 2019) (Walker, J., concurring in the result). On appeal, a panel of the Second Circuit vacated the district court's grant of summary judgment to the defendant, finding that there was "a dispute of material fact regarding whether *Polyvore* created multiple copies of BWP's photos that were not requested by Polyvore users." *Id.* at 44 (emphasis added).[3] This brief *per curium* decision was accompanied by separate concurrences from each of the three judges on the panel. Plaintiffs falsely depict *Polyvore* as representing a consensus within the Second Circuit that if a user's request results in the automated creation of more than a single copy, the service provider *may* be a direct infringer. That is incorrect: Plaintiffs' is very much a minority position, espoused by just one of the three judges. Indeed, another of the judges stated categorically that "[t]here is ***no basis*** to conclude that 'additional unrequested copies' are of any

---

[3] Merely resizing images would not constitute volitional conduct in the Ninth Circuit anyway: the Ninth Circuit recently held that a defendant's automated "process that automatically trims or pads images whose height and width did not match the target resolution, for the purpose of accelerating website speed … does not amount to volitional conduct." *VHT*, 918 F.3d at 738.

significance **when a machine is simply a passive agent**." *Polyvore*, 922 F.3d at 69 (Pooler, J., concurring in the result) (emphasis added) ("volitional-conduct analysis must enter the landscape of multiple devices, mindful of … the realities of functional website design in our present.").[4] In short, Plaintiffs' theory of direct infringement is not the law in the Second Circuit, or anywhere else. The only reasonable reading of *Polyvore* is that it stands for the unremarkable proposition that if a service provider's system responds to user input by creating a *new* work that was not requested by the user, that *may* meet the volitional conduct requirement. That is not what Plaintiffs allege (or could allege) here. Plaintiffs' reliance on *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, is misplaced for the same reason. Opp. 7 (citing 844 F.3d 79, 96 (2d Cir. 2016)). In that case, when a user requested the defendant's system to retrieve a copy of a song, the system would, unbidden, also create a copy of an entirely different and separate work, namely the associated album cover art. *MP3tunes*, 844 F.3d at 96. The court found that under those circumstances, a reasonable jury could have found that it was the service provider, not the user, whose volitional act "caused" infringement of the "copyrighted item that [the] user did not request[.]" *Id.*

Plaintiffs' own allegations show that Cloudflare's automated systems created copies, if at all, only in automatic response to user commands. FAC ¶ 201 (alleging that Cloudflare's computer systems and servers operated in response to "user requests to access or view Thothub"); *id.* ¶ 195 (Cloudflare provided "content" "[w]hen a user… sought to access … pages" from the Thothub.tv website); *id.* ¶ 200 (Cloudflare retrieved content and provided it to users "where a user sought Thothub content" or "[i]f another user requested the content[.]"). Under governing Ninth Circuit law, that is not volitional conduct, and the Court should reject Plaintiffs' invitation to ignore the law in favor of

---

[4] Judge Pooler agreed the case should be remanded to determine "whether Polyvore is sufficiently tied to the act of copying for direct infringement liability to attach"—in other words, whether that particular defendant, in that particular case, had exhibited the required volitional conduct. *Id.* at 69. Given Plaintiffs' own allegations and the very different nature of Cloudflare's services, no such questions arise here.

a new, invented standard that *no* court (including the Second Circuit) has ever espoused.

### C.     Cloudflare's alleged deletion of material from its servers is not volitional conduct causing direct infringement.

Plaintiffs next urge the Court to find that Cloudflare's alleged *deletion* of material from its servers meets the volitional act requirement, on the spurious and illogical basis that deleting material is the same thing as "*selecting* works to store," thereby making the service provider "an active participant in the process of copyright infringement."[5] Opp. 10-12. The Court should reject this "backward causation" theory, which lacks any support in either logic or law. As a preliminary matter, Plaintiffs' allegation "on information and belief" that Cloudflare deleted Plaintiffs' works from its servers by a "non-automated process" shortly before the Thothub.tv website disappeared from the Internet appears to have been simply made up out of whole cloth—just like other key allegations that Plaintiffs dropped from their initial Complaint, or that are the subject of Cloudflare's pending Rule 11 motion. *See, e.g., infra* §§ III.A fn. 9, III.B fn. 10. Tellingly, Plaintiffs allege no source for their supposed "information," and no basis for their supposed "belief." Even if the allegation were true, though, it would not support Plaintiffs' theory that Cloudflare committed a volitional act of direct infringement. Plaintiffs' backward causation theory fails for multiple reasons.

*First*, as a matter of logic, acts *after* the alleged direct infringement could not possibly have *caused* the earlier infringement. "*[D]irect* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement."

---

[5] Here again, Plaintiffs' Opposition baldly mischaracterizes their own pleadings: contrary to their repeated misrepresentations, the FAC did not allege that Cloudflare "selected works to copy or not copy." Opp. 8; *see supra* at § I, p.3 (chart of Plaintiffs' false characterizations). Instead, the FAC alleges (though falsely, and without any factual support) that Cloudflare selected certain of Plaintiffs' works to *delete* from its servers. The FAC's sole, unsupported allegation that "Cloudflare committed volitional acts by … selecting works to store on its server network[,]" appears to be simply a calculated mischaracterization by Plaintiffs of their previous (false) allegations that Cloudflare selected works to *delete*. FAC ¶ 322. Regardless, it is precisely the type of "formulaic recitation of the elements of a cause of action" that "will not do" to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Giganews*, 847 F.3d at 666 (internal quotation marks and citation omitted). *Second*, *deleting* material is not an infringing act: copyright infringement requires a violation of "at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001), *as amended* (Apr. 3, 2001); 17 U.S.C. § 501(a) (defining copyright infringement). Whether or not Cloudflare "volitionally" performed a *non-infringing* act is completely irrelevant to whether Cloudflare volitionally performed an earlier *infringing* act. And *third*, both this Court and the Ninth Circuit have squarely rejected precisely this argument, when it was brought by copyright plaintiffs who asserted that a defendant's "fail[ure] to remove photos once it received notice" was "a conscious choice that amounts to volitional conduct on [the defendant]'s part." *VHT*, 918 F.3d at 733 (finding that theory 'unavailing'); *see also Rosen v. eBay, Inc.*, 2018 WL 4808513, at *5 (C.D. Cal. Apr. 4, 2018) (Fitzgerald, D.J.) ("conclusively" determining that a defendant's "alleged failure to remove … infringing images from its servers after it received Plaintiff's [notices of claimed infringement] does not constitute the volitional conduct necessary for direct copyright infringement.") (citations omitted). Plaintiffs misrepresent the *VHT* decision by quoting an unpublished district court decision that itself quotes incorrectly from *VHT*. Opp. 7 (discussing and quoting *DISH Network LLC v. Jadoo TV, Inc.*, 2020 WL 5816579 (N.D. Cal. Sept. 30, 2020)). *Jadoo* is simply mistaken about *VHT*, which stands for the opposite proposition for which it is cited.[6]

### D.   Plaintiffs' allegations concerning Cloudflare's purported "intent" are irrelevant to direct infringement.

Finally, Plaintiffs argue that because some alleged infringers use Cloudflare's security and CDN services (which are available to the general public), this shows that

---

[6] The *Jadoo* court mistakenly thought that in *VHT*, the Ninth Circuit had "recognized that failure to remove infringing content from a website is a 'conscious choice that amounts to volitional conduct.'" *Id.* at *6. In actuality, the Ninth Circuit had merely *summarized* the plaintiff's argument to that effect, only to reject the argument as "unavailing." *VHT*, 918 F.3d at 733.

Cloudflare's "contribution to the creation of infringing copies" is "so great" that it warrants imposing liability on Cloudflare for direct infringement even in the absence of any volitional conduct by Cloudflare. Opp. 12. This implausible argument ignores Ninth Circuit law, lacks any factual support, and is irrelevant to direct infringement. As this Court has explained, "the key to understanding the so-called 'volitional conduct' requirement is to equate it with the requirement of causation, not intent." *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *6 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017). Absent the required volitional conduct, direct infringement cannot be established based on intent or any particular state of mind. *Netcom*, 907 F. Supp. at 1367. Plaintiffs nonetheless argue that Cloudflare's supposed "intent" indicates that its contribution to unidentified infringements, occurring on allegedly infringing websites *other* than Thothub.tv, was "so great that it warrants holding [Cloudflare] directly liable for the infringement." Opp. 12:21-23. Even leaving aside that none of these allegations concern any of the infringements of Plaintiffs' works at issue here, or any conduct by Cloudflare at issue in this case, these allegations are far too vague and weak to support a direct infringement claim against Cloudflare.

Plaintiffs' attempt to cast Cloudflare as a "key player in the piracy ecosystem" relies on two sets of allegations, neither of them compelling. Opp. 12:8. Plaintiffs first recite a few statistics and vague third-party allegations from unidentified "stakeholders" in a years-old European Commission Report (the "2018 Report") that has since been superseded. *Id.*[7] Even assuming these superannuated, unsourced statistics are valid—

---

[7] The December 7, 2018 Report that Plaintiffs rely on was superseded on December 14, 2020 by an updated Report (the "2020 Report") that omits the vague, unsourced third-party allegations against Cloudflare, emphasizes that Cloudflare "[is] not listed in this Watch List," and makes it clear that Cloudflare "takes appropriate steps, through robust abuse reporting system and a Trusted Reporter programme, to ensure that right holders have the necessary information to pursue complaints of alleged infringements with the hosting providers and website operators able to act on those complaints." *Compare* 2018 Report at p.21 (European Commission, Counterfeit and Piracy Watch List, dated Dec. 7, 2018) (available online at https://trade.ec.europa.eu/doclib/docs/2018/december/tradoc_157564.pdf) *with* 2020 Report at p.12 (European Commission, Counterfeit and Piracy Watch List,

for which there is no support—they lack relevance to any identifiable infringement. Tellingly, the 2018 Report itself belies Plaintiffs' breathless characterization of Cloudflare's conduct as "[s]tunning[]," since it mildly concludes with a recommendation from unidentified "respondents" that Cloudflare's "cooperation with the rightholders, including [its] responsiveness to infringement notices should be improved." *Id*. Plaintiffs next allege, in conclusory fashion, that nineteen so-called "pirate" websites (in common with millions of other websites and Internet properties) use Cloudflare's ordinary services. FAC ¶ 233; Opp. 12:16-18. Even if true, that is irrelevant to Cloudflare's alleged direct infringement. None of Plaintiffs' unfounded allegations, alone or in the aggregate, comes close to supporting the notion that the Court may simply ignore Ninth Circuit law and hold Cloudflare liable as a direct infringer in the absence of *any* evidence of volitional conduct.

## III.   PLAINTIFFS FAIL TO PLEAD CONTRIBUTORY INFRINGEMENT

As Plaintiffs acknowledge, imposing contributory infringement liability on a "computer system operator" like Cloudflare requires, at a minimum, showing that it "has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted work, yet continues to provide access to infringing works." Opp. 14-15 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007)). Contributory infringement requires showing that the defendant "materially contributed to the infringement through purposeful, culpable expression and conduct." *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) (dismissing contributory infringement claim); *see Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005) ("One infringes contributorily by … encouraging direct infringement.").[8] Accordingly, merely

_____

dated Dec. 14, 2020) (available online at
https://trade.ec.europa.eu/doclib/docs/2020/december/tradoc_159183.pdf).

[8] Plaintiffs argue, incorrectly, that Cloudflare's Motion to Dismiss "confuses the standards for induced infringement (which requires showing intent) versus material contribution (which does not)." Opp. 17 n.6. As both *Cobbler Nevada* and the Supreme

"alleg[ing] that a defendant … provided the means to accomplish an infringing activity is insufficient to establish [the] claim." *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014).

Instead of explaining how their own allegations support their claims in this case under the relevant standard, or addressing Cloudflare's demonstrated failings of their FAC, Plaintiffs recycle, wholesale, a four-year-old, unpublished district court decision in an unrelated case, brought by an unrelated party, concerning *that* party's allegations against Cloudflare. Plaintiffs simply ignore the recent superseding appellate decision in the very same case, in which the Ninth Circuit upheld dismissal of contributory infringement claims against the web hosting provider that allegedly provided *hosting* services to an alleged direct infringer, a far more direct and material "contribution" to alleged infringement than Cloudflare did or could provide. Similarly, Plaintiffs simply ignore recent decisions establishing that where "[n]othing in [the] complaint … suggests[] that [defendant] actively induced or materially contributed to the infringement through purposeful, culpable expression and conduct[,]" a contributory infringement claim cannot survive. *Cobbler Nevada*, 901 F.3d at 1148 (internal quotation marks and citation omitted). Those rulings govern here. Even worse, in a misguided effort to stave off dismissal of their contributory liability claim in the face of the controlling authority discussed in Cloudflare's earlier motion to dismiss the original Complaint, the FAC concocts false allegations regarding Cloudflare's provision of Argo Tunnel services to the Thothub.tv website at issue. Plaintiffs' false allegations are the subject of Cloudflare's pending Rule 11 motion. As that motion explains, Cloudflare's "Argo Tunnel" (which it *did not provide* to Thothub) is simply a security service that encrypts data as it moves between a customer's origin web server and

---

Court's *Grokster* decision make clear, Plaintiffs are mistaken: at least in a case where (as here) a defendant's product or service has substantial noninfringing uses, culpable intent is required for secondary liability—though it may be imputed where (unlike here) there is sufficient circumstantial evidence of intent. *See Grokster*, 545 U.S. at 935 (discussing limited circumstances where a defendant's "statements or actions directed to promoting infringement" may permit the court to *impute* the required intent).

---

14

Cloudflare's nearest data center; to enable customers to resist online attacks and block common data breach techniques, the service functions without opening any public, inbound ports. *See* ECF 102 at 4:9-17. Even if Plaintiffs' allegations concerning this service were true, as discussed below they would fail to save Plaintiffs' contributory liability claim.

In short, the FAC fails to adequately allege contributory liability against Cloudflare under controlling Ninth Circuit law, its made-up allegations about Cloudflare's services notwithstanding.

A.   **Plaintiffs' reliance on the *ALS Scan* case is misplaced, and fails to address the arguments in Cloudflare's Motion to Dismiss.**

The portion of the four-year-old *ALS Scan* decision that Plaintiffs rely on reaches three conclusions concerning *that* plaintiff's allegations in that particular case. None are persuasive here: not only is Plaintiffs' FAC different, but allegations that may have been novel enough to survive a motion to dismiss four years ago fail in light of intervening case law. In light of binding precedent and Plaintiffs' own, present allegations, their FAC fails to state a claim of contributory infringement by Cloudflare.

*First*, the *ALS Scan* plaintiff had alleged that Cloudflare's CDN service made it "faster and easier" for users to access infringing websites and load infringing images, and that without Cloudflare's services, "it would take users twice as long to access and load the infringing images." Opp. 16. But as Cloudflare pointed out in its Motion to Dismiss the claims in *this* case, content delivery services like Cloudflare's are available from any number of providers, so nothing would have prevented Thothub.tv from obtaining substantially the same services from any of a multitude of other providers. This is not a case like *Perfect 10 v. Amazon.com*, where the service at issue was Google's market-dominating search engine for which no substitute existed. Plaintiffs have no answer to Cloudflare's argument in its Motion to Dismiss that Thothub.tv could have readily found substitutes for Cloudflare's CDN and security services.

Plaintiffs allegations in *this* case are insufficient to withstand a Motion to

Dismiss. It is implausible, to say the least, that without Cloudflare's services, Thothub's servers "would have 'overrun and crashed,'" since untold numbers of websites function perfectly well without using Cloudflare's services. Opp. 18. Similarly defective, and for the same reason, are Plaintiffs' speculative allegations that without Cloudflare's services, "Thothub would not have been able to operate effectively, and certainly not on such a large scale." Opp. 18. Plaintiffs do not even attempt to respond to Cloudflare's arguments addressing these allegations in its Motion to Dismiss, and simply repeating them does not make them any more plausible. As to Plaintiffs' allegations concerning Cloudflare's Argo Tunnel service, they are not only speculative and unfounded, but false, as detailed in Cloudflare's pending Rule 11 Motion, ECF 102.[9] Just like Plaintiffs' other allegations seeking to persuade the Court that Cloudflare's provision of ordinary commercial services somehow gave it the power to "*prevent* … damage" to Plaintiffs' copyrights from Thothub's infringement, it is also completely implausible: as Cloudflare pointed out in its Motion to Dismiss, even if the thothub.tv website had used the Argo Tunnel service (and it did not), millions upon millions of websites connect to the Internet every minute, without the benefit of *any* of Cloudflare's services, including the Argo Tunnel service. ECF 84 at 21.

*Second*, the *ALS Scan* plaintiff had alleged that Cloudflare "allows pirate sites and their hosts to conceal their identity from copyright owners, thereby preventing copyright holders from stopping the pirate sites' infringing activities." Opp. 16 (internal quotation marks omitted). But here, Plaintiffs acknowledge that Cloudflare *provides* customer information in response to valid legal process. *See* FAC ¶ 217. And Plaintiffs fail even to address the fact that (as Cloudflare pointed out in its Motion to Dismiss)

---

[9] Cloudflare repeatedly informed Plaintiffs' counsel, in discovery responses, by letter, and by email, that it did not provide Argo Tunnel services to Thothub. Despite Cloudflare's repeated requests, Plaintiffs' counsel refused to even confirm that he or his clients had conducted an objectively reasonable investigation before making their allegations, as Rule 11 requires: instead, he simply claimed, vaguely and without providing any further information, that they had a good faith basis, which is insufficient under Rule 11. Plaintiffs' counsel also refused to describe or even discuss what, if any, factual basis there was for the allegations.

there are legal processes, well known to Plaintiffs, by which copyright owners (like Plaintiffs) can require an online service provider (like Cloudflare) to identify alleged infringers. ECF 84 at 12. Plaintiffs concede that they made no attempt to seek information from Cloudflare about the owners, operators, or registrants of the thothub.tv website, or any of the Doe Defendants, or even the IP address of the thothub.tv website, by these readily available means, or any other means. *Id*. They cite not a single fact to show that Cloudflare "concealed *Thothub's* true ownership and server locations." FAC ¶ 10 (emphasis added).[10] They even concede that Cloudflare "'provide[s] the names of the applicable hosting providers as well as their contact information to the extent that they are using Cloudflare's services'" and that information is available to Cloudflare. ECF 84 at 12 (quoting FAC ¶ 98). In sum, they simply fail to address the points raised in Cloudflare's Motion to Dismiss, and fail to explain why this matters or what possible use they could have made of Thothub's IP address information had they bothered to request it or attempted to obtain it through available means.

*Third*, Plaintiffs argue that the *ALS Scan* district court had declined to dismiss that plaintiff's complaint because the Court found it plausible, on the facts alleged there, that there might have been simple measures available to Cloudflare to "prevent further damages to [ALS Scan's] copyrighted works." Even if the facts before the Court in that case were the same as those pleaded by Plaintiffs here—which they are not—the holding has been superseded by a subsequent decision in that same case.

The Ninth Circuit, in *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 Fed. App'x 522, 524 (9th Cir. 2020), recently held that a computer system operator that leased servers to an allegedly infringing website could not be held liable for contributory infringement when it took the "simple measure" of forwarding notices of claimed

---

[10] *See supra* at fn. 7 (discussing 2020 Report of European Commission at p.12, which notes that Cloudflare "takes appropriate steps, through robust abuse reporting system and a Trusted Reporter programme, to ensure that right holders have the necessary information to pursue complaints of alleged infringements with the hosting providers and website operators able to act on those complaints."

infringement to the website, and there was no evidence defendant had "other simple measures at its disposal." As Plaintiffs' FAC shows, and as discussed below at § III.B, that is exactly what Cloudflare did. ECF 84 at 20; FAC ¶ 221. Plaintiffs' own allegations and the Ninth Circuit's recent decision make clear that Cloudflare took all appropriate steps, consistent with the nature of its services, to address complaints alleging infringing content on a website using those services. Further, Plaintiffs fail to identify any simple measures available to Cloudflare that it did *not* take. Plaintiffs' vague, conclusory allegation that Cloudflare "does not take reasonable action after being notified about repeat infringement," FAC ¶ 239, is insufficient to support their contributory infringement claim.

*Perfect 10 v. Amazon.com* is not analogous: in that case, the Ninth Circuit held that, assuming the plaintiff's works "were available using [Google's] search engine," it was plausible that Google's market-dominating search engine materially contributed to direct infringement by allowing potential consumers to locate infringing content in the first place. *Amazon.com*, 508 F.3d at 1172. Here, by contrast, Cloudflare's CDN and other services do not perform any such essential function, and Cloudflare's contribution is not "material" to the alleged direct infringement.

## B.   Plaintiffs do not sufficiently allege that Cloudflare could have taken, or failed to take, "simple measures to prevent" infringement.

As discussed in Cloudflare's Motion to Dismiss, "Cloudflare took the only simple measure available to it" in attempting to address claims of infringement, by forwarding complainants' "details and complaints onto the true host of the site" identified as the source of the direct infringement. ECF 84 at 20 (quoting FAC ¶ 221). Plaintiffs simply ignore Cloudflare's arguments, conceding that Cloudflare did so. *Id.* And FAC ¶ 221 is the only specific factual allegation in the FAC addressing Cloudflare's processing of notices.[11]

_____

[11] In the Initial Complaint, Plaintiff Waidhofer alleged: "When it receives takedown

1     Instead of addressing this issue or grappling with the Ninth Circuit's superseding

2  *ALS Scan* decision, Plaintiffs simply reiterate that "Cloudflare could have simply

3  terminated service to Thothub." Opp. 21. This ignores the teaching of *ALS Scan* and

4  this Court's decision that *ALS Scan* upheld. In *ALS Scan*, defendant Steadfast Networks

5  was a data-center service provider that leased servers to customers, including an alleged

6  direct infringer, thereby enabling it to host data on the Internet. Plaintiff had sent notices

7  of copyright infringement to Steadfast, which in turn had forwarded the notices to the

8  designated agent of the allegedly infringing website. *ALS Scan, Inc. v. Steadfast

9  Networks, LLC*, 819 Fed. App'x. 522, 523 (9th Cir. 2020). Plaintiff argued that it was

10 "not enough to forward the infringement notices" in light of the large number of such

11 notices, and sought to hold the hosting provider liable for contributory infringement. *Id.*

12 Although the hosting provider could have withdrawn its service from the alleged direct

13 infringer, the Ninth Circuit properly did not recognize that as a "simple measure": to

14 the contrary, it found *no* "evidence that [the hosting provider] had any other simple

15 measures at its disposal" other than forwarding the plaintiff's notices to the direct

16 infringer. *Id.* at 524. This was so because—as with Cloudflare here—the hosting

17 provider "did not operate, control, or manage any functions of [the direct infringer][,]"

18 and "could not supervise, access, locate, or delete … [its users'] accounts." *Id.*

19 Accordingly, the Ninth Circuit upheld this Court's ruling that the hosting provider was

20 not liable for contributory infringement because "[w]hat measures were available to

21 prevent further damage to ALS's copyrighted images"—namely, forwarding notices of

22 claimed infringement to the direct infringer—"Steadfast took." *Id.*

23 _____

24 request from creators who discover Cloudflare as the listed server for Thothub,
   Cloudflare just forwards the requests for removal of content to Thothub." ECF 1 at

25 ¶ 179. After Cloudflare's motion to dismiss the Initial Complaint explained that this
   allegation fatally undermined any theory of contributory infringement, Plaintiffs

26 strategically dropped it from the FAC. Now, understandably wary of contradicting
   Waidhofer's own previous allegation, Plaintiffs simply ignore it. Their FAC vaguely

27 claims that Cloudflare "brushed off" notices from McGehee and Ryuu Lavitz. FAC
   ¶ 222. Whatever this ambiguous phrase might mean, it is certainly *not* an allegation that

28 Cloudflare failed to take the "simple measure" of forwarding those notices to the
   allegedly infringing website, nor could it plausibly be taken for such an allegation.

As the Ninth Circuit recognized, termination of service to a customer is *not* a simple measure. There is nothing "simple" in the consideration by a service provider whether to terminate service to a customer, based on nothing more than unverified allegations of infringement by third parties whose truthfulness and reliability the service provider has *no* ability to determine. It is simply impossible for a third party like Cloudflare to determine from the face of an unverified notice sent by an unfamiliar complainant whether a claim of copyright infringement is valid. Equally dubious is the notion that a service provider can identify a so-called "pirate" website just by inspecting it, particularly where, as here, the service provider has millions upon millions of customers. And that is the *only* basis upon which, according to Plaintiffs, Cloudflare was supposed to have made that decision. Plaintiffs made no effort whatsoever to obtain a neutral finding that Thothub.tv was engaged in infringement, or to obtain information about Thothub, its operators, or its hosting provider from Cloudflare or any other source. They concede that Cloudflare provides such information. *See, e.g.*, FAC ¶¶ 98, 217. Even in the absence of that, and based only on Plaintiffs' self-interested and unverified reports, Cloudflare took the reasonable measures available to it, forwarding Plaintiffs' complaints to Thothub's hosting provider. Had Plaintiffs been serious about solving the problem of Thothub's alleged infringement, they could have leveraged the simple measures Cloudflare could and did take, instead of pretending to shift the problem to Cloudflare with the goal of setting up a strike suit.

Moreover, because service providers like Cloudflare have neither the expertise nor the resources to make these determinations, the consequences of the "simple" rule Plaintiffs propose—either terminate service to customers on the say-so of anyone who purports to own a copyright, or risk potentially ruinous liability—would also be terrible policy. Among other things, it would give an unchecked "heckler's veto" to unscrupulous, careless, or merely prolific notice senders, some of whom would certainly use that power to harm competitors, silence critics, and extort businesses. *See, e.g., Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 798 (9th Cir. 2007) ("[W]hat

would stop a competitor … from sending bogus notices … claiming infringement by its competitor in the hope of putting a competitor out of business, or, at least, requiring it to spend a great deal of money to clear its name?") Requiring Cloudflare to make those choices would also give bad actors a ready way to manipulate Cloudflare's systems and expose its customers to grave security risks. It would be like requiring an alarm company to weigh whether to disarm their security system whenever someone called in with the "right" code—and making the code public.

Finally, even if the decision to terminate service to a customer were "simple"— it is not—there is no merit to Plaintiffs' implausible speculation that termination of Cloudflare's services to Thothub would likely "prevent further damage" to Plaintiffs' copyrights. Cloudflare's services are not *necessary* to make a website available online, and for the purpose of analyzing materiality, its services are fungible: if a website cannot obtain CDN or security services from Cloudflare, it will obtain them elsewhere.[12]

As a practical matter, Plaintiffs' argument would mean that any measure that *can* be taken *must* be taken, as long as it is "likely" to have "at least some impact" on the infringing activity. Opp. 21 (citation and quotation marks omitted). But the standard is "prevent," not "likely … have some impact." *Contra* Plaintiffs, *Amazon.com* does not support a lax "some impact" standard. Opp. 19-20. In that case, the Ninth Circuit held that it was plausible that Google's market-dominating search engine materially contributed to direct infringement by enabling potential infringers to locate content. *Amazon.com*, 508 F.3d at 1172. Accordingly, it was at least plausible that some infringement would be "prevented" if Google withdrew its service, leaving potential infringers unable to find material to infringe. Here, by contrast, Cloudflare's CDN and

---

[12] Plaintiffs' Opposition consistently misrepresents Cloudflare as an "ISP," a term reserved for entities that enable their customers to *access* the Internet. Cloudflare is an "online service provider" that, as the term suggests, provides services to customers who are already online. Whereas an ISP might be able to "prevent" infringement by terminating service to a customer and thereby preventing them from even *accessing* the Internet, Cloudflare has no such power over its customers. Since this "mistake" is conspicuously missing from the FAC, it appears Plaintiffs made it intentionally.

security services perform no comparable essential function, and it is not plausible that the withdrawal of *Cloudflare's* services would meaningfully have "prevent[ed]" infringement of Plaintiffs' works. *See also, e.g., Perfect 10 v. Visa*, 494 F.3d at 797–98 (noting that without Defendants' payment processing services, "infringement could continue on a large scale because other viable funding mechanisms are available," and holding that "because infringement of [plaintiff's] copyrights can occur without using Defendants' … system," providing such systems "does not constitute a 'material contribution' under the test for contributory infringement[.]")

C. **Plaintiffs' allegations fail to show that Cloudflare acted with the required culpable intent to cause infringement.**

Recognizing that they lack plausible factual allegations to support a material contribution theory because—among other things—Cloudflare *took* the simple measures that were available to it, Plaintiffs strain to locate the required "purposeful, culpable expression and conduct" (*see Cobbler Nevada*, 901 F.3d at 1148) by analogizing Cloudflare's conduct to that of *Grokster*. But none of the three factors the Supreme Court pointed to in *Grokster* as evidence of culpable intent is present here.

*First*, Plaintiffs cannot point to a single "advertisement or solicitation" by Cloudflare that "broadcasts a message designed to stimulate others to commit violations," as was the case with the *Grokster* defendants. Instead, Plaintiffs argue that Cloudflare's ordinary content delivery and security services, which are used by millions of web properties including one of the Plaintiffs and two of the services that Plaintiffs rely on for their livelihood—to say nothing of a host of legitimate businesses such as IBM, Sony Music Group, LabCorp, the Library of Congress, numerous state, county, and municipal governments, and nearly one in six of the Fortune 1,000—may also be used by alleged infringers seeking the same type of legitimate services. That is a far cry from the "[e]vidence of active steps taken to encourage direct infringement, such as advertising an infringing use[,]" that the Supreme Court required in *Grokster*. 545 U.S. at 915. As in *Tarantino* (a case Plaintiffs simply ignore), Plaintiffs allege precisely the

22

1   type of conduct—"merely provid[ing] the means to accomplish an infringing

2   activity"—that "is insufficient to establish a claim for copyright infringement."

3   *Tarantino*, 2014 WL 2434647, at *3.

4      *Second*, Plaintiffs' argument that Cloudflare did not "attempt[] to develop

5   filtering tools or other mechanisms to diminish the infringing activity using their

6   software" is simply irrelevant, for multiple reasons. Opp. 20. Primarily, the FAC

7   contains not a single allegation that Cloudflare could have, should have, or failed to

8   develop filtering tools. Plaintiffs' disingenuous attempt to repurpose allegations

9   concerning Cloudflare's repeat infringer termination *policies* as somehow relevant to

10  "filtering tools or other mechanisms," *id.*, is unconvincing.[13] In addition, as the *Grokster*

11  Court noted, absent "other evidence of intent" to induce infringement, "a court would

12  be unable to find contributory infringement liability merely based on a failure to take

13  affirmative steps to prevent infringement, if the [defendant's] device otherwise was

14  capable of substantial noninfringing uses." *Grokster*, 545 U.S. at 939 n.12. There is no

15  question that Cloudflare's services are capable of substantial noninfringing uses, and

16  Plaintiffs fail to allege any other facts (or any facts at all) plausibly showing that

17  Cloudflare had the requisite intent.

18     *Third*, Plaintiffs argue that Cloudflare derives a financial benefit from the volume

19  of copyright infringement over its network, either because Cloudflare allegedly serves

20  "illegal pirate sites that other large CDN companies do not," or because "its fees are

21  usage-based." Opp. 20. Both allegations are *non sequiturs* that fail to support

22  Cloudflare's supposed "intent": nothing plausibly connects the volume of a website's

23  traffic with its "illegality," and the allegation that some of Cloudflare's "fees are usage-

24  based" merely indicates that Cloudflare is a for-profit business, not that it intentionally

25  _____

26  [13] Plaintiffs' allegations regarding Cloudflare's repeat infringer termination policies
    appear to be directed to the DMCA's requirement that a service provider must have and
    implement such a policy to qualify for "safe harbor" from liability under 17 U.S.C.

27  § 512. *See* 17 U.S.C. § 512(i). The DMCA safe harbors are not at issue in this Motion
    to Dismiss—and moreover, the DMCA specifically provides that its protections may

28  not be conditioned on a service provider "monitoring its service." *Id.* 512(m).

induces copyright infringement in order to profit from it.[14] Moreover, allegations that a defendant derived a "financial benefit" from infringement lacks relevance to Plaintiffs' material contribution theory of contributory infringement.

Finally, even if Plaintiffs' allegations supported any of these three factors, which they do not, "[t]his evidence alone would not justify an inference of unlawful intent" to induce others to infringe, in the absence of any "direct evidence of unlawful objective." *Grokster*, 545 U.S. at 940. Plaintiffs can point to no allegations in the FAC that could constitute such additional evidence, or even support a plausible inference that it exists.

## IV.    CONCLUSION

Plaintiffs have failed to plead the required volitional conduct by Cloudflare to state a claim for direct copyright infringement. The Court should reject Plaintiffs' misleading effort to recast Cloudflare's basic automated caching functionality as a volitional making of "copies other than at the users' direction" and their invitation to jettison binding Ninth Circuit law in favor of a novel, and unsupported, "one request, one copy" rule of volitional conduct, and should reject Plaintiffs' equally unsupported theory of "backwards causation." Plaintiffs have also failed to plausibly plead that Cloudflare knowingly materially contributed to infringement by third parties, or that Cloudflare failed to take the simple measures that were available to it to prevent infringement. And Plaintiffs' attempt to locate the required "purposeful, culpable expression and conduct" in Cloudflare's provision of ordinary services to the public at large is unpersuasive. For the reasons stated in Cloudflare's Motion to Dismiss, and as discussed above, the Court should dismiss Counts Four and Five against Cloudflare. Because the FAC is Plaintiffs' second attempt to save these claims, dismissal should be

---

[14] Cloudflare receives the vast majority of its revenue from Enterprise customers, a category that does not include Thothub.tv or the so-called "pirate sites" Plaintiffs point to. *See* Cloudflare Form 10K for fiscal year 2019, at 30 (available online at http://d18rn0p25nwr6d.cloudfront.net/CIK-0001477333/09769260-9f46-44c1-8597-90a682a7b2I9.pdf).

1    with prejudice, as further amendment (or supplementation) would be futile.[15]

2

3    Dated: December 30, 2020          WINSTON & STRAWN LLP

4                                      By: */s/ Jennifer A. Golinveaux*
                                       Jennifer A. Golinveaux
5                                      Thomas J. Kearney
                                       WINSTON & STRAWN LLP
6                                      101 California Street, 35th Floor
                                       San Francisco, CA 94111-5840
7                                      (415) 591-1000 (telephone)
                                       jgolinveaux@winston.com
8                                      tkearney@winston.com

9                                      Michael S. Elkin
                                       WINSTON & STRAWN LLP
10                                     200 Park Avenue
                                       New York, NY 10166
11                                      (212) 294-6700 (telephone)
                                       melkin@winston.com

12                                     Erin R. Ranahan
                                       WINSTON & STRAWN LLP
13                                     333 S. Grand Avenue
                                       Los Angeles, CA 90071
14                                     (213) 615-1700 (telephone)
                                       eranahan@winston.com

15

16                                     *Attorneys for Defendant*
                                       *CLOUDFLARE, INC.*

17

18

19

20

21

22

23

24

25

26    _____

27    [15] While Plaintiffs argue in their last footnote that if the Court dismisses their claims they should be allowed leave to amend to allege additional facts, they have already had one opportunity to do so in the face of Cloudflare's initial motion to dismiss, ECF 57, and could not successfully amend consistent with their Rule 11 obligations.

28