Michael S. Elkin (*pro hac vice*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas J. Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400

Erin R. Ranahan (SBN: 235286)
eranahan@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750

*Attorneys for Defendant*
*CLOUDFLARE, INC.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION—LOS ANGELES**

| | |
|---|---|
| DENIECE WAIDHOFER, an individual; MARGARET MCGEHEE, an individual; and RYUU LAVITZ, LLC, a Massachusetts limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>CLOUDFLARE, INC., a Delaware corporation; BANGBROS.COM, INC., a Florida corporation; SONESTA TECHNOLOGIES, INC., a Florida corporation; MULTI MEDIA LLC, a California limited liability company; CRAKMEDIA INC., a Canadian corporation; and JOHN DOES 1-21,<br><br>Defendants. | Case No. 2:20-cv-06979-FMO-AS<br><br>**DEFENDANT CLOUDFLARE'S REPLY MEMORANDUM IN SUPPORT OF ITS RULE 11 MOTION**<br><br>Judge:  Hon. Fernando M. Olguin<br>Date:  January 28, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 6D – 6th Floor<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.    PLAINTIFFS' FALSE "ARGO TUNNEL" ALLEGATIONS LACKED A FACTUAL FOUNDATION, AND PLAINTIFFS' COUNSEL FAILED TO CONDUCT AN OBJECTIVELY REASONABLE INQUIRY........................................ 3

      A.    Plaintiffs' Argo Tunnel Allegations Are False ........................................ 3

      B.    Plaintiffs' Pre-Filing Investigation Was Inadequate to Support Plaintiffs' Argo Tunnel Allegations Under Rule 11 .................................................... 5

      C.    Plaintiffs' Counsel Failed to Conduct an Objectively Reasonable Inquiry into the False Argo Tunnel Allegations ........................................................ 7

III.   CLOUDFLARE'S RULE 11 MOTION WAS WELL FOUNDED ................................ 10

IV.   PLAINTIFFS' ARGUMENTS THAT CLOUDFLARE'S RULE 11 MOTION SERVES "IMPROPER PURPOSES" ARE MERITLESS........................................... 12

      A.    Cloudflare's Motion Was Not a "Discovery Device"........................... 12

      B.    Cloudflare Did Not Use the Motion to "Test Allegations".................... 12

      C.    Cloudflare Did Not Use the Motion to Emphasize the Merits of Its Defenses......... 13

      D.    Cloudflare Did Not Use the Motion to "Intimidate" Plaintiffs.............................. 13

      E.    Cloudflare Did Not Use the Motion to Increase Plaintiffs' Costs of Litigation........ 14

      F.    Cloudflare Did Not Use the Motion to Seek the Disclosure of "Protected" Information ............................................................................. 15

V.    CONCLUSION ........................................................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

6

*Acedo v. County of San Diego*,
  2018 WL 3425976 (S.D. Cal. 2018)............................................................2

7

8

*Corona v. Quad Graphics Printing Corp.*,
  218 F. Supp. 3d 1068 (C.D. Cal. 2016)......................................................2

9

10

*Gordon v. Unifund CCR Partners*,
  345 F.3d 1028 (8th Cir. 2003) .....................................................................1

11

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 1996) .......................................................................7

12

13

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
  243 F.R.D. 322 (N.D. Iowa 2007).........................................................8, 9

14

15

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  2013 WL 12129642 (C.D. Cal. July 31, 2013) ..........................................9

16

17

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...................................................................13

18

19

*Perfect 10, Inc. v. Google, Inc.*,
  2010 WL 9479060 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th
  Cir. 2011) ...................................................................................................13

20

21

*Rush v. McDonald's Corp.*,
  966 F.2d 1104 (7th Cir. 1992) ...................................................................13

22

23

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019) .................13

24

**Statutes**

25

28 U.S.C. § 1746....................................................................................................2

26

27

**Other Authorities**

28

Fed. R. Civ. P. 11 .........................................................................................*passim*

1

Fed. R. Civ. P. 11(b) ................................................................................... 11

2

Fed. R. Civ. P. 11(b)(3) .......................................................................... 7, 9

3

4

Fed. R. Civ. P. 11(c)(2) ........................................................................ 1, 13

5

Fed. R. Civ. P. 11(c)(4) .............................................................................. 14

6

Fed. R. Civ. P. 12 ........................................................................................ 12

7

Fed. R. Civ. P. 56 ........................................................................................ 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2         Instead of opposing Cloudflare's motion to dismiss Plaintiff Deniece

3    Waidhofer's initial complaint against it—including the Complaint's contributory

4    liability claim—Plaintiffs instead chose to proactively file an amended complaint,

5    adding new allegations in an effort to bolster the allegations and survive dismissal. Key

6    among those new allegations and Plaintiffs' effort to adequately allege the requisite

7    elements of contributory liability, Plaintiffs alleged that Cloudflare provided its Argo

8    Tunnel security services to the thothub.tv website at issue. When Cloudflare explained

9    to Plaintiffs that the allegation was simply false and asked Plaintiffs' counsel to explain

10   the basis for the allegation, however, counsel flatly refused, instead insisting that

11   Plaintiffs had a good faith basis for the allegation (without providing any specifics

12   whatsoever) and that Cloudflare's only option was to explore the (false) allegation in

13   discovery. At the same time, Plaintiffs' counsel insisted that Cloudflare had "no right"

14   to *any* information about Plaintiffs' investigation, and made it clear that they intended

15   to withhold it from discovery as privileged. Counsel claimed Cloudflare was acting in

16   "bad faith" merely by asking about the basis for the patently false allegations and

17   sending a Rule 11 letter and threatened to seek sanctions should Cloudflare "dare to file

18   [a] motion."

19        That is not how Rule 11 works. It requires a Plaintiff to make an *objectively*

20   *reasonable* inquiry before making allegations. Plaintiffs' Opposition[1] makes

21

22   _____

     [1] Plaintiffs style their Opposition a "Response and Countermotion," but they may not
23   bring a separate Rule 11 "motion" against Cloudflare (which would lack any basis in
     any event), having failed to follow *any* of the Rule's procedural requirements. Fed. R.
24   Civ. P. 11(c)(2); *and see, e.g.*, *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029–
     30 (8th Cir. 2003) (rejecting district court's imposition of Rule 11 sanctions as an abuse
25   of discretion, in light of movant's "procedural deficiencies"). Plaintiffs have also failed
     to comply with the Local Rules and this Court's Standing Order. Specifically, Local
26   Rule 7-3 requires a pre-filing conference "at least seven (7) days prior to the filing of
27   the motion," and Section IV.A.2 of the Standing Order reiterates this requirement and

28

abundantly clear that Plaintiffs failed to make such an objectively reasonable inquiry before asserting their false Argo Tunnel allegations. Plaintiffs' account of the "investigation" underlying the Argo Tunnel allegations plainly shows its inadequacy. Plaintiffs now try to whitewash their failure to conduct even a minimally sufficient investigation—and thereby convince this Court that they were incapable of uncovering readily available facts or reliable information—by hiding behind vague statements from a putative "expert." Yet the most this "expert" can say under oath is that he believes *one* out of *two* Thothub IP addresses *may* have been "utilizing an Argo Tunnel *or similar Cloudflare service*."[2] And he concedes that he based this equivocal conclusion on frankly speculative third-party statements that, tellingly, he does not disclose. When Plaintiffs' counsel learned about this "investigation" (apparently after filing the initial Complaint), he failed to perform an objectively reasonable inquiry into its basis, as Rule 11 requires.[3] Indeed, he conducted hardly any inquiry at all: by his own account, he did

---

notes that the Court "takes this rule seriously, and counsel shall discharge their obligations under Local Rule 7-3 in good faith." Additionally, Local Rule 7-20 requires that a proposed order accompany "any motion … requiring an order of the Court," and Section IV.A.6 of the Standing Order states that "[e]ach party filing or opposing a motion or seeking the determination of any matter *shall* serve and electronically lodge – at the time the moving or opposition papers are filed – a proposed order …" (emphasis added). At a minimum, any attempt by Plaintiffs to submit additional pleadings in support of their so-called "countermotion" would be manifestly improper and should be stricken.

[2] *See* ECF 106-2 at 8-9, Declaration of Thomas "Damien" Bell ("Bell Dec.") ¶¶ 19-21 (emphases added).

[3] Plaintiffs' attorney Brett Rosenthal purports to "swear" that the statements in his supporting Declaration are true, but there is no indication that he was ever placed under oath. ECF 106-2, at 14-20. And his Declaration fails to comply with 28 U.S.C. § 1746, which permits unsworn declarations only if they are made "under penalty of perjury" instead. *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068, 1071 (C.D. Cal. 2016) (explaining that § 1746 "requires the declarant" to assert "in the declaration … that the statements in the declaration were made 'under penalty of perjury'[.]") (internal citations omitted); *Acedo v. County of San Diego*, 2018 WL 3425976, at *10 (S.D. Cal. 2018) (declining "[to] consider [an attorney's] Declaration (or the material it

little more than review the investigator's resume, before rephrasing his tentative speculations as "factual allegations," and adding the words "information and belief" to disguise their tentative, inconclusive nature. This was not a reasonable inquiry under any circumstances.

Tellingly, Plaintiffs' account of the cursory "investigation" and "inquiry" that preceded their Argo Tunnel allegations occupies just 2 pages of their 24-page Opposition. Opp. 6-7. In an effort to deflect attention from the issue at hand, the other 22 pages are devoted to making baseless, *ad hominem* attacks on Cloudflare and its counsel; extolling the virtues of Plaintiffs' FAC (primarily its length); urging the Court to adopt an erroneous legal standard by holding that *Cloudflare* had the burden to conduct discovery before moving under Rule 11; and arguing that Cloudflare's Rule 11 Motion was filed in "bad faith" for a laundry list of "improper purposes." Plaintiffs' Argo Tunnel allegations quite clearly fail to meet even the low bar of Rule 11. Plaintiffs should not be permitted to concoct baseless allegations in order to survive the pleadings stage. Cloudflare's Rule 11 Motion should be granted.

## II.   PLAINTIFFS' FALSE "ARGO TUNNEL" ALLEGATIONS LACKED A FACTUAL FOUNDATION, AND PLAINTIFFS' COUNSEL FAILED TO CONDUCT AN OBJECTIVELY REASONABLE INQUIRY

### A.   Plaintiffs' Argo Tunnel Allegations Are False

As a preliminary matter, notwithstanding Plaintiffs' *pro forma* expressions of skepticism, there can be no reasonable dispute that Plaintiffs' Argo Tunnel allegations are, in fact, false. Plaintiffs maintain that Cloudflare's motion should be denied because Cloudflare has not yet conducted extensive discovery to *disprove* Plaintiffs' allegations.

---

attests to support) in the Court's analysis" due to her failure to comply with § 1746). Notably, the declaration of Plaintiffs' purported "expert" Damien Bell, which does include a statement under penalty of perjury, concludes with the same *pro forma* "I swear…" language, indicating that it is merely boilerplate. ECF 106-2, at 9. Assuming no oath was administered, this assertion is both false and (in Mr. Rosenthal's case) highly misleading.

Opp. 20. But all Cloudflare had to do to confirm that the allegations were false was to check its records. It did so. Declaration of Angie Kim ("Kim Dec.") ¶ 3. Cloudflare then informed Plaintiffs—repeatedly—that the allegations were false. It also responded to requests for admission, unequivocally denying that it provided Argo Tunnel services to Thothub, and also responded to Plaintiffs' Interrogatory No. 1 (which requested a detailed description of "the services that Cloudflare provided related to Thothub"), confirming that any services Cloudflare provided to Thothub did not include Argo Tunnel. Declaration of Thomas Kearney (Kearney Dec.) at ¶¶ 2-3 & Ex. A, B.

Plaintiffs attempt to evade this inconvenient fact by pretending that there is some ambiguity about whether Cloudflare's repeated denials pertain only to the so-called "main" website Thothub.tv, or to both Thothub.tv and its subdomain at forum.thothub.tv. That is a ruse. Plaintiffs' own statements, including both the FAC and the initial Complaint, demonstrate Plaintiffs' awareness that a website (like thothub.tv) includes its subdomains (like forum.thothub.tv). *See* FAC ¶ 1 (defining "Thothub" as "a … website called Thothub.tv"); *id.* ¶ 149 (recognizing that Thothub's "online 'forum,'" located at http://forum.thothub.tv, was also "on the site" Thothub.tv); ECF 1 (Initial Complaint) ¶ 16 (defining "Thothub" as "a … website available at https://thothub.tv"); *id.* ¶ 108 (acknowledging that the "forum" with "web address … http://forum.thothub.tv," is "on the site" Thothub.tv). Equally misleading (and equally false) is Plaintiffs' claim that Cloudflare "redefined" the term Thothub in order to exclude the so-called "Forums" at forum.thothub.tv. Opp. 8. To the contrary, Cloudflare *accepted* Plaintiffs' definition of "Thothub" as "the Thothub.tv website," consistent with Plaintiffs' own usage in the FAC and Complaint. *Compare* ECF 102-3 (Golinveaux Dec.) Ex. B at 2 (interpreting the term Thothub to mean "the Thothub.tv website") *with* FAC ¶ 1 (defining "Thothub" as "a … website called Thothub.tv").[4] That

---

[4] Plaintiffs attempted to redefine the term "Thothub" in their discovery requests to include "related" "forums, URLs, and web domains." *Compare* ECF 102-2 (Golinveaux

mutually understood definition unquestionably included the forum.thothub.tv subdomain. Cloudflare's attorney confirmed the parties' shared understanding yet again when she informed Plaintiffs' counsel that "forum.thothub.tv is a subdomain of the thothub.tv website." Golinveaux Dec. Ex. E at 1.

### B.   Plaintiffs' Pre-Filing Investigation Was Inadequate to Support Plaintiffs' Argo Tunnel Allegations Under Rule 11

As Plaintiffs now concede, their false Argo Tunnel allegations were based on the speculations of a part-time systems administrator for one of the Plaintiffs, a moonlighting Roku customer service engineer named Thomas "Damien" Bell. (Bell is now a full employee of Ryuu Lavitz LLC.) ECF 106-2 at 3-4 (Bell Dec.) at ¶3. According to his account, in the course of investigating the thothub.tv website, he discovered that the "main pages" of the website used one IP address, and a subdomain for user forums (forums.thothub.tv) used a different IP address.[5] *Id.* at ¶ 10. (There is nothing unusual about this, and Bell does not claim that there is.) Around June 1, 2020, Bell found that attempting to establish direct contact with the forum.thothub.tv IP address (but not the "main" thothub.tv website) would return an "Error 1003" message. *Id.* at ¶ 18. He "investigated" by visiting an unidentified "Cloudflare community discussion," and from this concluded that the error message "could be" an "indicator" that the IP address was protected by Cloudflare's Argo Tunnel service. *Id.* at ¶ 19. After he determined that the servers at the "forums" IP address were using *four* open ports

---

Decl.) Ex. A at 2 (defining Thothub as "the website that is or was available at http://www.thothub.tv and its related forums, URLs, and web domains") *with* FAC ¶ 1 (defining "Thothub" as "a … website called Thothub.tv"). Cloudflare properly objected to Plaintiffs' use of the vague, undefined term "related" to attempt to broaden a term that Plaintiffs themselves had already defined in the Complaint. *See* ECF 102-3. Notably, Plaintiffs' FAC, which was filed after Plaintiffs served their discovery requests, adopted the same definition of "Thothub" as the initial Complaint, not the vague one from Plaintiffs' discovery requests.

[5] For purposes of this Reply only, Cloudflare assumes the truth of Mr. Bell's statements, though as noted above at fn. 3 they do not appear to have been made under oath.

(numbered 80, 443, 8080, and 8443), another visit to "online discussion on Cloudflare's community forums" led him to believe that one of these ports (8443) was "often" used as part of implementing an Argo Tunnel service. *Id.* at ¶ 20. Based on this, he concluded that Thothub was "likely" using either an Argo Tunnel, or some "similar Cloudflare service." *Id.* at ¶ 21. He acknowledges that other explanations are possible as well. *Id.* Indeed. Mr. Bell's "investigation" and conclusion are the rough equivalent of seeing a sign on a shop door that says "please use other door," and then—after noticing that the shop has four doors that are open—concluding that all the doors are locked, and the store closed.

Bell's declaration and resume show that he lacked any substantive knowledge about, or experience with, Cloudflare's Argo Tunnel service. They also show that he made no serious attempt to educate himself before jumping to the "conclusion" that *one of two* Thothub IP addresses *may* have been "utilizing an Argo Tunnel *or similar Cloudflare service*." *Id.* (emphases added). And he failed to perform any additional investigation. He did not attempt to set up or test an *actual* Argo Tunnel system, though doing so would have cost just $5. *See* FAC ¶ 205. He did not review technical documentation. He did not even take the simple, obvious measure of calling Cloudflare's technical support or help desk to ask a knowledgeable expert if the "online discussions" had their facts right.

To be clear—though it is unnecessary to the resolution of this Motion, in light of the facial inadequacy of Bell's "investigation" and the equivocal nature of his "conclusion"—neither of his two underlying assumptions was correct. An "Error 1003" message does not indicate anything, one way or another, about Argo Tunnel services. It simply means that the user has attempted to directly contact the *IP address* of a website or server—for example, by typing the IP address into a browser instead of using the website's name—and that the website or server does not permit this type of connection. *See* the concurrently filed Declaration of Trey Guinn ("Guinn Dec.") at ¶ 3. There can be many explanations for such a failure: *Id.* Likewise, the Argo Tunnel

service has nothing whatsoever to do with whether a server's 8443 port is (or appears to be) open. Port 8443 is one of a set of ports that are open by default on *all* IP addresses that Cloudflare accepts for any website. *Id.* at ¶ 4. And Bell's claim that he found *four* ports open on the forums.thothub.tv servers is, on its face, inconsistent with the FAC's allegation that the Argo Tunnel service functions by ensuring that "[a]ll … public-facing 'ports' … on the customer's server are blocked[,]" "except *one* port[.]" FAC ¶¶ 204, 206 (emphasis added).

Bell's facially inadequate "investigation" consisted of piling speculation on speculation; he frankly admits that he was, and remains, tentative about his "conclusions." This would not be a reasonable investigation under any circumstances, let alone in a case where baseless allegations are key to an attempt (however meritless) to extract hundreds of millions of dollars in windfall damages from a defendant.

## C.   Plaintiffs' Counsel Failed to Conduct an Objectively Reasonable Inquiry into the False Argo Tunnel Allegations

Under Federal Rule 11, an attorney who signs, files, or advocates a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). The *signing attorney* must "conduct an adequate investigation before fling the complaint." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 1996). It is plain from Plaintiffs' Opposition that their counsel failed to conduct an objectively reasonable inquiry after he belatedly learned of Bell's tentative "conclusion" that *one* of the two Thothub IP addresses *may* have used an Argo Tunnel—or, perhaps, a "similar Cloudflare service." Indeed, by counsel's own account, he conducted hardly any inquiry at all. After belatedly learning about Bell's opinion, he:

-   Reviewed "Cloudflare's own statements on its website explaining the function and purpose of an Argo Tunnel" to the effect that the Argo Tunnel service

functions by providing a secure connections "without a publicly routable IP address," and by routing traffic through Cloudflare's network. (Opp. 7)

- Confirmed that Thothub apparently used different IP addresses for the "main" website at Thothub.tv, and the forum.thothub.tv subdomain. (Opp. 7)

Neither of these supposed "facts" supports Plaintiffs' Argo Tunnel allegations. The first merely confirms that Cloudflare's Argo Tunnel service actually exists, and that (at the most superficial level) it works by routing traffic through Cloudflare's network. At best, that is consistent with the FAC's allegations, but it does nothing to support them. The second is entirely irrelevant to whether either of Thothub's IP addresses ever actually *used* an Argo Tunnel service—and also inconsistent with Plaintiffs' allegation that Thothub would have been "no longer … available" if Cloudflare had just "'closed' the Thothub tunnel," FAC ¶ 207, since Plaintiffs' arguments concede that the "main" Thothub website did not use an Argo Tunnel. Counsel's argument that his credulity is justified because he has "seen no evidence … that refutes" the Argo Tunnel allegations simply underscores that he made no real attempt to investigate. ECF 106-2 at 18, Declaration of Brett S. Rosenthal ("Rosenthal Dec."), at ¶ 12.

Counsel argues that he was justified in deeming Bell's opinions "highly credible," due to Bell's appearance of "expertise" and his use of "advanced techniques and analysis." Rosenthal Dec. at ¶ 9; *see* Opp. 5, 7. But "it is simply no excuse for [a party] and its counsel to assert that they relied on an 'expert' … [where] the flaws in the 'expert's' evidence should have been so readily apparent on any reasonable examination or inquiry." *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 342–43 (N.D. Iowa 2007). *Ideal Instruments* is instructive here: in that case, the district court found that a party's reliance on its expert's tests in seeking a preliminary injunction was not reasonable, since it was "clear that [defendant] and its counsel [had] shirked their responsibilities to conduct a reasonable investigation of or inquiry ***about [the expert's] test results*** before filing their Motion[.]" *Id.* (emphasis added). Because

"[a]ny reasonable inquiry would have demonstrated the obvious flaws in [the expert's] testing," *id.*, and because "[defendant] made no reasonable inquiry before filing its motion, then maintained the motion despite the lack of any credible evidence to support it, even after the insufficiency of its evidence became clear," *id.* at 336, Rule 11 sanctions were warranted, *id.* at 349. This was so even though, as defendant argued, the expert was "an acknowledged expert in the field [of such testing]." *Id.* at 336. So too here: even if Bell had been an "acknowledged expert" (which he plainly is not for these purposes), the flaws in his investigation would have been "readily apparent" had Plaintiffs' counsel made "any reasonable examination or inquiry."

Finally, Plaintiffs argue that they, and their counsel, should escape sanctions even though their Argo Tunnel allegations lack evidentiary support, because they designated the Argo Tunnel allegations as having been made "on information and belief," indicating that they "could not be conclusively verified without further discovery." Rosenthal Dec. at ¶ 10. But Rule 11 permits pleading unsupported allegations only if counsel's objectively reasonable inquiry shows that the allegations are *likely* to have evidentiary support "after a reasonable opportunity for further investigation or discovery." FRCP 11(b)(3); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("if defendants are … able to show that [plaintiff's] allegations were made without reasonable inquiry and without a basis for believing that they had evidentiary support, the court will entertain an appropriate motion for sanctions under Rule 11"). Nothing about counsel's perfunctory "inquiry" into Bell's badly flawed "investigation" could have given counsel a reasonable belief that discovery was likely to support his allegations, since a reasonable inquiry would have revealed that Bell's conclusions were based on false assumptions.

Moreover, even if there had been any reasonable basis to believe that discovery *could* provide the required evidentiary support, that basis could not possibly have survived Cloudflare's discovery responses, its Rule 11 letter, and the parties' subsequent email exchanges. Despite receiving this information, Plaintiffs obstinately

CLOUDFLARE'S REPLY IN SUPPORT OF ITS RULE 11 MOTION

refused to drop the patently false Argo Tunnel allegations. Those allegations were first asserted in Plaintiffs' First Amended Complaint, after Cloudflare moved to dismiss Plaintiffs' initial Complaint—in part on the basis that Plaintiffs had failed to plead the essential "simple measures" element of contributory infringement. Instead of attempting to defend the sufficiency of their existing allegations, Plaintiffs simply added new ones. Plaintiffs concede, as they must, that the only relevance of the false Argo Tunnel allegations is to precisely that element of their contributory infringement claim. *See* Opp. 22:3-5 (conceding that "the allegations are relevant" to Plaintiffs' contributory infringement claim, specifically Cloudflare's inability to prevent further infringement by Thothub). Notable, too, is the fact that following Cloudflare's motion to dismiss the initial Complaint, Plaintiffs unceremoniously dropped a number of clearly erroneous allegations—including demonstrably false allegations that, like the Argo Tunnel allegations, lacked any foundation but were alleged on "information and belief." *Compare* Compl. ¶ 168 (alleging "on information and belief" that unidentified Cloudflare representatives discussed "Thothub's operations and goals" with unidentified members of its "leadership team" before entering into a contract for services) *and* ECF 57 (Cloudflare's Motion to Dismiss the initial Complaint) at 16 n.13 (discussing "Plaintiff's (apparently invented) allegation of a phone call between Thothub and Cloudflare"), *with* FAC (omitting the allegation). That history is relevant here.

## III.   CLOUDFLARE'S RULE 11 MOTION WAS WELL FOUNDED

Plaintiffs conclude by arguing that Cloudflare's Rule 11 Motion was both frivolous and filed for a laundry list of supposed "improper purposes" the combination of which warrants sanctions. None of their arguments has the slightest merit. As a preliminary matter, as the above discussion (and Plaintiffs' admissions in their Opposition) plainly show, Cloudflare's motion was thoroughly justified, for Plaintiffs patently failed to conduct a reasonable investigation or inquiry before making their false Argo Tunnel allegations.

Plaintiffs' attempt to turn the tables, by arguing that *Cloudflare* failed to make a reasonable inquiry into *Plaintiffs'* failure to reasonably inquire, is risible. Cloudflare readily determined that Plaintiffs' Argo Tunnel allegations were false—by checking its own records, *see* Kim Dec. ¶ 3—and then inquired whether Plaintiffs had conducted a reasonable inquiry before making the allegations. *See* ECF 102-3 (Golinveaux Dec.) Ex. C. Plaintiffs' counsel flatly refused to provide any information. *See* ECF 102-6 (Golinveaux Dec.) Ex. E, at 3-4. He argued that Cloudflare could not file a Rule 11 motion unless it first served discovery requests on Plaintiffs, while paradoxically claiming that Cloudflare had "no right" to any such information in any event, and indicating that he intended to withhold it under a spurious claim of privilege.[6] *Id.* at 2, 4. He baselessly questioned the "veracity" of Cloudflare's "representations," implying that it was simply lying to its attorneys about the Argo Tunnel allegations. *Id.* at 2. He accused Cloudflare's counsel of making "insulting," "bad faith," and "scurrilous" "accusations" just for sending the Rule 11 letter, and then "dare[d]" counsel to "file your motion." *Id.* at 4. Finally, he demanded that Cloudflare's counsel "represent," "as an officer of the Court … that Cloudflare never provided Argo Tunnel services with respect to thothub.tv, forum.thothub.tv, or any other URLs associated with these web domains[,]" then continued to stonewall even after Cloudflare's counsel did as he had asked. *Id.* at 1, 2. Moreover, Plaintiffs' counsel made it quite clear that he intended to stymie any further inquiry by asserting spurious claims of privilege, even though (as the Opposition reveals) none of it comes close to being privileged.

There is simply no question that *Cloudflare's* inquiry into the basis for its Motion was "reasonable under the circumstances," as Rule 11 requires. Fed. R. Civ. P. 11(b).

---

[6] Plaintiffs' counsel plainly meant that Cloudflare had no "right" to this obviously relevant information because he intended to withhold it on a spurious claim of privilege. Golinveaux Dec. Ex. E at 2 (Plaintiffs' counsel reiterating that Cloudflare had "no right" to information about Plaintiffs' investigation, and threatening to "show the Court in camera the basis for our allegations" and seek sanctions).

## IV.   PLAINTIFFS' ARGUMENTS THAT CLOUDFLARE'S RULE 11 MOTION SERVES "IMPROPER PURPOSES" ARE MERITLESS

Plaintiffs' various scattershot arguments that Cloudflare filed its Rule 11 Motion for an improper purpose also lack merit. As a threshold matter, each of Plaintiffs' arguments fails because, contrary to Plaintiffs' constant, conclusory refrain, Cloudflare's motion was neither "frivolous" nor "baseless."

### A.   Cloudflare's Motion Was Not a "Discovery Device"

Plaintiffs argue that Cloudflare's Rule 11 Motion is a substitute for "legitimate discovery processes" and an attempt to "circumvent[] the rules of discovery." Opp. 20. Their only evidence for this spurious claim is that Cloudflare sent a Rule 11 letter—as it was entitled to do—and filed a Rule 11 motion—as was its right. *Id.* Even more bizarre is Plaintiffs' claim that Cloudflare "has <u>not</u> investigated or disproved the allegations at all." *Id.* Since the common thread in Plaintiffs' Argo Tunnel allegations is that Cloudflare provided that service to Thothub, all Cloudflare had to do to disprove the allegations was check to see if it had in fact done so. It had not. Kim Dec. at ¶ 3. Nor does anything in Rule 11 (or any other rule) require a party to use "discovery processes" in lieu of filing the type of motion that Rule 11 permits, using the procedures that Rule 11 provides. Were parties required to proceed as Plaintiffs suggest, Rule 11 would be a dead letter.

### B.   Cloudflare Did Not Use the Motion to "Test Allegations"

Nor did Cloudflare use its Rule 11 Motion to "test" the legal sufficiency of Plaintiffs' allegations. Cloudflare has no need to "test" the allegations because it knows (as, by this time, do Plaintiffs) that they are false. *See* Kim Dec. at ¶ 3. Accordingly, the resolution of Cloudflare's Rule 11 motion does not depend on whether Plaintiffs' allegations are "plausible" under the Rule 12 standard or supported by sufficient evidence under Rule 56. What is at issue is whether Plaintiffs conducted an objectively

reasonable investigation or inquiry before making the allegations. As is evident, they did not.

### C.   Cloudflare Did Not Use the Motion to Emphasize the Merits of Its Defenses

Plaintiffs argue that Cloudflare's Rule 11 Motion is merely a pretext to emphasize the merits of a "defense" that Plaintiffs cannot show Cloudflare had the ability to take simple measures to prevent infringement as required to establish contributory liability. But "simple measures" is a required element of Plaintiffs' claim, not a defense. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at *7 (C.D. Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) ("the doctrine of contributory infringement liability … requires that the alleged infringer be able to take simple measures to prevent further damage to the copyrighted works."). The Argo Tunnel allegations are the only allegations in the FAC that directly address this element, on which Plaintiffs bear the burden of proof. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 749 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019) (upholding JMOL of no contributory infringement where the plaintiff "failed to demonstrate there were simple measures available for the removal of infringing photos"). It is directly relevant to Cloudflare's Rule 11 motion to point out Plaintiffs' obvious motivation for first fabricating, and then clinging to, the *only* allegations in the FAC that purport to show how Cloudflare could have "prevented" damage to copyrighted works, as the Ninth Circuit's test for contributory infringement requires.

### D.   Cloudflare Did Not Use the Motion to "Intimidate" Plaintiffs

Plaintiffs argue that because Rule 11 provides for attorneys' fees to a prevailing party, that shows Cloudflare's motion is an improper attempt to "intimidate" them and their attorneys. But the possibility of sanctions is an intrinsic part of the Rule, and so "it is quite appropriate for one party to warn the other party about the possibility of a request for sanctions under Rule 11[.]" *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992). Plaintiffs concede that Cloudflare has done nothing more than that.

Opp. 22-23. Ironically in light of their expressed concern, Plaintiffs seek relief well beyond what Cloudflare's motion requests: not only their costs and expenses under Rule 11(c)(2), but "additional penalties" including "punitive monetary sanctions," which they suggest the Court should inflate by "taking into account Cloudflare's and its counsels' financial status." Opp. 24. Finally, Plaintiffs' hand-wringing, and the inflated estimate of the fees for which they may be liable, ignores Rule 11's express limitation of monetary sanctions to just "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### E.   Cloudflare Did Not Use the Motion to Increase Plaintiffs' Costs of Litigation

Plaintiffs' complaints about the necessity of spending time and money litigating a case that they brought, in a venue that they chose, are strikingly empty. As their own Opposition shows, Cloudflare's Rule 11 motion is exceptionally well founded. To avoid the cost of opposing it, all Plaintiffs would have had to do is drop their baseless Argo Tunnel allegations. They chose not to. And their pretended surprise at the *timing* of Cloudflare's motion and the attendant briefing is, to say the least, unconvincing: Cloudflare served its Rule 11 motion on Plaintiffs in early December, at which point the mandatory 21-day safe harbor period began to run. At that point, the briefing schedule was perfectly predictable. Plaintiffs could not possibly have been surprised when Cloudflare actually filed its motion on time, nor when the hearing date was set for the only possible date under the Local Rules, nor when their deadline to oppose the motion also arrived on schedule. For the same reasons, they were aware long before they announced their decision to serve discovery papers on Cloudflare that their opposition brief would be due at the same time. Serving a meritorious Rule 11 motion for precisely the reasons permitted by the Rule, on precisely the schedule required by the Rule and the Court, is not an improper purpose.

### F.    Cloudflare Did Not Use the Motion to Seek the Disclosure of "Protected" Information

Finally, there is no merit to Plaintiffs' claim that information concerning its investigation is privileged. It is plain from the information Plaintiffs provided in connection with their Opposition, that *no* aspect of Bell's autonomous investigation comes close to being privileged. Bell is not a lawyer, and no lawyer directed or requested his investigation. He undertook his investigation, such as it was, on his own initiative, and completed it before Plaintiffs' attorney even learned it had occurred. ECF 106-2 at 16-17, (Rosenthal Dec.) at ¶ 8. And he does not appear to have made any attempt to keep the results of his investigation confidential, a basic requirement of any privilege claim. The vague, general nature of Plaintiffs' argumentation further underscores its lack of merit, since they fail to point to even a *single* document or communication that is plausibly privileged. And even if *communications* about Bell's investigation and counsel's inquiry into it were privileged under some theory, the *facts* of the investigation (which are all Plaintiffs have provided here) are not privileged.

If Plaintiffs had been genuinely concerned about privilege in any aspect of Bell's investigation or their counsel's inquiry—though plainly they were not—they could have made at least an attempt to maintain privilege or limit disclosure by seeking a protective order, or asking the Court to review purportedly privileged or work product documents *in camera*. Instead, they did nothing. Tellingly, although Plaintiffs initially said that that they would disclose information about their investigation *only* to the Court, and only *in camera*, they filed everything on the public docket. There is no merit to their privilege arguments, either.

## V.    CONCLUSION

Plaintiffs' "expert" independently performed a cursory investigation that, as he concedes, led him to merely speculate that Cloudflare *may* have provided Argo Tunnel service, or possibly a similar service, to *one* of *two* Thothub IP addresses. When Plaintiffs' counsel learned about that investigation and its equivocal "conclusions"

(after filing the initial Complaint), he had an obligation to make an objectively reasonable inquiry into its basis before making any related allegations in a pleading. He failed to do so: instead, he credulously reframed Bell's speculations as "factual allegations" made on "information and belief." Because the "information" was little more than a hunch, and the "belief" just wishful thinking, Plaintiffs' Argo Tunnel allegations fail to pass muster under Rule 11. And although Plaintiffs had multiple opportunities, both formal through discovery responses, and informal through meet-and-confer discussions and email correspondence, to correct this error before Cloudflare filed this Motion, they refused to do so. Accordingly, there is no merit to Plaintiffs' attempt to "turn the tables" on Cloudflare with baseless claims of "frivolity" and improper purpose.

Plaintiffs' repeated, reckless conduct strongly supports sanctions. Their initial Complaint attempted to parley invented allegations and vague, baseless innuendo into claims of a vast "conspiracy" involving parties that Cloudflare had never met, never talked to, and had no connection to. Plaintiff did not even attempt to defend those claims when Cloudflare exposed their key underlying allegations as false, and their legal theories as unfounded. Instead, Plaintiffs simply dropped their conspiracy claims against Cloudflare, and concocted a new theory of contributory infringement based on false (and facially implausible) Argo Tunnel allegations for which they lacked an objectively reasonable basis. Confronted repeatedly with the fact that the alleged direct infringers had never used that service, Plaintiffs' counsel stonewalled, then doubled down. The Court should not allow Plaintiffs or their counsel to escape the consequences. It should grant Cloudflare's motion and appropriately sanction Plaintiffs.

/ / /

/ / /

/ / /

/ / /

Dated: January 14, 2020          WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux
Thomas J. Kearney
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1000 (telephone)
jgolinveaux@winston.com
tkearney@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
 (212) 294-6700 (telephone)
melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700 (telephone)
eranahan@winston.com

*Attorneys for Defendant*
*CLOUDFLARE, INC.*

CLOUDFLARE'S REPLY IN SUPPORT OF ITS RULE 11 MOTION