1  **WINSTON & STRAWN LLP**

2  Michael S. Elkin (*pro hac vice*)
   melkin@winston.com
3  200 Park Avenue
   New York, NY 10166
4  Telephone: (212) 294-6700
   Facsimile: (212) 294-4700
5
   Jennifer A. Golinveaux (SBN: 203056)
6  jgolinveaux@winston.com
   Thomas J. Kearney (SBN: 267087)
7  tkearney@winston.com
   101 California Street, 35th Floor
8  San Francisco, CA 94111
   Telephone:  (415) 591-1000
9  Facsimile:  (415) 591-1400

10 Erin R. Ranahan (SBN: 235286)
   eranahan@winston.com
11 333 S. Grand Avenue
   Los Angeles, CA 90071-1543
12 Telephone:  (213) 615-1700
   Facsimile:  (213) 615-1750
13
   *Attorneys for Defendant*
14 *CLOUDFLARE, INC.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Gregory A. Fuoco (Bar No. 308073)
gregfuoco@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendant*
*MULTI MEDIA, LLC*

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17              **WESTERN DIVISION—LOS ANGELES**

18

19 DENIECE WAIDHOFER, an
   individual; MARGARET
20 MCGEHEE, an individual; and
   RYUU LAVITZ, LLC, a
21 Massachusetts limited liability
   company,
22
              Plaintiffs,
23
        vs.
24
   CLOUDFLARE, INC., a Delaware
25 corporation; MULTI MEDIA, LLC,
   a California limited liability
26 company; and JOHN DOES 1-21,
27              Defendants.
28

Case No. 2:20-cv-06979-FMO-AS

**JOINT RESPONSE OF DEFENDANTS CLOUDFLARE, INC. AND MULTI MEDIA, LLC IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................... 1

II.   FACTUAL BACKGROUND ........................................................ 2

III.  ARGUMENT ............................................................................... 4

    A.    Plaintiffs' Requested Relief Is Not Available on an Ex Parte Basis ......... 4

    B.    Plaintiffs' Request Regarding Deposition Scheduling Should Be Denied as Moot ......................................................... 6

    C.    Plaintiffs Fail to Show Good Cause for Remote Depositions ................... 7

IV.   CONCLUSION ............................................................................ 9

Defendants Cloudflare, Inc. and Multi Media, LLC (collectively "Defendants") jointly oppose Plaintiffs' Ex Parte Application for Protective Order, ECF No. 144.

## I.      INTRODUCTION

Plaintiffs' Ex Parte Application for a protective order ("Application") is both moot and improper, filed *after* Defendants had already agreed to Plaintiffs' own proposed schedule for depositions in the case, and *after* Defendants had proposed an accommodation to allow for home-venue depositions of any witnesses who could not or would not travel to Los Angeles. It is plain from the record—which Plaintiffs failed to provide to the Court initially, and refused to update at Defendants' request—that Plaintiffs ignored Defendants' attempts to negotiate in good faith, failed to inform the Court about Defendants' efforts to resolve this trumped-up dispute, refused to inform the Court that Defendants had agreed to the relief they continue to seek, and ignored Defendants' repeated requests to withdraw their Application or, at a minimum, inform the Court of the true state of affairs.

Plaintiffs' request that the Court quash all of Defendants' depositions "pending agreement… on a fair deposition schedule" is moot in light of Defendants' agreement to *Plaintiffs'* proposed schedule. And Defendants have proposed a reasonable accommodation to in-person depositions in Los Angeles—which Plaintiffs ignored—so their other request for relief is, at best, premature. As discussed below, Plaintiffs' vague arguments in favor of relief are also both unsupported by facts and lack merit.

The Application is also procedurally improper in multiple respects and should be denied on that basis alone. "[F]iling an *ex parte* motion. . . is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Here, there is no fire. Plaintiffs' Application does not fit any of the circumstances in which ex parte relief is warranted, and it improperly seeks to circumvent the Central District's rules regarding discovery motions. The Court should deny the Application, and grant Defendants the attorneys' fees they have incurred in being forced to oppose it.

## II.   FACTUAL BACKGROUND

At approximately 1:30 p.m. (Pacific time) on Friday, April 23, Plaintiffs' counsel Brett Rosenthal sent an email to all Defendants' counsel proposing that, in order to accommodate his schedule (since he personally "plan[ned] to attend and conduct the vast majority, if not all, of the depositions on behalf of Plaintiffs"), the parties should agree to a stipulated extension of the discovery deadlines, pushing the end of fact discovery and the mediation deadline to June 25. He argued that this was necessary to give him "sufficient time to adequately prepare for these important events in the litigation." (Plaintiffs' Ex. 1). At the same time, Mr. Rosenthal proposed a schedule for depositions that would permit him to attend and conduct each deposition. His proposed schedule assigned each party (and their associated witnesses) one entire week, within which time the parties would agree to "be flexible about the exact dates for the depositions to accommodate all schedules." *Id.* at p.3.

Separately, Mr. Rosenthal "insist[ed] that the depositions be conducted via videoconference and submit[ted] that abundant good cause exists and that there is no prejudice whatsoever to any party in doing so." *Id.* In support of his contention that there was "good cause," he stated that none of the Plaintiffs (including the eponymous Ryuu Lavitz) had "yet been fully vaccinated." *Id.* But he did not explain when (or if) they expected to become "fully vaccinated," and did not explain whether any of Plaintiffs' other witnesses or their attorneys were fully vaccinated. *Id.* To support his contention that there was "no prejudice whatsoever," he cited two out-of-circuit cases that merely granted requests for remote depositions, while offering no support to Mr. Rosenthal's *ipse dixit*. *Id.*

The following Monday, at 9:20 a.m. (Pacific time), Cloudflare's counsel Jennifer Golinveaux responded to Mr. Rosenthal's email, informing him that the dates he had proposed for a settlement conference would work for Cloudflare, and further informing him that "[w]e are discussing the schedule revisions you proposed on Friday with Cloudflare and will get back to you soon on that." (Plaintiffs' Ex. 21).

1    Instead of responding, Mr. Rosenthal waited until the following day at 11:46 a.m.
2    (Pacific)—fourteen minutes before lunchtime—to have his colleague Joel Reese call
3    Mr. Zeller. Declaration of Michael Zeller (Zeller Dec.) at ¶ 2. At 11:50 a.m. (Pacific),
4    Mr. Rosenthal then (along with his colleague Joel Reese) called Ms. Golinveaux.
5    Golinveaux Dec. ¶ 2. Ms. Golinveaux was in a deposition for another case that morning,
6    so their call went to voicemail. *Id.* Before she had a chance to listen to the message, Mr.
7    Rosenthal sent an email—at 12:05, just nineteen minutes after his first voicemail—
8    announcing that Plaintiffs would file an ex parte application "today." Declaration of
9    Thomas Kearney (Kearney Dec.) at ¶ 2 & Ex. A.

10   Cloudflare's counsel Thomas Kearney responded in writing *three minutes* later,
11   at 12:08 pm, agreeing on behalf of both Defendants to stipulate to Plaintiffs' proposed
12   schedule extension. Defendants agreed to Plaintiffs' deposition schedule, merely asking
13   Mr. Rosenthal to consider "a few proposed changes to [Plaintiffs'] schedule of
14   depositions" that involved moving *one* of Plaintiffs' witnesses to the end of the
15   schedule, in order to free up time during the week of May 10-14. Kearney Decl. ¶ 3 &
16   Ex. B. Mr. Kearney's email also offered a compromise on the issue of in-person
17   depositions, offering that Cloudflare's counsel would be willing to "depos[e] Plaintiffs
18   where they reside" instead of having them travel to Los Angeles. *Id.* His email also
19   offered to further discuss these or other accommodations. *Id.*

20   Instead of responding, at 12:20 p.m. (Pacific), just 30 minutes after Messrs.
21   Rosenthal and Reese had left their voicemail for Ms. Golinveaux and 34 minutes after
22   the voicemail to Mr. Zeller, Plaintiffs filed their Application. Only after filing did Mr.
23   Rosenthal respond to Mr. Kearney's email, rejecting Defendants' offer because it "[did]
24   not provide the relief we are seeking in the Application—specifically, an order that the
25   depositions be conducted remotely and quashing Defendants' deposition notices."
26   Kearney Dec. ¶ 4 & Ex. C.

27   When Mr. Kearney attempted to contact Mr. Rosenthal by phone shortly
28   afterward, Mr. Rosenthal did not pick up. Kearney Dec. ¶ 5 & Ex. D. Mr. Kearney left

a voicemail, and followed up with an email asking Plaintiffs to withdraw their Application, since the deposition issue was rendered moot by Defendants' pre-filing email, and the issue of in-person depositions was actively being discussed. Kearney *Id*. Mr. Kearney's email asked that, at a minimum, Plaintiffs inform the Court of what had transpired. *Id.* Plaintiffs refused to do either. Kearney Dec. ¶¶ 6, 8 & Ex. E, G (Reese 5:09 email, Rosenthal 7:15 pm email).

### III.   ARGUMENT

#### A.   Plaintiffs' Requested Relief Is Not Available on an Ex Parte Basis

The circumstances here do not warrant ex parte relief, particularly given the lack of exigency since Defendants have already agreed to virtually all of Plaintiffs' requested relief, and the parties were actively discussing any remaining issues. *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) ("opportunities for legitimate ex parte applications are extremely limited."); *see* Court's Standing Order at 8 ("The court entertains ex parte applications only in extraordinary circumstances; sanctions may be imposed for misuse of the ex parte process."). Ex parte relief is only justified when (1) there is a "danger that notice to an opposing party will result in that party's flight, destruction of evidence. . . or secretion of assets"; (2) a movant seeks "a routine order (*e.g.*, to file an overlong brief or to shorten the time within which a motion may be brought)"; or (3) there is "genuine urgency such that 'immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition.'" *Intermagnetics*, 101 B.R. at 193. None of these justifications apply here. Well before this Application was filed, Defendants agreed to accommodate virtually all of the very relief Plaintiffs claim to seek. On April 22, Defendants stated they were willing to reschedule the relevant depositions to accommodate Plaintiffs' schedules. (Pls.' Ex. 19) at 1. Further, on April 27, before this motion was filed, Defendants sent Plaintiffs an email reiterating their agreement to reschedule the depositions. Kearney Decl. ¶ 3 & Ex. B. Defendants' email also stated that they agreed to "extend[] the schedule for the close of fact and expert discovery as

4

[Plaintiffs] proposed," and otherwise agreed to accommodate Plaintiffs' scheduling requests. *Id.* In short, the depositions that Plaintiffs' "emergency" application seeks to quash have not been on calendar since April 22, 2021, and Plaintiffs' request that the Court order depositions not to "proceed until the parties have agreed on. . . a schedule for the depositions of all witnesses" is moot. As Plaintiffs are well aware, Defendants have taken the depositions off calendar and have been conferring with Plaintiffs on the deposition schedule since at least April 22. Kearney Decl. ¶ 3 & Ex. B.; (Pls.' Ex. 19). Clearly, there is no "fire" or risk of "immediate and irreparable injury, loss, or damage" on the horizon. *Mission Power Eng'g Co.*, 883 F. Supp. at 492. Nor is Plaintiffs' request that the Court order the depositions be conducted remotely appropriate for ex parte treatment. The depositions at issue are not yet scheduled for any particular date, and Defendants have offered to depose Plaintiffs in their hometowns and are willing to take any other steps necessary to ameliorate any COVID-19 or logistical concerns, to which Plaintiffs have not responded. Kearney Decl. ¶ 3 & Ex. B.

As courts universally recognize, ex parte applications "impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason." *Intermagnetics*, 101 B.R. at 193. Plaintiffs' unnecessary Application, filed "for no good reason," has done exactly that: it should be denied, and the Court should consider appropriate sanctions.[1]

---

[1] The Application also falls far short of the requirements of Local Rule 37, which is designed to encourage the parties to come to mutually agreeable resolutions of discovery disputes without having to burden the Court—or each other. *See* L.R. 37-1 (instructing the parties to "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible"). Plaintiffs failed to (1) send opposing counsel a letter "identify[ing] each issue and/or discovery request in dispute" and giving opposing counsel 10 days to confer (L.R. 37-1); (2) file their motion as a Joint Stipulation (L.R. 37-2.1 through -2.2); (3) notice the related hearing for at least 21 days after filing (L.R. 37-3); or provide the declaration required by Local

**B.**     **Plaintiffs' Request Regarding Deposition Scheduling Should Be Denied as Moot**

Plaintiffs seek an order stating that "depositions shall not proceed until the parties have agreed on, or failing agreement the Court orders, a schedule for the depositions of all witnesses." (App. at 16; Proposed Order at 2.) Troublingly, however, Plaintiffs fail to inform the Court that this request is moot because Defendants agreed to stipulate to this relief before Plaintiffs filed their Application.

The evidence here speaks for itself. On April 22 Defendants proposed new dates for their noticed depositions. (Pls.' Ex. 19 at 1.) On April 23, Plaintiffs responded that the newly proposed dates did not work for them. (Pls.' Ex. 1 at 1-2.) Thus, on April 27, Defendants sent an email—conspicuously missing from Plaintiffs' exhibits—proposing additional new dates to accommodate the schedule of Plaintiffs' lead trial counsel, and agreeing to accommodate Plaintiffs' request to extend the discovery deadlines. Kearney Decl. ¶ 3 & Ex. B. No reasonable person reading the parties' correspondence would believe that Defendants' noticed depositions were still set to go forward on the originally noticed dates. Indeed, Plaintiffs' Application all but admits as much. *See* App. at 14 (indicating the first depositions are only "nominally scheduled for April 28 and April 30"). Plaintiffs filed their Application with full knowledge that the relief they were seeking was moot.

As the evidence submitted (and the evidence omitted) by Plaintiffs shows, their allegations of misconduct and violations of the Court's Civility and Professionalism Guidelines (*e.g.* App. at 14-15) are entirely unfounded. Rather, it is Plaintiffs who have abused the Court's procedural rules by filing an emergency application seeking relief that—though they failed to inform the Court of this fact—they already had. *See* Kearney Decl. ¶ 3 & Ex. B.

---

Rule 37-2.4. Nor have Plaintiffs shown they will suffer "irreparable injury or prejudice not attributable to the lack of diligence of the moving party." L.R. 37-3.

The Court should not countenance tactics that serve only to drive up fees and increase the burden on the Court. At a minimum, the portions of Plaintiffs' request relating to the deposition schedule should be denied as moot.

### C.  Plaintiffs Fail to Show Good Cause for Remote Depositions

As this Court has repeatedly recognized, "Defendants have a right to depose [a] Plaintiff," and in general they are "entitled to [the] opportunity" to do so in person. *Susilo v. Robertson*, 2013 WL 12151377, at *1 (C.D. Cal. Aug. 30, 2013). In *Susilo*, for example, the Court rejected a plaintiff's attempt to evade an in-person deposition, recognizing that—

> One of the purposes in deposing a witness, particularly a party, is to size her up to determine how she will be perceived by the jury. The best way to do that is to sit across the table from the witness and watch how she responds to questioning by counsel. Defendants' counsel is entitled to this opportunity.

*Id.* (noting that "Plaintiff chose this forum and she is suing Defendants for $250,000. Thus, this is a fairly significant case and Defendants' counsel should not be limited in how he conducts discovery.") *See also*, *e.g.*, *Sony Corp. v. Vizio, Inc.*, 2009 WL 10674940, at *2 (C.D. Cal. Oct. 9, 2009) (a plaintiff's deposition "must generally be taken in the forum in which the plaintiff filed suit, unless the plaintiff can show good cause that the deposition should take place at another location.").

In this case, each of the three Plaintiffs is seeking a potential payday of hundreds of millions of dollars from Defendants—in the aggregate, a staggering *$712,000,000*. Their basis for this is a novel legal theory that Cloudflare, a third-party service provider that simply provides Internet infrastructure and security services, should be held liable because *Plaintiffs' own customers* allegedly used the Internet to infringe Plaintiffs' photographs of themselves in and out of costume. This is an extremely "significant" case, whose outcome will have important consequences, not only for Defendants, but for the entire online industry, including virtually every company that provides

infrastructure or security services online. Plaintiffs' theories are just as far-fetched with respect to Multi Media, which is not alleged to have copied, sold, or in any way infringed *any* of their allegedly copyrighted images. Instead, Plaintiffs' asserted claims are based on allegations that third-party advertising platforms merely *advertised* Multi Media's website on another, unrelated website that allegedly infringed plaintiffs' copyrights. Not surprisingly, binding Ninth Circuit precedent has rejected the types of unsound claims asserted by Plaintiffs here. *See* ECF 85 (Multi Media's Motion to Dismiss) at 8-16; ECF 104 (Multi Media's Reply in Support of Its Motion to Dismiss) at 2-10. Defendants are entitled to test Plaintiffs' claims and theories to the very best of their ability, and in-person depositions of Plaintiffs and their witnesses is an important part of their defense.

While Plaintiffs claim that in-person depositions will unduly burden them to the extent they are not "fully vaccinated," they are suspiciously vague about when they *will* be. According to the Centers for Disease Control: "In general, people are considered fully vaccinated: 2 weeks after their second dose in a 2-dose series, such as the Pfizer or Moderna vaccines, or 2 weeks after a single-dose vaccine, such as Johnson & Johnson's Janssen vaccine."[2] Plaintiffs' Application fails to provide any information about any witness's status beyond repeating the vague, essentially meaningless claim that they are not "yet" fully vaccinated. More is required to show good cause. The Application makes much of public health guidelines that advise persons "not fully vaccinated" against unnecessary travel… but ignores Federal guidelines advising that: "People who are fully vaccinated with an FDA-authorized vaccine or a vaccine authorized for emergency use by the World Health Organization can travel safely within the United States."[3] Given that Plaintiffs are seeking (and Defendants have agreed) to

---

[2] Centers for Disease Control, "When You've Been Fully Vaccinated" (updated Apr. 27, 2021) (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html).
[3] *See* Centers for Disease Control, "Domestic Travel During COVID-19" (updated Apr. 27, 2021) (https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html).

1  delay at least some depositions by nearly a month, it is likely that at least some of their

2  witnesses will be fully vaccinated by the time they are deposed, and able to travel.

3      Nevertheless, as Defendants made clear *before* Plaintiffs filed their Application,

4  they are willing to depose Plaintiffs' witnesses where they reside, so that they need not

5  travel at all. Defendants' attorneys and anyone participating in the deposition will be

6  required to be fully vaccinated, so when the witnesses too are fully vaccinated, the

7  health risk of conducting in-person depositions will be at pre-pandemic levels. The

8  Centers for Disease Control currently advise the pubic that: "If you've been fully

9  vaccinated … You can gather indoors with fully vaccinated people without wearing a

10 mask or staying 6 feet apart."[4] Furthermore, notwithstanding the already low risk,

11 everyone involved will also continue to take precautions including masking and social

12 distancing, and the depositions will be conducted in well-ventilated areas, reducing any

13 risk still further.

14    **IV.   CONCLUSION**

15     It was clear before Plaintiffs filed their Application that it was both moot, and

16 premature. Plaintiffs' rush to file it, and their continued insistence on seeking an order

17 to quash *all* of Defendants' depositions merely so that they can "continu[e] to discuss

18 the deposition schedule" that Defendants had *already agreed to*, is pure gamesmanship,

19 calculated to waste Defendants' time and resources. And Plaintiffs' demand for a

20 categorical order that *all* depositions in this case be held remotely is, at a minimum,

21 premature: because Plaintiffs' intentionally vague pleading fails to show that good

22 cause will exist *at the time the depositions will actually occur* under their requested

23 schedule, it fails to show good cause at all.

24     The Court should deny Plaintiffs' Application as both moot and premature, and

25 grant Defendants their attorneys' fees for having been needlessly forced to oppose it.

26

27 [4] Centers for Disease Control, "When You've Been Fully Vaccinated: What You Can
   Start to Do" (updated Apr. 27, 2021)
28 (https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html).

Dated: April 28, 2021                    **WINSTON & STRAWN LLP**

By: */s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux
Thomas J. Kearney
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
(415) 591-1000 (telephone)
jgolinveaux@winston.com
tkearney@winston.com

Michael S. Elkin
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
 (212) 294-6700 (telephone)
melkin@winston.com

Erin R. Ranahan
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700 (telephone)
eranahan@winston.com

*Attorneys for Defendant*
*CLOUDFLARE, INC.*

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**

By: */s/ Michael T. Zeller*
Michael T. Zeller

*Attorney for Defendant*
*Multi Media, LLC*

**ATTESTATION**

I, Jennifer A. Golinveaux, attest that the above signatories, on whose behalf this document is being filed, concur in the filing's content and have authorized the filing.

Dated: April 28, 2021                    WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
Jennifer A. Golinveaux

10