REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Josh M. Russ (*pro hac vice*)
brett.rosenthal@rm-firm.com
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
Facsimile: (214) 501-0731

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
creiter@reitergruber.com
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DENIECE WAIDHOFER, *et al.*

Plaintiffs,

v.

CLOUDFLARE, INC., *et al.*,

Defendants.

Case No. 2:20-cv-06979-FMO-AS

**PLAINTIFFS' REPLY IN SUPPORT OF *OPPOSED* EX PARTE APPLICATION FOR PROTECTIVE ORDER**

**[DISCOVERY MATTER]**

Date: April 28, 2021

Judge: Hon. Fernando M. Olguin
Magistrate Judge: Hon. Alka Sagar

Complaint Filed: August 3, 2020
FAC Filed: November 4, 2020
Trial Date: December 14, 2021

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This episode exemplifies the games Defendants are playing in this case. Their latest ploy was to try to railroad Plaintiffs with demands for successive in-person depositions in Los Angeles at inconvenient times that conflict with other important dates, while failing to account for the prior-noticed depositions of Defendants' own witnesses and ignoring Plaintiffs' repeated requests to confer about the deposition schedule on or before April 26. With Multi Media-noticed deposition dates for Plaintiff Waidhofer and Plaintiff Ryuu Lavitz LLC's sole member looming on April 28 and April 30, and no indication as of April 27 that Multi Media would withdraw these requests, Plaintiffs had to spend many hours preparing an emergency motion, or else risk Multi Media claiming that Plaintiffs failed to appear.

Then, after Plaintiffs undertook the considerable burden of preparing the Application and showing Defendants' ongoing shenanigans in painstaking detail, Defendants belatedly offered *to discuss partial* accommodations of *some* of Plaintiffs' requests at the last minute, but notably did not actually agree to anything. Given that Defendants sent this apparently prewritten communication minutes after receiving notification of the Application despite having ignored numerous prior attempts at conferring, it appears that Defendants deliberately laid in the weeds until Plaintiffs had been forced to spend substantial time preparing the Application. Indeed, Plaintiffs were already in the process of filing the Application on the Court's website, along with all of its attendant paperwork (including the exhibits, supporting declaration, and proposed order), when Defendants' overdue email arrived.

This is the same kind of abusive and improper litigation tactic Defendants have employed throughout this case. The game goes like this: Defendants demand oppressive terms or make unreasonable demands, then ignore Plaintiffs' repeated efforts to confer about the issue or reasonably resolve it. This intransigence forces Plaintiffs to go through the arduous process of preparing the papers necessary to

compel Defendants' cooperation, or else risk being deemed to have waived Plaintiffs' rights. Then, after Plaintiffs go through the trouble of preparing the papers, Defendants slightly change the underlying facts or offer an at-best partial accommodation without really agreeing to Plaintiffs' reasonable requests and then claim that the prepared papers are now moot. The result is a Kafka-esque cycle in which Defendants do not cooperate in good faith with discovery efforts, but avoid being held accountable for their misconduct.

Defendants' response brief does not even try to justify their failure to respond to Plaintiffs' repeated requests to confer about the deposition schedule in a timely fashion or explain why Defendants waited until almost literally the last minute to inform Plaintiffs that they were suddenly open to *discussing* Plaintiffs' proposals.[1] Instead, it makes a number of false or misleading assertions that are belied by the evidentiary record and, frankly, make very little sense.

*First*, it repeatedly asserts that the relief requested in the Application is "moot," supposedly because (after the aforementioned stonewalling regarding Plaintiffs' requests to confer) Defendants belatedly informed Plaintiffs as the Application and its supporting documents were being filed that they were "amenable to extending the schedule for the close of fact and expert discovery" and would be "willing to discuss certain accommodations, such as deposing Plaintiffs where they reside." (CITE). But these *conditional* terms moot nothing because they do not provide the relief requested in the Application: (a) a Rule 30(b)(4) order allowing depositions by remote means, and (b) a fair deposition schedule. Indeed, read closely, the email actually offers nothing but simply expresses that Defendants are open to discussing Plaintiffs' proposals. Much too little and far too late.

---

[1] Similarly, the brief ignores Defendants' inexcusable, multiple-week delay in advising Plaintiffs about which of the dates proposed by Judge Sagar's chambers would work for Defendants for the Court-ordered mediation, despite Plaintiffs' reminders on April 12, April 19, and April 22. Though it represented that it would provide a date by April 26, Multi Media still has not identified a date. (*See* Ex. 22).

_Second_, and related to the first point, the response bizarrely contends that Plaintiffs "failed to inform the Court that Defendants had agreed to the relief they continue to seek." (Resp. at 3). That is a strange argument to make in the context of a brief that _opposes_ all of the relief requested in the Application. Indeed, if it were in fact true that Defendants had agreed to the relief that Plaintiffs seek, they could have saved everyone (including the Court, Plaintiffs, and themselves) the trouble of dealing with the Application by simply _agreeing to it_ rather than filing a lengthy opposition brief. Clearly, Defendants have not actually agreed to the relief requested in the Application. And as noted above, the conditional last-minute email carefully crafted by Defendants does not reflect their agreement to anything or preclude them from later reneging on the to-be-discussed "accommodations."

_Third_, the response brief brazenly contends that "_Plaintiffs_ ignored _Defendants'_ attempts to negotiate in good faith." (Opp. at 3, emphases added). The record belies this. It shows plainly that (a) Plaintiffs made a fair and reasonable proposal to accommodate all parties' schedules and permit ample time for all parties' depositions without affecting the trial date; (b) conversely, Defendants made entirely one-sided proposals that created numerous date conflicts with other previously scheduled events, failed to account for depositions of Defendants' own witnesses, and purported to require Plaintiffs and their counsel to travel to Los Angeles for several weeks in the middle of the pandemic; and (c) Defendants ignored Plaintiffs repeated requests on April 20, April 21, April 22, and April 23 to confer by phone on or before April 26 in light of the scheduled April 28 and 30 depositions. The record speaks for itself as to who tried to negotiate in good faith.

_Fourth_, the response brief asserts that Defendants not only agreed to Plaintiffs' requests (which is not true as explained), but somehow that they did so "[w]ell before the Application was filed." (Opp. at 6). In support of this, the brief

references Defendants' April 22 email in which (according to Defendants) they "stated they were willing to reschedule the relevant depositions to accommodate Plaintiffs' schedules." (*Id.*). Talk about revisionist history. As noted above, the schedule proposed in the April 22 email (*see* Pl. Ex. 19) created numerous conflicts with other key case events, demanded successive in-person depositions in Los Angeles, and failed to account for depositions of Defendants' own witnesses. One cannot claim with a straight face that this accommodated Plaintiffs' schedules.

*Fifth*, the response claims that *ex parte* relief is unjustified because "the depositions that Plaintiffs' 'emergency' application seeks to quash have not been on calendar since April 22." (Opp. at 7). But this was not Plaintiffs' understanding, and Defendants cite no communication that clearly conveys that Defendants believed the depositions were no longer on calendar. The referenced April 22 email from *Cloudflare*'s counsel itself states that Defendants "will proceed with depositions as noticed." (*See* Ex. 19). Moreover, the April 28 and April 30 depositions had been noticed by *Multi Media*, not Cloudflare, and Multi Media never indicated that the depositions were off-calendar. To be fair, perhaps there was simply a misunderstanding and Defendants intended to convey that the depositions would not go forward. If so, this could have been easily clarified had Defendants simply responded to Plaintiffs' repeated pleas for a teleconference.[2]

*Sixth*, the response asserts that Plaintiffs failed to show good cause for remote depositions. But the Application recites numerous reasons why there are legitimate reasons to conduct remote depositions in this case. Defendants complain that Plaintiffs do not identify when the witnesses will be fully vaccinated, but Plaintiffs

---

[2] Tellingly, the response does not cite any language in any correspondence stating that the depositions had been canceled. Instead, it asserts that "[n]o reasonable person reading the parties' correspondence would believe that Defendants' noticed depositions were still set to go forward on the originally noticed dates." (Opp. at 8). Apparently, Plaintiffs were supposed to derive this from the interstitials of Defendants' messages and take it on faith that Defendants would not later claim otherwise.

may not know when, or if, the witnesses will become fully vaccinated. Parties are not required to submit to medical procedures as a condition of enjoying their due process rights to redress of their grievances. Moreover, Defendants pledge that the depositions will take place "in well-ventilated areas" and that "everyone involved will also continue to take precautions including masking and social distancing." (Opp. at 11). But as explained in the Application, these precautions actually make in-person depositions less convenient than remote ones.

*Seventh*, Defendants do not even make a serious effort to show prejudice from a remote deposition. Although they cite one older case for the general proposition that defendants are entitled to in-person depositions, they fail to grapple with the prevailing trend among courts to allow remote depositions and the recognition by courts that such depositions are now becoming a routine procedure. Rather than arguing that there is any actual prejudice from remote depositions, Defendants oddly resort to re-urging the fallacious legal arguments from their motions to dismiss (Opp. at 9–10), which plainly have absolutely nothing to do with depositions. Defendants also assert that Plaintiffs are seeking "a staggering $712,000,000," an uncited and unexplained figure apparently derived from applying RICO trebling to the maximum allowable statutory damages available under the Copyright Act. None of this adds up to a legitimate claim of prejudice from remote depositions.

*Finally*, the *denoument* of Defendants' opposition is the assertion that Plaintiffs rushed to file the Application out of "pure gamesmanship, calculated to waste Defendants' time and resources." (Opp. at 11). This makes no sense. It is not plausible that Cloudflare and Multi Media—two very large companies represented by two very large law firms—would be seriously affected by responding to the Application. Conversely, Plaintiffs are impaired by the burden of preparing it. Common sense makes clear who benefits from gamesmanship.

DATE: April 28, 2021

Respectfully submitted,

By: *Brett S. Rosenthal*

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Joshua M. Russ (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
brett.rosenthal@rm-firm.com

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799
creiter@reitergruber.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this filing will be served on the date of filing on all counsel of record via the Court's electronic filing system.

/s/
_____

Brett S. Rosenthal

PLAINTIFFS' REPLY IN SUPPORT OF OPPOSED *EX PARTE* APPLICATION FOR PROTECTIVE ORDER
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979