| | |
|---|---|
| REESE MARKETOS LLP | REITER GRUBER LLP |
| Brett S. Rosenthal (*pro hac vice*) | Charles Reiter (SBN 306381) |
| Joel W. Reese (*pro hac vice*) | Robert Gruber (SBN 301620) |
| Josh M. Russ (*pro hac vice*) | creiter@reitergruber.com |
| brett.rosenthal@rm-firm.com | 100 Wilshire Blvd., Suite 700 |
| 750 N. Saint Paul Street, Ste. 600 | Santa Monica, California 90401-3602 |
| Dallas, Texas 75201-3202 | Telephone: (310) 496-7799 |
| Telephone: (214) 382-9810 | |
| Facsimile: (214) 501-0731 | |

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENIECE WAIDHOFER, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>CLOUDFLARE, INC., *et al.*,<br><br>Defendants. | Case No. 2:20-cv-06979-FMO-AS<br><br>**APPLICATION FOR ISSUANCE OF LETTERS ROGATORY IN REGARDS TO PLANTIFFS' REQUEST FOR DOCUMENTS FROM NON-PARTIES FRANCISCO HUMBERTO DIAS (CANADA) AND BENJAMIN SAMAEY (BELGIUM)**<br><br>**[DISCOVERY MATTER]**<br><br>Date: June 23, 2021<br>Hearing: July 1, 2021 (if necessary)<br><br>Judge: Hon. Fernando M. Olguin<br>Magistrate Judge: Hon. Alka Sagar<br><br>Complaint Filed: August 3, 2020<br>Trial Date: December 14, 2021 |

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................. 1
    A.    Frantech and Dias ............................................................................... 1
    B.    Samaey ................................................................................................. 4
LEGAL STANDARDS .................................................................................................. 5
ARGUMENT ................................................................................................................... 8
    A.    The Evidence Sought Is Relevant And Discoverable Under Rule 26 .. 8
    B.    The Aerospatiale Factors, If Applicable, Support This Application .... 8
        1.    The Evidence Is Relevant And Important ................................. 8
        2.    The Requests Are Narrowly Tailored ........................................ 8
        3.    Much of the Information Originated in the United States .......... 9
        4.    There Are No Alternative Means of Securing the Information .. 9
        5.    The United States' Interest In Favor of Enforcing Copyright Laws Is Strong, And There Are No Countervailing Foreign Interests At Stake ................................................................... 10
CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Calixto v. Watson Bowman Acme Corp.*,
 2009 U.S. Dist. LEXIS 111659 (S.D. Fla. Nov. 16, 2009) ........................... 6

*Cf. Benton Graphics v. Uddeholm Corp.*,
 118 F.R.D. 386 (D.N.J. 1987) ....................................................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 2010 U.S. Dist. LEXIS 89275 (E.D.N.Y. Aug. 27, 2010) .......................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241, 247 n.1 (2004) ........................................................................ 5

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
 841 F. Supp. 2d 769 (S.D.N.Y. 2010) .......................................................... 5

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
 841 F. Supp. 2d 769 (S.D.N.Y. 2012) .......................................................... 7

*Min Shian Indus. Co. v. Liquid Metal Motorsports, Inc.*,
 2020 U.S. Dist. LEXIS 89216 (C.D. Cal. Jan. 31, 2020) ............................. 5

*Monster Energy Co. v. Craig*,
 2016 BCCA 290 ¶ 11 .................................................................................... 3

*Nike, Inc. v. Wu*,
 349 F. Supp. 3d 310 (S.D.N.Y. 2018) .................................................. 10, 11

*SEC v. Leslie*,
 2009 U.S. Dist. LEXIS 24737 (N.D. Cal. Mar. 16, 2009) ........................... 6

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*,
 482 U.S. 522 (1987) ...................................................................................... 7

*SPS Techs., LLC v. Briles Aero., Inc.*,
    2020 U.S. Dist. LEXIS 103308 (C.D. Cal. Apr. 14, 2020) ............................ 5

*Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*,
    51 F.R.D. 149 (D. Del. 1970) ..................................................................... 5

*United States v. Reagan*,
    453 F.3d 165 (6th Cir. 1971) ...................................................................... 5

*United States v. Staples*,
    2566 F.2d 290 (9th Cir. 1958) .................................................................... 5

*Viasat, Inc. v. Space Systems/Loral, Inc.*,
    2013 U.S. Dist. LEXIS 196700 (S.D. Cal. Jan. 14, 2013) ........................... 6

*Zassenhaus v. Evening Star Newspaper Co.*,
    404 F.2d 1361 (D.D.C. 1968) .................................................................... 6

**RULES AND STATUTES**

17 U.S.C. § 106 ............................................................................................... 8
28 U.S.C. § 1781(a) ........................................................................................ 5
28 U.S.C. § 1781(b) ........................................................................................ 5
28 U.S.C. § 1782 ............................................................................................. 3
28 U.S.C. § 1783 ........................................................................................... 10
Fed. R. Civ. P. 28(b) ....................................................................................... 6
Fed. R. Civ. P. 28(b)(1)(B) ............................................................................. 5
Fed. R. Civ. P. 28(b)(2) .................................................................................. 5
Fed. R. Civ. P. 34 .......................................................................................... 10
Fed. R. Civ. P. 45(b)(2) ................................................................................ 10
Fed. R. Civ. P. 45(b)(3) ................................................................................ 10

**OTHER AUTHORITIES**

Belgium Judicial Code Article 584 .................................................................. 4
Belgium Judicial Code Article 877 .................................................................. 4

| | | |
|---|---|---|
| 1 | Belgium Judicial Code Article 915 | 4 |
| 2 | Belgium Judicial Code Article 961/1 | 4 |
| 3 | Evidence Act of 1996 § 53 | 2 |
| 4 | Wright & Miller, 8 Fed. Prac. & Proc. § 2083 (1990 Supp.) | 6 |

The Plaintiffs hereby submit this Application for Issuance of Letters Rogatory (the "Application") seeking evidence from non-parties in British Columbia and Belgium. In British Columbia, the plaintiffs seek evidence from Francisco Humberto Dias, who does business as Frantech Solutions ("Frantech"). In Belgium, the plaintiffs seek evidence from Benjamin "Jelle" Samaey, an apparent operator of the thothub.tv website ("Thothub") based on information contained in documents produced to the Plaintiffs by certain defendants in this case. The requested letters rogatory (the "Letters") are attached to this Application as Exhibit A (Canada) and B (Belgium), respectively. The evidence sought is plainly relevant and will be highly useful at trial. As argued below, this Court has authority to issue the letters rogatory, and in the circumstances of this case, it is appropriate to issue them.

## BACKGROUND

### A. Frantech and Dias

The Court is already familiar with the basic allegations in this case, which the Plaintiffs will not rehearse here. Mr. Dias does business as Frantech and has registered Frantech as a British Columbia sole proprietorship. Frantech served as the origin host for some or all of Thothub for at least a portion of Thothub's existence. That is, Frantech provided the origin servers that hosted the website, from which Cloudflare would retrieve data (if the data was not already stored in Cloudflare's cache) in order to deliver content to users. In addition, Frantech apparently served as the origin host for several other pirate sites on which Plaintiffs' copyrights were allegedly infringed, including some of the so-called "Other Cloudflare-Serviced Pirate Sites" identified in the First Amended Complaint (*see* Dkt 68 at ¶ 231). Because Frantech was the origin server, copies of the Plaintiffs' copyright works were stored on Frantech's server and ultimately were retrieved by Cloudflare, copied on Cloudflare's servers, and then delivered to Thothub's users.

The Plaintiffs intend to seek well-defined and narrow categories of documents from Frantech that will aid in the proof of their claims. In particular, they will seek server access logs for the relevant time period. These logs will likely show the number of times and dates that infringing content was requested and served and will show the IP address of the computers that requested content from Frantech. The Plaintiffs will also seek the copyright infringement notices relating to Thothub that Frantech received from Cloudflare during the relevant time period. Cloudflare has not produced these documents in discovery and apparently does not have them. Finally, the Plaintiffs will seek the infringing content itself, *i.e.*, unauthorized copies of the Plaintiffs' infringed works. Again, Cloudflare has asserted that it has no knowledge of the Thothub content that passed through its network. Thus, it is necessary to seek the infringing material directly from Frantech.

From Mr. Dias, the Plaintiffs will seek limited testimony. They will seek to authenticate the log files produced as well as to obtain testimony about the amount of money Frantech received for providing service to Thothub and about the copyright infringement notices Frantech received from Cloudflare concerning infringing material on Thothub.

Once a letter rogatory issues, Plaintiffs, through their British Columbia counsel, will apply for judicial assistance to the Supreme Court of British Columbia (which, like the New York Supreme Court, is a court of first instance despite its name) under § 53 of the *Evidence Act 1996,* which provides in pertinent part:

> If, on application, it is made to appear to the Supreme Court that a court or tribunal of competent jurisdiction in a foreign country has, by commission, order or other process, duly authorized obtaining the testimony of a witness outside of its jurisdiction but within the jurisdiction of the Supreme Court and the testimony relates to an action, suit or proceeding pending in or before the foreign court or tribunal, the Supreme Court may

      (a) order the examination of the witness before the person appointed, and in a manner and form directed by the commission, order or other process,
      (b) by the same order or a subsequent order, command either or both of the following:
            (i) the attendance of the named witness for the purpose of being examined;
            (ii) the production of any writing or other documents mentioned in the order, and
      (c) give directions regarding
            (i) the time, place and manner of the examination, and
            (ii) all other matters connected with the examination that appear reasonable and just.

The statute permits a litigant to proceed on application. Just as a foreign litigant can seek aid from a U.S. court directly without a letter rogatory through diplomatic channels to the U.S. government for transmission to a U.S. court, *see* 28 U.S.C. § 1782, so too an American litigant can seek aid from a British Columbia court directly, without transmitting the letter rogatory through diplomatic channels.

A British Columbia court will presumptively grant a US court's request embodied in a letter rogatory, "unless it would be contrary to Canadian public policy to do so or would otherwise be prejudicial to Canadian sovereignty or to Canadian citizens." *Monster Energy Co. v. Craig,* 2016 BCCA 290, ¶ 11. The factors the court will consider when deciding whether to execute the letter rogatory are: (1) the relevance of the evidence sought, (2) whether the evidence is necessary for trial and will be adduced at trial if admissible, (3) whether the evidence is otherwise obtainable, (4) whether the order sought is contrary to public policy, (5) whether the documents sought are specified with reasonable specificity, and (6) whether the order sought is unduly burdensome. *Id.* ¶ 13.

**B. <u>Samaey</u>**

The Thothub website is now defunct, its true ownership hidden from public scrutiny. But investigation has shown that the site was operated (in whole or in part)

by Benjamin "Jelle" Samaey, a Belgian web designer. In particular, discovery taken from Crakmedia, an online marketing company that was a defendant in this case, shows that Mr. Samaey corresponded with Crakmedia about placing advertisements on the Thothub site, including for Defendant Multi Media LLC's "Chaturbate" webcam service, and that Crakmedia (which did business under the trade name "Crakrevenue") paid Mr. Samaey thousands of dollars in commissions related to the Chaturbate ads. (Rosenthal Decl. ¶ 9). In Mr. Samaey's application for Crakrevenue's service, he stated that the web traffic he was selling—and for which he would be paid commissions—derived from Thothub. (*Id.* at ¶ 9).

Plaintiffs seek server logs from Samaey, which include the logs sought from Frantech as well as logs for other servers that may have hosted Thothub, for the relevant date period. Plaintiffs also seek copyright infringement notices related to Thothub that were sent by Frantech or Cloudflare. Plaintiffs also seek documents showing the infringing content itself, *i.e.*, any copies of Plaintiffs' copyright works in Mr. Samaey's possession. Finally, Plaintiffs seek financial statements showing the advertising or commission payments related to Thothub that were received from affiliate (or referral) marketing firms for the relevant time period.

In Belgium, Plaintiffs, acting through Belgian counsel, will bring summary proceedings under Article 584 of the Judicial Code, which provides for expedited proceedings in cases of urgency (which exists here due to the limited time left for obtaining evidence). Article 877 of the Code provides a mechanism for the Belgian court to order production of specified documents, and Articles 915 and 961/1 provide for witness hearings and orders to provide written testimony.

## LEGAL STANDARDS

A letter rogatory is a "request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542

U.S. 241, 247 n.1 (2004) (citation and internal quotation marks omitted). "Parties may use letters rogatory to 'take evidence from a specific person within the foreign jurisdiction.'" *Id.* (quoting *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 (S.D.N.Y. 2010)). "A letter rogatory can include requests for the production of documents." *Id.* (citing *United States v. Reagan*, 453 F.3d 165, 168 (6th Cir. 1971)).

A court has inherent power to issue letters rogatory. *See United States v. Staples,* 2566 F.2d 290, 292 (9th Cir. 1958); *SPS Techs., LLC v. Briles Aero., Inc.,* 2020 U.S. Dist. LEXIS 103308, at *3 (C.D. Cal. Apr. 14, 2020). The Court's authority is reflected in 28 U.S.C. § 1781(a), which authorizes the Department of State to receive letters rogatory issued by U.S. courts and transmit them to foreign judicial authorities, and § 1781(b), which permits transmission of letters rogatory abroad directly, without the involvement of the State Department. It is also reflected in Fed. R. Civ. 28(b)(1)(B), which provides that depositions abroad may be taken "under a letter of request, whether or not captioned a 'letter rogatory,'" and Rule 28(b)(2), which provides that the Court may issue a letter of request on a party's application. Courts have issued letters rogatory for the taking of evidence in Canada and Belgium. *See, e.g., SPS Techs., supra* at *1 (granting motion for issuance of letter rogatory seeking testimony and documents from witness in Canada); *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.,* 51 F.R.D. 149 (D. Del. 1970) (granting motion for issuance of letter rogatory seeking testimony of witness in Belgium).

Whether to issue a letter rogatory "is a matter of discretion for the court." *Min Shian Indus. Co. v. Liquid Metal Motorsports, Inc.,* 2020 U.S. Dist. LEXIS 89216, at *4 (C.D. Cal. Jan. 31, 2020) (citation and internal quotation marks omitted). "When determining whether to exercise its discretion, a court will generally not weigh the evidence sought from the discovery request, nor will it attempt to predict

whether that evidence will actually be obtained." *Id.* at *4–5 (citation and internal quotation marks omitted). However, a court's "decision whether to issue a letter rogatory does require an application of [Fed. R. Civ. P.] 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure." *Id.*

"Courts routinely issue letters rogatory where the movant makes a reasonable showing that the evidence sought may be material, or may lead to the discovery of material evidence." *Viasat, Inc. v. Space Systems/Loral, Inc.,* 2013 U.S. Dist. LEXIS 196700, at *38 (S.D. Cal. Jan. 14, 2013) (citation omitted). "No higher standard is necessary for the issuance of letters rogatory than that needed for discovery upon a domestic company. It follows that a party opposing the issuance of letter rogatory must show good reason for a court to deny the application." *Id.* (citations omitted); *SEC v. Leslie*, 2009 U.S. Dist. LEXIS 24737, at *6 (N.D. Cal. Mar. 16, 2009); *Zassenhaus v. Evening Star Newspaper Co.*, 404 F.2d 1361, 1364 (D.D.C. 1968); *see also* Wright & Miller, 8 Fed. Prac. & Proc. § 2083 & n. 22 (1990 Supp.). In exercising its discretion, the "court should determine both whether the discovery falls within the scope of discovery authorized by the Federal Rules, as well as whether considerations of comity warrant the requested discovery." *Viasat, supra*, at *39 (citation omitted).

Notably, in *Viasat,* the court, following *Calixto v. Watson Bowman Acme Corp.,* 2009 U.S. Dist. LEXIS 111659 (S.D. Fla. Nov. 16, 2009), applied the five-factor test of *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa,* 482 U.S. 522, 544 n.28 (1987), in exercising its discretion. The *Aerospatiale* factors were designed to help courts decide whether to "order foreign discovery in the face of objections by foreign states." *Aerospatiale,* 482 U.S. at 544 n.28. They are relevant where one party wants the U.S. court to compel another party in a foreign country to produce discovery and when the foreign

party objects that the exercise of U.S. jurisdiction abroad would offend comity or violate the foreign country's law, and insists that the party seeking discovery proceed instead by letter rogatory. They have little if any relevance to cases such as this, where the party seeking discovery does *not* seek any orders compelling discovery from the U.S. court, but instead asks the U.S. court to make a request for assistance to a foreign court. Proceeding in this way cannot offend comity—it embodies comity. The U.S. court simply makes a request to a foreign court, "which maintains the authority to enforce the letters rogatory or not." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.,* 841 F. Supp. 2d 769, 782 (S.D.N.Y. 2012).

Because some courts nevertheless consider the *Aerospatiale* factors, we outline them here and discuss them below. The factors are: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the requests; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Aerospatiale,* 482 U.S. at 544 n. 28.

## ARGUMENT

**A. The Evidence Sought Is Relevant and Discoverable Under Rule 26.**

In order to prove copyright infringement, Plaintiffs must prove (among other things) that the Defendants copied, or materially contributed to copying by others of, the Plaintiffs' copyrighted works (the term "copied" is shorthand for infringement of any of the bundle of rights established by 17 U.S.C. § 106).

In some cases, the Plaintiffs have screenshots showing that particular infringing images were published on Thothub, thus showing that the specific works

were infringed on Thothub. But the Plaintiffs do not have screenshots in all cases of every alleged act of infringement, and the Thothub website was taken out of service days after this lawsuit was filed. Meanwhile, Cloudflare claims not to have any record of the content that it stored on its own servers or distributed to end users. The best sources of evidence to prove the full extent of the infringement are, therefore, Thothub itself (via its operators including Samaey), or Frantech, the business from whose servers the Thothub website was hosted.

**B. The Aerospatiale Factors, If Applicable, Support This Application.**

*1. The Evidence Is Relevant and Important.*

The foregoing discussion shows that the evidence the Plaintiffs seek is relevant and important. This factor clearly favors the application.

*2. The Requests Are Narrowly Tailored.*

The proposed letters rogatory are narrowly tailored and are not in the style of traditional U.S. discovery requests, which often can seek documents on a broad, categorical basis. Thus, instead of seeking "all documents concerning the number of visitors to the thothub.tv website," for example, the letters seek server access logs for a specified date range. Or instead of seeking "all documents concerning notices that thothub.tv was hosting content that allegedly infringed the plaintiffs' registered copyrights," the letters seek copyright infringement notices sent from specified parties to specified parties in a specified date range.

Nor do the proposed letters rogatory contain the kind of "'fishing expedition' methods of obtaining unspecified evidence, which are regarded as unacceptable in … civil law nations." *Cf. Benton Graphics v. Uddeholm Corp.,* 118 F.R.D. 386, 391 (D.N.J. 1987) (overruling "fishing expedition" objection and rejecting foreign defendant's argument that plaintiff should seek discovery via a letter of request

under the Hague Evidence Convention rather than ordinary U.S. discovery methods). Thus, this factor weighs in favor of the Plaintiffs.

3. *Much of the Information Originated in the United States.*

Much of the information sought originated in the United States. For example, the letters of request seek copyright infringement notices sent by US copyright holders. But the purpose for which the Plaintiffs seek these notices is not for the contents of the notices, but to prove whether Cloudflare actually passed notices that it received along to Frantech or Thothub and, if so, when and how frequently it did so. Other evidence, for example the server logs and information about Thothub's advertising revenue, arguably originates abroad, although much of this information derives from the U.S, because the U.S. was tge largest source of traffic on Thothub. In short, this factor is mixed, but it weighs in favor of the Plaintiffs, because to the extent the evidence originates in the United States, the Plaintiffs are seeking it in order to prove whether or not relevant actors abroad received it and because even the foreign-originated material relates to U.S.-based activities.

4. *There Are No Alternative Means of Securing the Information.*

The plaintiffs have exhausted efforts to obtain the evidence they seek under U.S. discovery procedures. Cloudflare has stated that it does not have the information. (*See, e.g.*, Rosenthal Decl. at ¶¶ 7–8, Ex. A, discussing Cloudflare's response to Interrogatory No. 4 claiming not to have data regarding traffic to Thothub other than aggregate data for entire accounts and its response to Interrogatory No. 21 claiming that Cloudflare "does not keep or maintain server logs for its CDN serers, does not maintain archival copies of cached content in the ordinary course of business, and in general lacks the ability to determine whether specific content was cached on its CDN servers at any past time").

Moreover, there are no U.S. discovery procedures under which the Plaintiffs could obtain the evidence from Frantech, Dias, or Samaey because these foreign non-parties are not in the United States. This Court's subpoenas may only be served in the United States, *see* Fed. R. Civ. P. 45(b)(2), and the Plaintiffs have no reason to believe that any of the foreign witnesses are U.S. nationals, such that a subpoena could be served on them abroad under Fed. R. Civ. P. 45(b)(3) or 28 U.S.C. § 1783. And because they are not parties, they are not required to respond to discovery requests under Fed. R. Civ. P. 34. In short, letters rogatory are the only means to obtain the evidence. Thus, this factor weighs in favor of the Plaintiffs.

> 5. *The United States' Interest In Favor of Enforcing Copyright Laws Is Strong, and There Are No Countervailing Foreign Interests At Stake.*

The United States has a "powerful interest in enforcing the acts of Congress, especially those … that are designed to protect intellectual property rights." *Nike, Inc. v. Wu,* 349 F. Supp. 3d 310, 339 (S.D.N.Y. 2018) (in trademark infringement case, holding that *Aerospatiale* factors weighed in favor or compelling foreign party to respond to discovery request, where foreign party pointed to foreign blocking statute). This interest "extends well beyond this nation's generalized interest in fully and fairly adjudicating matters before its courts." *Id.*

On the other hand, no sovereign interests of Canada or Belgium are adversely affected. The Plaintiffs are not asking this Court to order witnesses abroad to produce discovery. Indeed, they are not asking this Court to order anyone to do anything. They are asking this Court to make a formal request to two foreign courts. If those courts consider that their own sovereign interests weigh against the letters rogatory, they can simply refuse to execute them. The foreign courts are, of course, best positioned to assess their own sovereign interests. Thus this factor, which courts often regard as the most important factor, *see In re Payment Card Interchange Fee*

- 14 -

APPLICATION FOR ISSUANCE OF LETTERS ROGATORY REGARDING NON-PARTIES FRANCISCO HUMBERTO DIAS AND BENJAMIN "JELLE" SAMAEY
*Waidhofer et al. v. Cloudflare, Inc., et. al.*, Case No. 2:20-cv-06979

*& Merch. Disc. Antitrust Litig.,* 2010 U.S. Dist. LEXIS 89275, at *21 (E.D.N.Y. Aug. 27, 2010), weighs heavily in favor of the Plaintiffs.

## CONCLUSION

The Plaintiffs seek important evidence in Belgium and Canada that they have not been able to obtain through direct discovery from the Defendants in this case. This evidence appears to be exclusively in the possession of the foreign witnesses. The Court should grant this motion and issue letters of request to allow the Plaintiffs to seek the evidence in the Canadian and Belgian courts.

DATE: June 24, 2021

    Respectfully submitted,

    By:   *Brett S. Rosenthal*

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Joshua M. Russ (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Allison N. Cook (*pro hac vice*)
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
brett.rosenthal@rm-firm.com

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799
creiter@reitergruber.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this filing will be served on the date of filing on all counsel of record via the Court's electronic filing system.

/s/

Brett S. Rosenthal