1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Josh M. Russ (*pro hac vice*)
brett.rosenthal@rm-firm.com
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
Facsimile: (214) 501-0731

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
creiter@reitergruber.com
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DENIECE WAIDHOFER, *et al.*

Plaintiffs,

v.

CLOUDFLARE, INC., *et al.*,

Defendants.

Case No. 2:20-cv-06979-FMO

**PLAINTIFFS' MOTION FOR RECONSIDERATION IN REGARDS TO CERTAIN FINDINGS IN THE SPECIAL MASTER'S AMENDED ORDER REGARDING REDACTIONS IN THE PROPOSED SANCTIONS MOTION (DKT 202)**

Date: September 16, 2021
Proposed Hearing Date: Oct. 14, 2021 at 10:00 AM (telephonic)

Judge: Hon. Fernando M. Olguin
Special Master: Hon. Suzanne Segal

Complaint Filed: August 3, 2020
Trial Date: TBD

# **TABLE OF CONTENTS**

I.    INTRODUCTION...…………………………………………………   1

II.   LEGAL STANDARDS ……………………………………………..   1

III.  ARGUMENT ….…………………………………………………   1

      A. Plaintiffs Asserted Objections at the Deposition ……………………...   2

      B. The Order Does Not Consider All Relevant Circumstances ………..   5

      C. The Order Does Not Apply Proper Waiver Analysis ………………   8

      D. The Order Does Not Consider the Propriety of Defense Counsel's
         Conduct …………………...……………………………………   11

IV.   CONCLUSION ……………………………………………………   13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASE LAW

*Alioto v. Cowles Comm'cns, Inc.*,
    623 F.2d 616 (9th Cir. 1980) .......................................................... 13

*Azzarmi v. Wurtz*,
    2020 WL 5440353 (C.D. Cal. July 15, 2020) ............................... 1

*Biovail Labs., Inc. v. Anchen Pharmas., Inc.*,
    233 F.R.D. 648 (C.D. Cal. 2006) ................................................. 7

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
    2018 WL 14688371 (C.D. Cal. Mar. 19, 2018) .......................... 10

*Datel Holdings Ltd. v. Microsoft Corp.*,
    2011 WL 866993 (N.D. Cal. Mar. 11, 2011) .............................. 10

*Everest Nat'l Ins. Co. v. Farukhi*,
    2009 WL 10675354 (C.D. Cal. Apr. 20, 2009) ........................... 1

*Global Tele. Int'l, Inc. v. Doe 1*,
    132 F. Supp. 2d 1261 (C.D. Cal. 2001) ...................................... 13

*Horowitz v. Chen*,
    2018 WL 4560697 (C.D. Cal. Sept. 20, 2018) ............................ 6

*La Jolla Spa MD, Inc. v. Avidas Pharmas, LLC*,
    2019 WL 4141237 (S.D. Cal. Aug. 30, 2019) ............................ 6

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
    2015 WL 9268118 (N.D. Cal. Dec. 21, 2015) ............................ 6

*Multiquip, Inc. v. Water Mgmt. Sys. LLC*,
    2009 WL 4261214 (D. Idaho Nov. 23, 2009) ............................ 10

*Sequoia Prop. & Equip. Ltd. P'ship v. U.S.*,

    2002 WL 507537 (E.D. Cal. Feb. 5, 2002) .............................................9–10

*Smith v. Clark Cty. Sch. District*,

    727 F.3d 950 (9th Cir. 2013) ........................................................................1

*Valenzuela v. Union Pac. R.R. Co.*,

    2016 WL 7385037 (D. Az. Dec. 21, 2016) ..................................................10

*Ward v. News Grp. Int'l, Ltd.*,

    733 F. Supp. 83 (C.D. Cal. 1990) ................................................................12

## RULES AND STATUTES

L.R. 7-18 ..............................................................................................................1

Fed. R. Civ. P. 30(c)(2) .......................................................................................10

Fed. R. Civ. P. 30(d)(2) ....................................................................................6, 7

Fed. R. Civ. P. 30(d)(3)(A) ...............................................................................6, 9

Fed. R. Civ. P. 32(d)(3)(B) .................................................................................10

## OTHER AUTHORITIES

1993 Adv. Cmte Notes to Rule 30(d) ...........................................................5–6, 9

On September 2, 2021, the Special Master entered the Special Master's Amended Order (1) Redacting Information From Proposed Sanctions Motion; And (2) Sealing Unredacted Version (Dkt 202; the "Order"). Although Plaintiffs do not contest the Special Master's decision to redact the proposed motion for sanctions (*see* Dkt 202 at 4–5), the portions of the Order that imply that there was an alleged "improper purpose" reflect substantial factual and legal errors. Accordingly, Plaintiffs move for reconsideration of those portions and respectfully ask that they be amended or struck.

## **LEGAL STANDARDS**

"A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or … (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." L.R. 7-18; *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (explaining that a district court can reconsider an order if, among other things, it "committed clear error"). "Ultimately, the decision to reconsider a previous ruling falls within a district court's discretion." *Azzarmi v. Wurtz*, 2020 WL 5440353, *1 (C.D. Cal. July 15, 2020); *see, e.g.*, *Everest Nat'l Ins. Co. v. Farukhi*, 2009 WL 10675354 (C.D. Cal. Apr. 20, 2009) (granting motion "[i]n the interests of justice and under the applicable law").

## **ARGUMENT**

In the Order, the Special Master states that she "is concerned that the current [sanctions] motion might have become the vehicle for an improper purpose." Order at 6. This concern is based on two grounds: first, that Plaintiffs' counsel purportedly failed to "raise[] any meaningful objection to the conduct they now claim to be

worthy of sanctions" (*id.* at 3); and second, that the proposed sanctions motion expresses certain opinions in "inflammatory language" (*id.* at 4). However, for the reasons that follow, each of these bases derives from a failure to consider material facts and/or is flawed. Accordingly, these sections of the Order should be substantially amended or struck from the record.

A.   **Plaintiffs Asserted Objections at the Deposition.**

The Order bases its finding regarding an alleged improper purpose largely on the purported fact that, "[d]espite the presence of two highly experienced counsel for Plaintiffs during the entire deposition, neither counsel raised any meaningful objection to the conduct they now claim to be worthy of sanctions." (*Id.* at 3). The Order finds—without an evidentiary hearing and apparently only from the interstitial text of part of the deposition transcript—that this purported "complete lack of objections undermines the credibility of Plaintiff's current accusations" and casts doubt on whether "the conduct was genuinely upsetting to Plaintiff." (*Id.*). The premise of this conclusion, and the conclusion itself, are simply not true.

As the record evidence that was before the Special Master shows, *while the deposition was ongoing*, Plaintiffs' counsel researched and wrote a formal letter to Defendant's counsel notifying them that in Plaintiffs' view their conduct during the deposition was inappropriate; that the video used as an exhibit was offensive, unauthorized, and illegal under Texas, California, and New York law; that Plaintiffs strenuously objected and did not consent to any distribution or use of the video; and that Plaintiffs would act to protect the witness's rights to the fullest extent of the law. This letter was given to Defendant's counsel during the deposition, and Plaintiffs' counsel made an extensive objection *on the record* on these grounds, which consumed several pages of the deposition transcript. In their entire careers, Plaintiffs' counsel had *never* before gone to such lengths to lodge a formal written

objection during a deposition. Counsel did this because what happened at the deposition was extraordinary and genuinely upsetting.

In particular, after taking time to investigate the relevant facts related to the previously unknown, unproduced private video shown at the deposition and the relevant law in an area that is not part of counsel's usual field of practice, Plaintiffs' counsel made the following objection on the record:

> Madame Court Report, this is Joel Reese on behalf of plaintiff. And I have provided a copy of a letter dated May 12th, 2021, to [Defendant's counsel]. And I want to put on the record that earlier today in this deposition there was some disclosure of some illicit material that was not authorized, [the witness] did not provide in this lawsuit. She didn't consent to the disclosure of that information.
>
> We believe that the publication of that material constitutes a violation under Texas Penal Code 2.16 and is both a civil and a criminal violation. It was not consented to. It is not a copyrighted work, and we have instructed counsel and anyone who has that material, they are not authorized to use that material. They are not authorized to publish that material to anyone.
>
> That material is what's considered revenge porn. It's also a violation of law in other states. It's a violation of law in California. It's also a violation of law in the state of New York.
>
> And so, I don't know where that information came from or how it was obtained. We're [going to] ask counsel to describe how they obtained that information, why they used that information, and we intend to prosecute this violation of law that occurred here today to the fullest extent permitted by law. …
>
> [P]art of the reason for this making of a record on this issue is for everyone who is in attendance in this deposition who has access to that information to understand it is illegal, unauthorized, and there is no consent to the use of that information and that it is a violation of law to use or disclose that information to anyone.

(Dep. Tr. 175:13–176:16 & 177:19–178:2).

The notion that Plaintiffs did not object, or that the witness or Plaintiffs' counsel did not believe that the conduct was genuinely upsetting, is manifestly incorrect. As counsel explained during the telephonic hearing, Plaintiffs' counsel was appalled by the use of the video and thought it was "beyond the pale." Counsel had never seen anything like this in any prior deposition in their careers as commercial litigators and were taken aback. Counsel respectfully disagreed with the Special Master's comments at the hearing to the effect that counsel should have expected such questions during the deposition. As explained at the hearing and in the motion for sanctions, the video—which was shared intimately by the witness with a romantic partner years ago, has never been registered, published, sold, or offered for sale, and was the subject of an open criminal matter as the witness testified—has absolutely nothing to do with the issues in this commercial copyright case. Even if the *existence* of the video somehow were relevant, there was no good reason to play the video, to threaten to play it again, and to ask the witness the series of irrelevant questions that were asked. Defendant's counsel has yet to offer a cogent explanation for any of these actions. Plaintiffs' counsel also noted that privately the witness herself was very distraught over the video.

In sum, the Order ignores these and other material facts that contradict the conclusion that Plaintiffs' counsel did not object to the use of the video during the deposition, which is a linchpin of the finding that there may be an improper purpose behind Plaintiffs' sanctions motion. If an evidentiary hearing were convened on this issue, Plaintiffs' counsel and the witness would gladly testify to these matters under oath. To conclude that Plaintiffs were not "genuinely upset[]" about what happened at the deposition on the basis of a series of inferential leaps drawn from a cold record, while failing to address the full record of Plaintiffs' objections and actions at the deposition, constitutes a failure to consider material facts.

**B.     The Order Does Not Consider All the Relevant Circumstances.**

The Order further bases its conclusion on the assertion that Plaintiffs' counsel supposedly stated during the deposition that "he 'regretted' the lack of objections" and offered "no compelling explanation for why neither counsel objected or attempted to stop the deposition." (Order at 3). This assertion misstates Plaintiffs' counsel's comments during the telephonic hearing and omits significant context that is necessary to fully understand the comments.

To begin, counsel did <u>not</u> say that he regretted the *lack* of objections; counsel stated that he regretted not having objected *more*.[1] But counsel also explained that he was shocked by the video, which he had *never* seen before, and that he did not know what to say and had never encountered such an event in his career. Counsel also noted that objections *were* made on the record during the deposition, presuming that the Special Master was already aware of the lengthy objection in the transcript discussed above. Counsel also stated that the witness was very distraught about what Defendant's counsel did. Counsel also noted that he is not a "revenge porn" lawyer and was not especially familiar with the law on that issue, so it was necessary to conduct legal research on this issue on the fly (which as noted above was done with utmost haste *while the deposition was still ongoing*).

Counsel also noted that the Federal Rules caution against making objections on issues that cannot be cured during the deposition. *See* 1993 Adv. Cmte Notes to Rule 30(d) ("While objections may, under the revised rule, be made during a deposition, they ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, *i.e.*, objections on grounds that might be

---

[1] However, as explained below, counsel was mindful that it is not at all clear that the Federal Rules would have permitted additional objections at the deposition. The Federal Rules do not provide express guidance on what objections a defending attorney may, must, or should make if the witness is subjected to bad faith or harassing conduct. Although the rules say that the attorney "may" suspend the deposition and move to terminate or limit it on these grounds, as explained below, that language is clearly permissive, for good reason. *See* Fed. R. Civ. P. 30(d)(3)(A).

immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer. Under Rule 32(b), other objections can, even without the so-called 'usual stipulation' preserving objections, be raised for the first time at trial and therefore should be kept to a minimum during a deposition."). Based on this guidance, it is not clear that the Federal Rules permit counsel defending a deposition to make oral objections in regards to allegedly harassing conduct.

Moreover, counsel knew that lawyers have been sanctioned for making improper objections at a deposition. *See, e.g.*, *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 9268118, *8 (N.D. Cal. Dec. 21, 2015); *Horowitz v. Chen*, 2018 WL 4560697, *4 (C.D. Cal. Sept. 20, 2018); *see also La Jolla Spa MD, Inc. v. Avidas Pharmas, LLC*, 2019 WL 4141237, *8 (S.D. Cal. Aug. 30, 2019) (noting that "Rule 30(c)(2) renders 'relevancy' objections meaningless in most depositions.") (quotation omitted). By contrast, counsel is not aware of any case or authority for the proposition that *not objecting enough* is a basis to find that a defending attorney acted improperly. The Federal Rules simply do not say how defending counsel is supposed to act in a situation like this, and the additional objections that the Special Master suggests would have been expected are arguably improper, and certainly not required, under the Federal Rules or any other authority.

Regarding the assertion that "there was no compelling explanation for why neither counsel … attempted to stop the deposition" (Order at 3), Plaintiffs' counsel does not recall this question being asked during the telephonic hearing. In any event, the fact is that counsel considered moving to terminate the deposition after the video was shown and after the allegedly improper questions about the video were asked. But counsel also had to weigh the risks and benefits of doing so, taking into account that counsel and his client could be sanctioned if the Court later disagreed with counsel's spur-of-the-moment decision to terminate the deposition. *See* Fed. R. Civ. P. 30(d)(2); *see also Biovail Labs., Inc. v. Anchen Pharmas., Inc.*, 233 F.R.D. 648

(C.D. Cal. 2006) (awarding monetary sanctions against party and his counsel, including costs of the deposition and airfare for defendant's counsel, for terminating the deposition). In weighing this, counsel also had to consider the fact that his client is an individual with limited resources, not a large corporation that could easily afford to bear these costs if the Court later imposed them.

As well, terminating the deposition would have only delayed the deposition because the witness was a named plaintiff whom the defendants had the right to depose. What would be accomplished by terminating the deposition after the video had already been shown and the questions asked? The allegedly improper conduct was complete and not reversible; the damage was done. Terminating the deposition at that point would only have caused delay and incurred additional cost, much of which would have been visited on the witness *even if* Plaintiffs eventually prevailed on the motion, as she would have had to block another two or three days for the deposition at a future date and incurred additional costs to prepare for and attend it. Furthermore, recall that the events described in the sanctions motion occurred only about an hour into the first day of a two-day deposition that the parties had already burdened the Court with multiple motions to schedule *in* person (at Defendants' request) *in* Dallas (at Plaintiffs' request). Delaying a deposition that inevitably would have had to be completed at a later date, with the participants all coming from different cities, would have ensured greater cost and inconvenience.

Given such practical realities involved in the decision whether to suspend a deposition in progress, it is not surprising that Rule 30(d)(3)(A) states that "the deponent or party *may* move to terminate or limit" a deposition that is being conducted in a bad faith or harassing manner, not that she *must* do so. Whether to bring such motion during the deposition is permissive, not mandatory. The permissive nature of the right makes eminent sense, as the circumstances here illustrate, because in many cases the harm and inconvenience of delaying the

deposition may fall equally or more on the person bringing the motion as it does on the party that has engaged in the misconduct during the deposition.

There is no basis in the Rules, the law, or common sense to believe that a party should have to subject herself to such consequences in order to preserve the ability to seek discipline against a party or counsel that has actually engaged in bad faith or harassing conduct at a deposition. On its face, the rule applies only where the deponent or party seeks to "terminate or limit" the deposition, not where they seek ex-post relief against the person who they believe has acted improperly. Neither the Order, nor the Defendant in its briefing to date, has identified any authority to support the assertion that this rule is somehow a prerequisite, either as a legal or factual matter, to a sanctions motion.

In sum, the Order fails to consider the full content and context of Plaintiffs' counsel's comments during the hearing. That content and context help to explain why Plaintiffs' counsel objected as they did and did not terminate the deposition. Even if the Court believes that counsel's assessment of the governing rules was wrong, these considerations are relevant to whether counsel has acted with proper purpose. To conclude that there was "no compelling explanation" without addressing these issues or explaining why they are said to be not compelling constitutes a failure to consider material facts. Furthermore, the suggestion that Plaintiffs were obliged to object more than they did to the allegedly harassing conduct, or to terminate the deposition as the result of it, is an error of law.

**C. The Order Does Not Apply Proper Waiver Analysis.**

The Order does not conduct any analysis of the legal standards for waiver of an objection. *See* Order at 3 ("Aside from the impact of waiver on the motion…"). If conducted, this analysis would show that Plaintiffs did <u>not</u> waive their objections regarding the acts discussed in the sanctions motion. Instead of assessing any alleged waiver of objections, the Order applies a "*de facto*" waiver standard. In short, the

Order concludes that whether or not Plaintiffs' objections regarding the use and questioning about the video were legally adequate, Plaintiffs' purported failure to assert additional objections raises an inference as a factual matter that Plaintiffs did not "genuinely" object to the conduct. The Order cites no authority for this approach, which effectively punishes counsel for following the applicable rules and imposes extra-legal requirements that the Federal Rules and the case law do not support.

Plaintiffs' objections—whether to the admissibility of the video or the testimony regarding it, or to the allegedly sanctionable conduct—are clearly not waived. Indeed, the Federal Rules expressly provide that "[a]n objection … to the competence, relevance, or materiality of testimony [] is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(A) (emphasis added; citations omitted). The basis for excluding this material from a trial or hearing is that it is wholly irrelevant. Meanwhile, the harm of showing the video, and questioning the witness about it in the way that Defendant's counsel did, could not have been corrected after these acts were already done. Therefore, there was no requirement to preserve these objections at the deposition.

As the commentary to the Federal Rules explains, objections during a deposition "should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, *i.e.*, objections on grounds that might be immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer." 1993 Adv. Cmte. Cmts to Rule 30. "Under Rule 32(b), other objections can, even without the so-called 'usual stipulation' preserving objections, be raised for the first time at trial and therefore should be kept to a minimum during a deposition." *Id.* Case law supports the view that deposition objections should be limited to narrow grounds. *See, e.g.*, *Sequoia Prop. & Equip. Ltd. P'ship v. U.S.*, 2002 WL 507537, *2 (E.D. Cal. Feb. 5, 2002) ("Generally, it is unnecessary to make

an objection based on irrelevancy. However, to avoid waiver, timely objections during deposition should be made *on grounds of ambiguous or uncertain (vague), assumes facts not in evidence, or argumentative*.") (emphasis added).

Even if Plaintiffs were required to make an objection during the deposition, as explained above, they met this obligation. The Federal Rules provide that "[a]n objection at the time of the examination … must be noted on the record." Fed. R. Civ. P. 30(c)(2). To the extent that the matters complained-of in the sanctions motion may be deemed to be "[a]n objection to an error or irregularity at an oral examination" that "might have been corrected during the deposition" (although an incongruous fit with the matters alleged in the sanctions motion), such objections need only be "timely made during the deposition" to be preserved. Fed. R. Civ. P. 32(d)(3)(B). As noted above, although not immediately, Plaintiffs did object at length on the record during the deposition, which courts have held is adequate to avoid waiver. *See Multiquip, Inc. v. Water Mgmt. Sys. LLC*, 2009 WL 4261214 (D. Idaho Nov. 23, 2009) (finding no waiver where objection made on record "almost within the hour"); *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, *1, *5 (N.D. Cal. Mar. 11, 2011) (finding no waiver where counsel made objections "[a] few hours later" while deposition was ongoing); *Valenzuela v. Union Pac. R.R. Co.*, 2016 WL 7385037, *5–6 (D. Az. Dec. 21, 2016) (finding no waiver where counsel objected to exhibits used in morning session after lunch at same deposition); *see also Cal. Inst. of Tech. v. Broadcom Ltd.*, 2018 WL 14688371, *4 (C.D. Cal. Mar. 19, 2018) (finding no waiver because, although not immediately, counsel "did not fail to object at the deposition" and collecting cases).

These authorities show that, under proper waiver analysis, Plaintiffs preserved all objections during the deposition. To conduct a *de facto* waiver analysis, without applying the actual legal rules and tests regarding waiver that do not require the kind of objections claimed to be missing, is an error of law. Further, to conclude that the

alleged lack of objections (or later objection) indicates an improper motive, without addressing the legal rules governing objections that counsel was observing, constitutes a failure to consider material facts.

### D. The Order Does Not Consider the Propriety of Defense Counsel's Conduct.

The Order also bases its conclusion regarding Plaintiffs' purportedly improper purpose on "[c]ertain opinions Plaintiffs (or their experts) express in the Motion, characterizing the alleged conduct of their opposing counsel." (Order at 4). The Order references unspecified examples of what it labels as "inflammatory" or "loaded" language and criticizes allegations and arguments in the proposed sanctions motion that refer to "criminal conduct" or analogize tactics to those employed against victims of crimes. (*Id.*). The Order implies that such statements are improper. (*Id.* at 3). However, in drawing these conclusions, the Order does <u>not</u> address the propriety of the conduct that the proposed motion contends is sanctionable.

How can it be said that language or opinions about alleged misconduct reflect an "improper purpose" without reference to the propriety of the conduct itself? These concepts are inextricably intertwined. For it is not improper to call something what it is. It is not improper to be offended by offensive conduct. It is not improper to accuse a person of something that he, in fact, did. It is not improper to explain why one believes that conduct was wrongful and to denounce such conduct in direct, forceful terms. It is not improper to present the opinions of an expert who pioneered the study of the kind of harassment that the motion alleges took place. It is not improper to state the legal standard for finding sanctionable conduct and to argue in a motion seeking sanctions that this standard has been met on the facts here. Yet, the Order finds that such statements reflect an improper purpose, without addressing the conduct to which these statements are directed.

For example, as noted above, the Order asserts that the proposed motion improperly "accus[es] opposing counsel of criminal conduct." (*Id.*). But the Order does not even acknowledge the fact that the disclosure of material of the type disclosed at the deposition *is* a criminal offense in over forty States. Remarkably, one of the items that the Order provides must be redacted as supposedly improper "opinion" is a footnote that simply recites this fact and, without any embellishment at all, directly quotes the Texas penal code elements for this offense and the affirmative defense that is available if the defendant shows that the disclosure of the material was made at a legal proceeding and permitted or required by law. This is not even opinion. It is not improper to state what this statute says.

For another example, the Order asserts that the proposed motion improperly "analogize[s] to tactics employed against victims of violent crimes." But the Order does not find that the tactics are <u>not</u> analogous to such tactics. Nor could it, because for all the reasons stated in the proposed motion for sanctions, the tactics are analogous. Plaintiffs' expert Ms. Tanenbaum—who has studied such tactics throughout her career, interviewed thousands of victims of these tactics, written several books on the subject, lectured at top universities around the country, and been featured in many reputable publications and media on the topic—found the conduct accused in the motion to be a clear example of such tactics. The Order cites no evidence or authority to contradict Ms. Tanenbaum's opinion. Instead, it finds that merely presenting this expert opinion for consideration—regardless whether it has any validity—indicates some impropriety on Plaintiffs' part.

The Order's suggestion that the sanctions motion is "libelous" or "character assassination" is likewise flawed. It is well-established that "truth is an absolute defense to a libel action." *Ward v. News Grp. Int'l, Ltd.*, 733 F. Supp. 83, 85 (C.D. Cal. 1990); *see also Alioto v. Cowles Comm'cns, Inc.*, 623 F.2d 616, 619 (9th Cir. 1980) (explaining that even statements that are "not literally true in every detail" are

protected if "as a whole [they are] substantially true"). It is indisputable that Defendant's counsel did what the motion accuses them of doing; the transcript proves so. The only question is whether this conduct was sanctionable, a matter of opinion, but opinions also cannot be libelous. *See Global Tele. Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1266–67 (C.D. Cal. 2001) ("If the statements are opinion rather than fact, then they are not actionable.").

In summary, the propriety of the statements that the Order asserts are indicative of improper purpose cannot be meaningfully assessed without reference to the conduct the statements describe. To the extent the Order contends that the language in the proposed sanctions motion is inflammatory, one must also grapple with the question whether the language is used to describe conduct that is itself inflammatory, or at least arguably so. If the conduct is inflammatory, it is not clear why it would be improper to describe it in such terms. To find an improper purpose without taking on these issues is failure to consider material facts.

## CONCLUSION

For all of these reasons, the Order's conclusion regarding the purportedly improper purpose is legally and factually flawed and based on a failure to consider material facts. Moreover, this conclusion is not necessary to achieve the Order's ultimate result. The same redaction decisions could be based on the Order's separate finding that the sanctions motion should be sealed because it effectively raises issues of attorney ethics. Although Plaintiffs disagree with that conclusion, they do not intend to challenge it. Accordingly, Plaintiffs respectfully request that the Special Master amend and/or strike the challenged portions of the Order.

DATE: September 16, 2021

Respectfully submitted,

By:   Brett S. Rosenthal_____

REESE MARKETOS LLP
Brett S. Rosenthal (*pro hac vice*)
Joshua M. Russ (*pro hac vice*)
Joel W. Reese (*pro hac vice*)
Allison N. Cook (*pro hac vice*)
750 N. Saint Paul Street, Ste. 600
Dallas, Texas 75201-3202
Telephone: (214) 382-9810
Brett.rosenthal@rm-firm.com

REITER GRUBER LLP
Charles Reiter (SBN 306381)
Robert Gruber (SBN 301620)
100 Wilshire Blvd, Suite 700
Santa Monica, California 90401-3602
Telephone: (310) 496-7799
creiter@reitergruber.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this filing will be served on the date of filing on all counsel of record via the Court's electronic filing system.

_____ /s/ Brett S. Rosenthal _____

Brett S. Rosenthal