UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Gabriela Garcia | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorney Present for Plaintiff(s):           Attorney Present for Defendant(s):

None Present                                 None Present

**Proceedings:**     (In Chambers) Order Re: Pending Motions

Having reviewed and considered all the briefing filed with respect to defendant Cloudflare, Inc.'s ("Cloudflare") Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 84, "Motion I"); defendant Multimedia, LLC's ("Multimedia") Motion to Dismiss the First Amended Complaint (Dkt. 85, "Motion II");[1] and Cloudflare's Motion for Sanctions Pursuant to Rule 11, (Dkt. 102, "Motion III"), the court finds that oral argument is not necessary to resolve the motions, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

### PLAINTIFFS' ALLEGATIONS[2]

Plaintiffs Deniece Waidhofer ("Waidhofer"), Margaret McGehee ("McGehee"), and Ryuu Lavitz LLC ("Ryuu Lavitz") (collectively, "plaintiffs") "are each creators on www.onlyfans.com ('OnlyFans') and www.patreon.com ('Patreon')" (collectively, "Licensed Sites"), which are "social media platforms that allow content creators to sell access to their works to paid subscribers[.]" (Dkt. 68, FAC at ¶¶ 2, 32). "[C]reators receive the lion's share of the money that their subscribers pay to view the works." (Id. at ¶ 4); (see also id. at ¶¶ 34-38, 46-49). The Licensed Sites give creators the ability to control who can see their works, (see id. at ¶¶ 39, 50), and to "block particular" subscribers. (Id.).

Plaintiffs' published works "consist of artistic, non-nude photographs of themselves, mostly

---

[1] Motion II was also brought on behalf of Sonesta Technologies, Inc. and Bangbros.Com Inc.), but these defendants were voluntarily dismissed after Motion II was filed. (See Dkt. 121). The First Amended Complaint ("FAC") refers to Multimedia as "Chaturbate." (Dkt. 68, FAC at p. 2). Thus, to the extent this Order refers to Chaturbate, it shall include Multimedia. Collectively, these defendants are referred to as the "advertisers" or "advertiser defendants."

[2] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

in lingerie or costume." (Dkt. 68, FAC at ¶ 2). Pursuant to the terms of the user agreements for the Licensed Sites, "content creators retain full ownership rights to the works that they upload onto the Licensed Sites." (Id. at ¶ 33); (see also id. at ¶¶ 41, 43-45, 51-52).

Waidhofer filed the original complaint on August 3, 2020. (Dkt. 1, Complaint). On November 4, 2020, Waidhofer, joined by newly-named plaintiffs Ryuu Lavitz and McGehee, filed the operative FAC against Cloudflare; Bangbros.Com, Inc.; Sonesta Technologies, Inc.; Multimedia; CrakMedia Inc. ("CrakMedia" or "CrakRevenue")[3] and 21 John Doe defendants,[4] (Dkt. 68, FAC at p. 2, ¶ 27), "to stop and hold accountable" the operators of Thothub.tv ("Thothub"),[5] "as well as their co-conspirators and facilitators, for violating Plaintiffs' registered copyrights and making use of Plaintiffs' names, likenesses, and reputations without their consent." (Id. at ¶ 1).

Plaintiffs allege that Thothub was a "pirate site that billed itself as 'the home of daily free leaked nudes from the hottest Onlyfans and Patreon models' and 'the biggest e-girl showcase in the world.'" (Dkt. 68, FAC at ¶ 5). "Nearly all the content on Thothub was scraped from behind paywalls of the Licensed Sites." (Id.). According to plaintiffs, Thothub's primary purpose "was to publish this stolen paywalled content and unlawfully distribute it to millions of its members and visitors." (Id.). Indeed, "[n]ew Thothub members could only gain access to Thothub's full library of content by providing new content stolen from the Licensed Sites . . . that was not already on Thothub." (Id. at ¶ 6). Thothub, which had over 1.1 million members, transmitted several terabytes of digital content each day, and received approximately one million unique visitors per day. (Id. at ¶ 7). Plaintiffs allege that Thothub was a "criminal enterprise" that was "run by shadowy figures using aliases who imposed a detailed structure on other users through defined rules, privileges, and ranks." (Id. at ¶ 8).

With respect to Cloudflare, plaintiffs allege that it "knowingly facilitated copyright infringement on Thothub and directly infringed plaintiffs' copyrights" by "distribut[ing] copies of creators' copyrighted works through its content delivery network (CDN) and thus enabl[ing] Thothub to operate throughout the United States." (Dkt. 68, FAC at ¶ 9). Cloudflare stored on its network Thothub's main pages, including pages featuring plaintiffs' works. (Id.). Through a technique called an "Argo Tunnel," Cloudflare "ensured that users could only access infringing content on Thothub via Cloudflare." (Id.). Cloudflare's "permissive approach to repeat infringement is why Thothub . . . used Cloudflare's services." (Id. at ¶ 10). According to plaintiffs,

---

[3] Crakmedia was voluntarily dismissed on April 23, 2021. (Dkt. 142).

[4] Plaintiffs did not properly identify any Doe defendant by the deadline set forth in the Court's Order of November 23, 2020. (Dkt. 90, Court's Order of November 23, 2020, at 17); (see, generally, Dkt.). Thus, all Doe defendants will be dismissed.

[5] According to plaintiffs, Thothub "ceased operations days after [the] original complaint was filed." (Dkt. 68, FAC at 3 n. 1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

Cloudflare concealed Thothub's true ownership and server locations, which "is a major selling point for Cloudflare," as it "markets to pirate sites by proclaiming that it will 'mask' their IP and not cooperate with law enforcement." (Id.). Given the numerous takedown requests it received about Thothub "and the obvious nature of Thothub's piracy," Cloudflare "knew or was willfully blind to the rampant copyright infringement taking place on Thothub, yet [it] continued to support th[e] infringing activity." (Id. at ¶ 11).

As to BangBros and Chaturbate, plaintiffs allege that they "were prolific advertisers on Thothub[,]" (Dkt. 68, FAC at ¶ 12), and that their "ads did not appear on Thothub randomly or by accident." (Id. at ¶ 13). Instead, through their shared advertising agent, CrakRevenue, BangBros and Chaturbate "participated in a so-called 'affiliate marketing' relationship with Thothub." (Id.). Through that relationship, the advertisers "paid commissions to their affiliate, Thothub . . . in exchange for Thothub driving leads and sales for the advertisers' sites." (Id.). According to plaintiffs, the commissions were paid, in whole or in part, in cryptocurrency to "prevent detection, inhibit enforcement and collections, and minimize paper trails." (Id.).

CrakRevenue's website states that "the core of affiliate marketing consists of a close relationship between advertisers (also known as 'merchants') and affiliates," and that the "relationship is governed by a thorough set of rules and details: the affiliate program." (Dkt. 68, FAC at ¶ 14). It also states that "Affiliates help advertisers sell more of their products or services. In exchange, advertisers pay them back either a percentage or a fixed amount – what is known as a commission." (Id.). On behalf of advertisers, CrakRevenue "managed a network of 'affiliates' (including Thothub) and advertised affiliates to drive the advertisers' sales." (Id. at ¶ 15).

According to plaintiffs, "[t]hrough affiliate commissions [], the advertisers effectively funded Thothub's operations." (Dkt. 68, FAC at ¶ 16). The affiliate commissions "enabled Thothub's owners to pay for the expensive hosting and content-delivery costs necessary to accomplish their infringement, as one of Thothub's main Operators stated in an online message board." (Id.). "Absent the advertisers' and CrakRevenue's financial and managerial support, Thothub would not have been able to commit copyright infringement at the enormous scale that it did." (Id.). The "advertiser defendants knew, and could not reasonably avoid knowing, that Thothub was a pirate site[,]" given that the "Operators were open and notorious about the fact that Thothub trafficked in paid content stolen from the Licensed Sites, and many prominent adult-oriented reviewers recognized this fact in their reviews of Thothub." (Id. at ¶ 17). Because CrakRevenue "vetted all affiliates" and "helped affiliates to manage their sites[,] CrakRevenue's knowledge about Thothub is attributable to the advertisers because CrakRevenue provided these services on behalf of the advertisers." (Id.).

Plaintiffs assert three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq., for: (1) conduct of a RICO enterprise, 18 U.S.C. §§ 1962(c) (against the Operators); (2) RICO conspiracy, 18 U.S.C. §1962(d) (against the Operators, advertisers, and CrakRevenue); and (3) investing income from a RICO enterprise, 18 U.S.C. § 1962(a) (against the advertisers and CrakRevenue). Plaintiffs also assert claims for: (4) direct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

copyright infringement (against the Operators and Cloudflare); (5) contributory copyright infringement (against the Operators, Cloudflare, advertisers, and CrakRevenue); (6) unfair competition (against the advertisers); and (7) violation of California's Business and Professions Code ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (against the advertisers). (See Dkt. 68, FAC at ¶¶ 301-41).[6]

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Moreover, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure

---

[6] Plaintiffs provided statutory citations for some claims, but not others.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

9(b)[7] requires that those allegations be pled with particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. Cal., 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citations and quotation marks omitted). The complaint must set out the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation and quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (internal citation and quotation marks omitted). "It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." Id. at 1103.

**DISCUSSION**

I.  MOTIONS TO DISMISS.

   A.  Direct Copyright Infringement.

Plaintiffs assert a direct copyright infringement claim against Cloudflare and the Operators. (See Dkt. 68, FAC at ¶¶ 319-323). "To establish a prima facie case of direct infringement, a plaintiff must show ownership of the allegedly infringed material and demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017) (internal quotation marks omitted). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." Id. "[V]olition in this context does not really mean an act of willing or choosing or an act of deciding; rather, it simply stands for the unremarkable proposition that proximate causation historically underli[]es copyright infringement liability no less than other torts." VHT, Inc. v. Zillow Group, Inc., 918 F.3d 723, 731 (9th Cir. 2019) (internal quotation marks omitted). "[C]ourts must determine who is close enough to the infringing event to be considered the most important cause." Giganews, 847 F.3d at 666 (internal quotation and alteration marks omitted; citation omitted). The volitional conduct requirement "takes on greater importance in cases involving automated systems[.]" VHT, 918 F.3d at 731.

Here, plaintiffs contend that Cloudflare engaged in copyright infringement by: (1) making

---

[7] All further "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

"additional copies [of the copyrighted works] on its servers for other users after delivering a single copy at a different user's request[,]" (Dkt. 93, Plaintiffs' Response to Defendant Cloudflare's Motion to Dismiss ("Opp. I") at 5, 7-8) (citing Dkt. 68, FAC at ¶¶ 195-97, 200); (2) "deliberately delet[ing], through a non-automated process, some infringing works from its servers and continu[ing] to make infringing copies" after receiving notices of infringement, (Dkt. 93, Opp. I at 5, 9) (citing Dkt. 68, FAC at ¶¶ 223-28); and (3) by "deliberately market[ing] to pirate sites[.]" (Dkt. 93, Opp. I at 5, 12). Plaintiffs' contentions are unpersuasive.

With respect to plaintiffs' first argument, plaintiffs allege that, "[i]n circumstances where a user sought Thothub content not already stored on Cloudflare's servers, Cloudflare retrieved the content from Thothub's servers then provided it to the user" and the "content then remained on Cloudflare's servers. If another user requested the content, Cloudflare delivered it directly without having to retrieve the content from Thothub again." (Dkt. 68, FAC at ¶ 200); (see also id. at ¶¶ 195, 197). Even if such allegations could be read as alleging that "Cloudflare made additional copies that remained on [its] servers[,]" (Dkt. 93, Opp. I at 8), that would not save plaintiffs' claim since it fails to allege any volitional conduct by Cloudflare.[8] See Giganews, 847 F.3d at 663, 669 (upholding dismissal of direct infringement claims against Usenet provider which owned and operated several Usenet servers and provided its subscribers with fee-based access to content it "store[d] on its own servers as well as content stored on the servers of other Usenet providers"); id. at 668 (noting that evidence showed only that defendant's actions were akin to "passively storing material at the direction of users in order to make that material available to other users upon request, or automatically copying, storing, and transmitting materials upon instigation by others.") (internal quotation marks omitted); Fox Broadcasting Co., Inc. v. Dish Network L.L.C., 747 F.3d 1060, 1067 (9th Cir. 2014) ("[O]perating a system used to make copies at the user's

---

[8] Plaintiffs' reliance on the Second Circuit's decision in BWP Media USA, Inc. v. Polyvore, Inc., 922 F.3d 42 (2d Cir. 2019) (per curium) is unavailing. Among other things, the court, in a highly fractured opinion, found that there was a "dispute of material fact regarding whether [the defendant website] created multiple copies of [plaintiff's] photos that were not requested by [the defendant's] users." Id. at 44. As one of the concurring judges explained, there was evidence that defendant made "additional copies of [some of the images] in varying sizes [that appeared] at distinct URLs." Id. at 51 (Walker, J., concurring); id. at 59 (noting the defendant was alleged to "have slightly altered the user-uploaded content"). Moreover, one judge took issue with the notion that liability attaches if "additional unrequested copies" are made when a "machine is simply a passive agent." Id. at 69 (Pooler, J., concurring) ("There is no basis to conclude that 'additional unrequested copies' are of any significance when a machine is simply a passive agent."). Similarly, plaintiffs' reliance on EMI Christian Music Group, Inc. v. MP3tunes, LLC, 844 F.3d 79 (9th Cir. 2016), (see Dkt. 93, Opp. I at 7, 9), is unpersuasive because in that case the defendant's "system was designed to retrieve one aspect of a copyrighted work (the album art) whenever a user uploaded another aspect of a copyrighted work (the song). In other words, the system retrieved a copyrighted item that a user did not request, frequently without the user's knowledge of the copyrighted nature of the item." Id. at 96.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

command does not mean that the system operator, rather than the user, caused copies to be made."); Religious Technology Center v. Netcom On-Line Communication Services, Inc., 907 F.Supp. 1361, 1369 (N.D. Cal. 1995) (defendant's "act of designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it" not directly liable for copying).

With respect to plaintiffs' second argument, plaintiffs point to allegations that Cloudflare intentionally deleted stored copies of Waidhofer's works "through a non-automated process" upon receiving Waidhofer's notice of infringement and that Cloudflare "continued to enable the infringement by delivering the same content from the same URLs to users via its proxy service." (Dkt. 93, Opp. I at 9-10). According to plaintiffs, such allegations "are fatal to Cloudflare's volition argument." (Id. at 10). However, as Cloudflare points out, "deleting material is not an infringing act" because "copyright infringement requires a violation of 'at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.'"[9] (Dkt. 105, Reply at 11) (quoting A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). That users were nonetheless able to access infringing images is insufficient to allege that Cloudflare engaged in volitional conduct.

Finally, plaintiffs' third argument – that Cloudflare "deliberately markets to pirate sites," (Dkt. 93, Opp. I at 12) – is similarly without merit as it does not allege volitional conduct. See Perfect 10, Inc. v. Giganews, Inc., 2013 WL 2109963, *6 (C.D. Cal. 2013) ("[T]he key to understanding the so-called 'volitional conduct' requirement is to equate it with the requirement of causation, not intent."). In short, plaintiffs have failed to sufficiently allege that Cloudflare engaged in volitional conduct. The court will thus dismiss plaintiffs' direct infringement claim with leave to amend.

B.  Contributory Copyright Infringement.

Plaintiffs assert a claim for contributory copyright infringement against the Operators, Cloudflare, the advertisers, and CrakRevenue. (Dkt. 68, FAC at ¶¶ 324-29). To establish a claim for contributory infringement, a plaintiff must show that the defendant "(1) ha[d] knowledge of another's infringement and (2) either (a) materially contribute[d] to or (b) induce[d] that infringement." VHT, 918 F.3d at 745 (internal quotation marks omitted).

Multimedia contends that the FAC fails to state a claim for contributory infringement

---

[9] Plaintiffs' allegation that Cloudflare deleted copies via a "non-automated process[,]" (Dkt. 68, FAC at ¶ 225); (Dkt. 93, Opp. I at 10), appears to be no more than a "formulaic recitation of the elements of a cause of action" that is insufficient to state a claim. Twombly, 550 U.S. at 555; 127 S.Ct. at 1965.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

because, among other things, it fails to allege the requisite knowledge.[10] (See Dkt. 85, Motion II at 11-15). "To establish liability, the [knowledge] prong requires more than a generalized knowledge by the [defendant] of the possibility of infringement." Luvdarts, LLC v. AT & T Mobility, LLC, 710 F.3d 1068, 1072 (9th Cir. 2013). Rather, "actual knowledge of specific acts of infringement is required[.]" Id. (internal quotation marks omitted).

Here, plaintiffs allege that the advertisers "likely knew" of the infringement "because the advertisers are each major players in the adult entertainment industry[,]" (Dkt. 68, FAC at ¶ 288), and because "the Operators and other members on Thothub openly and notoriously proclaimed that the site was devoted to publishing stolen content from the Licensed Sites." (Id. at ¶ 291). Plaintiffs also allege that "the advertisers (either directly or through their agents) selected Thothub for advertisements because they knew the type of content that was displayed on the site[.]" (Id. at ¶ 292). These allegations appear to be insufficient in that they fail to show the requisite knowledge, i.e., actual knowledge of specific acts of infringement of plaintiffs' works.[11] See Luvdarts, 710 F.3d at 1072.

Plaintiffs also seek to impute knowledge via an alleged agency relationship between

---

[10] With respect to plaintiffs Ryuu Lavitz and McGehee, Multimedia contends their claims should be dismissed because they did not have copyright registrations for the subject works when the initial complaint was filed. (See Dkt. 85, Motion II at 9-10) (citing Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S.Ct. 881, 887 (2019) (explaining that "although an owner's rights exist apart from registration . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."); 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title."). Multimedia argues that amendment of the complaint did not cure this defect. (Dkt. 85, Motion II at 9) (citing Izmo, Inc. v. Roadster, Inc., 2019 WL 2359228 (N.D. Cal. 2019); Malibu Media, LLC v. Doe, 2019 WL 1454317 (S.D.N.Y. 2019)). However, because the original complaint was filed solely by Waidhofer, (see Dkt. 1, Complaint), and therefore did not assert copyright infringement claims on behalf of Ryuu Lavitz and McGehee, the court finds that their "copyright registration [and subsequent inclusion in the FAC] is not incompatible with federal copyright law, as interpreted by Fourth Estate, Malibu Media, and Izmo." Philips North America LLC v. KPI Healthcare, Inc., 2020 WL 3032765, *3 (C.D. Cal. 2020).

[11] Plaintiffs also allege that the advertisers were "willfully blind to the fact[] that Thothub was a pirate site." (See Dkt. 68, FAC at ¶ 287). "Willful blindness of specific facts would establish knowledge for contributory liability" but a plaintiff must, among other things, allege that a defendant "took deliberate actions to avoid learning about the infringement." Luvdarts, 710 F.3d at 1073. Because plaintiffs base their willful knowledge theory on the same allegations regarding direct knowledge, (see Dkt. 68, FAC at ¶¶ 287-296), and because they have not alleged that Multimedia "took deliberate actions to avoid learning about the infringement[,]" this theory also fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

Multimedia and CrakRevenue. (See Dkt. 68, FAC at ¶¶ 260–86). However, even if plaintiffs had sufficiently alleged an agency relationship between Multimedia and CrakRevenue, (see Dkt. 68, FAC at ¶¶ 260-86, 287, 296), the knowledge element is nonetheless lacking since the FAC fails to set forth allegations that CrakRevenue itself had knowledge of specific acts of infringement of plaintiffs' works. (See, generally, Dkt. 68, FAC at ¶¶ 260-280); Luvdarts, 710 F.3d at 1072.

Plaintiffs contend that they "need not have alleged that the advertisers 'themselves had actual knowledge of the specific acts of infringement of plaintiffs' works on thothub[,]'" (Dkt. 94, Plaintiffs' Response to Advertiser Defendants' Motion to Dismiss ("Opp. II") at 10) (citing MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913 (2005)).[12] According to plaintiffs, liability may be "based on the advertisers' actual or constructive knowledge that they materially contributed to Thothub's rampant piracy due to the litany of facts alleged in the [FAC], including their affiliate marketing and management relationship."[13] (Id. at 10-11). However, even assuming "constructive knowledge may be sufficient in some circumstances, [plaintiffs] still [do] not allege that [Multimedia] had knowledge – actual or constructive – of specific acts of infringement" of plaintiffs' works. Davis v. Pinterest, Inc., 2021 WL 879798, *3 (N.D. Cal. 2021); see Davis v. CBS Interactive, Inc., 2012 WL 12884914, *4 (C.D. Cal. 2012) ("Plaintiffs fail to allege that Defendants had knowledge sufficient to state a claim for contributory liability. . . . Plaintiffs do not allege that Defendants had knowledge – actual or constructive – of specific works of the Plaintiffs."); Atari Interactive, Inc. v. Redbubble, Inc., 515 F.Supp.3d 1089, 1115 (N.D. Cal. 2021) ("Regardless of the precise standard for knowledge required, [plaintiffs] fail[] to satisfy it here."). At most, plaintiffs allege that Multimedia had a "generalized knowledge" of infringement on Thothub, which is insufficient. See Luvdarts, 710 F.3d at 1072 (noting that the knowledge "prong requires more than a generalized knowledge by the [defendant] of the possibility of infringement").[14] Thus, the court

---

[12] Grokster is inapposite because that case was primarily addressing an inducement claim involving producers of software products that were capable of both lawful and unlawful uses. See 545 U.S. at 934-42, 125 S.Ct. at 2778-83.

[13] Plaintiffs' reliance on Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F.Supp.2d 1146 (C.D. Cal. 2002), as being "very similar" to this case, (Dkt. 94, Opp at 11), is unpersuasive. In addressing the knowledge requirement, the Cybernet court noted that the defendant had received "approximately 2,000 e-mails," notifying it of "alleged copyright infringement on its system[,]" and that its "site reviewers review[ed] every site before allowing the sites to utilize" its system. 213 F.Supp.2d at 1169. Here, there are no allegations that plaintiffs sent any notices to Multimedia or CrakRevenue regarding infringement on Thothub. (See, generally, Dkt. 68, FAC).

[14] Because plaintiffs fail to adequately allege knowledge, the court will not address the materiality prong of the contributory infringement claim. However, the court notes that whether the materiality prong is adequately alleged likely turns on whether an agency relationship existed between Multimedia and CrakRevenue. That question will be addressed at the summary judgment or a later stage of the proceedings. Cf. Olney v. Job.com, Inc., 2014 WL 1747674, *9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

will grant Multimedia's motion as to the contributory infringement claim.

For its part, Cloudflare contends that plaintiffs' allegations are insufficient to show that it acted with "culpable intent." (Dkt. 84, Motion I at 14); (id. at 14-17). In the online context, a computer system operator "is liable under a material contribution theory of infringement if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." Giganews, 847 F.3d at 671 (internal quotation marks omitted). Although Cloudflare challenges the veracity of the allegations in the FAC, (see Dkt. 84, Motion I at 16) (challenging allegations regarding Cloudflare's "Argo Tunnel"), on a motion to dismiss, the court must accept the factual allegations of the complaint as true. See Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200. Moreover, "the extent to which reasonable measures exist[ed] for CloudFlare to [have] prevent[ed] further damage to Plainitff[s'] copyrighted works appears to be a factual issue to be resolved at a later stage in the[] proceedings." ALS Scan, Inc. v. Cloudflare, Inc. et al., CV 16-5051 GW (AFMx) (Dkt. 60, Court's Order of October 24, 2016, at 9); see Mon Cheri Bridals, LLC v. Cloudflare, Inc., 2019 WL 3245740, *1 (N.D. Cal. 2019) ("Allegations that Cloudflare knew its customer-websites displayed infringing material and continued to provide those websites with faster load times and concealed identities are sufficient to state a claim" for contributory liability.). Thus, Cloudflare's Motion to dismiss the contributory infringement claim is denied.

      C.      RICO Claims.

The FAC asserts RICO claims, 18 U.S.C. §§ 1962(a) & 1962(d), against the Operators, advertisers, and CrakRevenue. (Dkt. 68, FAC at ¶¶ 310-18).

Multimedia contends that these claims fail because the FAC fails to meet Rule 9(b)'s heightened pleading standard. (See Dkt. 85, Motion II at 17-18). Plaintiffs respond that their RICO claims do not sound in fraud, thus Rule 9(b) does not apply. (See Dkt. 94, Opp. at 16-18). The court agrees with Multimedia that the RICO claims are largely supported by plaintiffs' allegations of money laundering, (see, e.g., Dkt. 68, FAC at ¶ 243) ("Thothub's owners received a commission for each lead and/or sale generated through the ads on Thothub. On information and belief, these commissions were paid via CrakRevenue in the form of cryptocurrency to prevent detection and inhibit enforcement related to copyright infringement on Thothub."), and as such, the RICO claims must satisfy Rule 9(b).[15] See Best Deals on TV, Inc. v. Naveed, 2007 WL 2825652, *7 (N.D. Cal. 2007) ("Most courts have held that allegations of money laundering must satisfy Rule 9(b)'s requirements because money laundering involves an element of fraud.").

---

(E.D. Cal. 2014) ("Whether an agency relationship exists is generally an issue of fact.").

    [15] Plaintiffs' reliance on Kevin Barry Fine Art Associated v. Ken Gangbar Studio, Inc., 391 F.Supp.3d 959 (N.D. Cal. 2019) does not aid them because in that case the parties eventually agreed that Rule 8 applied. See id. at 964 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

Because plaintiffs essentially concede that the RICO claims do not satisfy Rule 9(b), (see Dkt. 94, Opp. II at 16-18), the court will grant Multimedia's motion as to the two RICO claims asserted against it.[16]

      D.      Unfair Competition Claims.

Multimedia contends that plaintiffs' unfair competitions claims, (see Dkt. 68, FAC at ¶¶ 330-41), fail for two primary reasons. First, it contends that "California law precludes unfair competition liability under secondary liability and aiding and abetting theories." (Dkt. 85, Motion II at 22). Second, it contends that the claims are preempted by federal copyright law. (See id. at 23). However, Multimedia devotes a single paragraph to each of these arguments. (See id.). "It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts." Beasley v. Astrue, 2011 WL 1327130, *2 (W.D. Wash. 2011). Given Multimedia's failure to adequately support its arguments, and the fact that the court will be granting plaintiffs leave to amend, the court will deny Multimedia's motion without prejudice as to the unfair competition claims.

      E.      Leave to Amend.

Even after a complaint has been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Here, the court will dismiss the direct infringement claim, and the contributory infringement claim as to Multimedia with leave to amend. The court will dismiss the RICO claims with prejudice as the court does not see any basis upon which plaintiffs can amend the complaint to assert such claims as to Multimedia. The court notes that plaintiffs have had two opportunities to sufficiently state their RICO claims.

III.    MOTION FOR SANCTIONS.

Cloudflare seeks sanctions against plaintiffs and their counsel "for making false representations in pleadings[;] for failure to reasonably investigate Plaintiffs' allegations before filing their [FAC;] and for pursuing their false allegations after notice without a reasonable basis." (Dkt. 102, Motion III at 1). Given Cloudflare's contentions that the allegations in the FAC are false, (see id., Memorandum of Points and Authorities at 3-7), and the fact that this case is in the

---

[16] Plaintiffs' RICO claim in the first cause of action, (see Dkt. 68, FAC at ¶¶ 301-09), is asserted against only the Doe defendants (the Operators). (See id.). However, those defendants will be dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | September 29, 2021 |
|---|---|---|---|
| Title | Deniece Waidhofer, et al. v. Cloudflare, Inc., et al. | | |

pleading stages, the "court declines to rule on the sanctions motion at this juncture." See Belda v. Bank of America, N.A., 2016 WL 7444913, *10 (C.D. Cal. 2016); Bighorn Capital, Inc. v. Security Nat'l Guaranty, Inc., 2015 WL 9489897, *4 (N.D. Cal. 2015) (finding Rule 11 motion "premature"); Mitchel v. City of Santa Rosa, 695 F.Supp.2d 1001, 1013 (N.D. Cal. 2010) (denying sanctions motion without prejudice). "Courts should, and often do, defer consideration of certain kinds of sanctions motions until the end of trial to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits."[17] Bighorn Capital, 2015 WL 9489897, at *4.

**CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Cloudflare's Motion to Dismiss Plaintiffs' First Amended Complaint **(Document No. 84)** is **granted in part and denied in part**. The motion is granted as to the direct infringement claim, and denied as to the contributory infringement claim. The direct infringement claim is dismissed with leave to amend.

2. Multimedia's Motion to Dismiss the First Amended Complaint **(Document No. 85)** is **granted in part and denied in part**. The motion is granted as to the contributory infringement and RICO claims, and denied as to the unfair competition claims. The contributory infringement claim is dismissed with leave to amend. The RICO claims are dismissed with prejudice.

3. Cloudflare's Motion for Sanctions Pursuant to Rule 11 **(Document No. 102)** is **denied without prejudice**.

4. All Doe Defendants are dismissed without prejudice. (See Dkt. 90, Court's Order of November 23, 2020, at 17).

5. Plaintiffs shall file a Second Amended Complaint ("SAC") no later than **October 13, 2021**. Plaintiffs are informed that the court cannot refer to a prior pleading in order to make their SAC complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading

---

[17] Plaintiffs' "countermotion" is denied as procedurally improper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-6979 FMO (ASx) | Date | **September 29, 2021** |
|---|---|---|---|
| Title | **Deniece Waidhofer, et al. v. Cloudflare, Inc., et al.** | | |

no longer performs any function[.]") (citations and internal quotation marks omitted). Plaintiffs shall not add any new claims or additional defendants.

      6. Plaintiffs are cautioned that failure to timely file a SAC shall result in this action being dismissed without prejudice for failure to prosecute and/or failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962).

      7. Defendants shall file their answers or a motion pursuant to Fed. R. Civ. P. 12 no later than **October 27, 2021**.

      8. In the event defendants wish to file another motion to dismiss, then counsel for the parties shall, on **October 20, 2021, at 10:00 a.m.**[18] meet and confer in person, via video, or telephonically to discuss defendants' motions to dismiss. Defendants' motions must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion being denied.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | gga | |

---

[18] Counsel may agree to meet and confer at another time without seeking court approval for such an agreement.